LEXSEE 2005 U.S. APP. LEXIS 8132

AMERICAN BANKERS INSURANCE GROUP, Plaintiff-Appellant, versus
UNITED STATES OF AMERICA, Defendant-Appellee.

No. 04-10720

UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

408 F.3d 1328; 2005 U.S. App. LEXIS 8132; 2005-1 U.S. Tax Cas. (CCH) P70,241;
95 A.F.T.R.2d (RIA) 2291; 18 Fla. L. Weekly Fed. C 525

May 10, 2005, Decided
May 10, 2005, Filed

**PRIOR HISTORY:** [**1] Appeal from the United States District Court for the Southern District of Florida. D.C. Docket No. 03-21822 CV-PCH. *Am. Bankers Ins. Group, Inc. v. United States, 308 F. Supp. 2d 1360, 2004 U.S. Dist. LEXIS 1469 (S.D. Fla., 2004)*

**DISPOSITION:** REVERSED and REMANDED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff taxpayer appealed from an order of the United States District Court for the Southern District of Florida that granted summary judgment in favor of defendant United States Internal Revenue Service (IRS). The taxpayer argued it had overpaid excise tax on long distance "toll telephone service" pursuant to *26 U.S.C.S. § 4252*(b)(1), due to an erroneous interpretation of the statute by the IRS, concerning the meaning of the word "and."

**OVERVIEW:** The taxpayer brought suit seeking a refund in the amount of $ 361,763.24 in communications excise taxes and interest. The district court ruled in favor of the IRS, finding that the word "and" as used in § 4252(b)(1) was ambiguous and, in the context of the statute, was reasonably interpreted by the IRS to mean "or." Accordingly, the excise tax at issue would apply to toll telephone service varying by elapsed transmission time or distance. The taxpayer's service admittedly varied by time, but not by distance. The court of appeals, following a number of other similar decisions, reversed the district court's judgment, holding that the long distance telephone services at issue were not subject to taxation under § 4252(b)(1) or *26 U.S.C.S. § 4252*(b)(2). The word "and" was unambiguous. The court of appeals also rejected the IRS' other arguments that the tax should apply under the excise tax scheme. That certain exemptions to tax were specified did not mean that anything not expressly exempted was subject to taxation, and the long distance and local service were clearly distinguished under the statute.

**OUTCOME:** The judgment of the district court in favor of the government was reversed, and the matter remanded with instructions that the district court enter judgment in favor of the taxpayer.

**LexisNexis(R) Headnotes**

*Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)*
[HN1] See *26 U.S.C.S. § 4252*(a).

*Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)*
[HN2] See *26 U.S.C.S. § 4252*(b).

*Civil Procedure > Appeals > Standards of Review > De Novo Review*
*Civil Procedure > Summary Judgment > Standards of Review*
[HN3] An appellate court reviews a district court's disposition of cross-motions for summary judgment de novo, applying the same legal standards used by the district court, viewing the evidence and all factual inferences therefrom in the light most favorable to the nonmoving party, and resolving all reasonable doubts about the facts in favor of the nonmoving party.

*Civil Procedure > Appeals > Standards of Review > De Novo Review*
*Governments > Legislation > Interpretation*
[HN4] Statutory interpretation is a question of law that is reviewed de novo on appeal.

*Governments > Legislation > Interpretation*
[HN5] In construing a statute, the preeminent canon of statutory interpretation requires a court to presume that the legislature says in a statute what it means and means in a statute what it says there. That inquiry requires the court to begin with the statutory text, and ends there as well if the text is unambiguous. Words are given their ordinary, plain meaning unless defined otherwise.

*Governments > Legislation > Interpretation*
[HN6] Unless the context dictates otherwise, the word "and" is presumed to be used in its ordinary sense, that is, conjunctively. The word "and" is accepted for its conjunctive connotation rather than as a word interchangeable with "or" except where strict grammatical construction would frustrate clear legislative intent.

*Governments > Legislation > Interpretation*
[HN7] The plain meaning rule is not to be blindly applied if application leads to an absurd or futile result. To justify a departure from the letter of the law upon that ground, the absurdity must be so gross as to shock the general moral or common sense. The plain meaning is not an unreasonable interpretation plainly at variance with the policy of the legislation as a whole.

*Governments > Legislation > Interpretation*
[HN8] In statutes levying taxes, the literal meaning of the words employed is most important, for such statutes are not to be extended by implication beyond the clear import of the language used.

*Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)*
[HN9] A court must presume that Congress meant what it said when it tailored the definition of taxable "toll telephone service" to include distance and time requirements, particularly in light of the overall goal of the Excise Tax Reduction Act of 1965, Pub. L. No. 89-44, § 302, 79 Stat. 136, to reduce and restrict the application of federal excise taxes.

*Administrative Law > Judicial Review > Standards of Review > Standards Generally*
[HN10] Under Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., a court must first determine whether the congressional intent is clear. If the intent is clear, the inquiry ends; the court and agency must give effect to the unambiguously expressed intent of Congress.

*Administrative Law > Judicial Review > Standards of Review*
*Governments > Legislation > Enactment*
[HN11] The reenactment doctrine serves to give weight or approval to an agency interpretation only where an agency's statutory construction has been fully brought to the attention of the public and the Congress, and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been discerned.

*Governments > Legislation > Enactment*
*Governments > Legislation > Interpretation*
[HN12] Where Congressional discussion preceding reenactment of a statute makes no reference to an agency's regulation, and there is no other evidence to suggest that Congress was aware of the agency's interpretive position, a court will consider the reenactment to be without significance. Congressional approval of the interpretation then will not be inferred from reenactment of that statute.

*Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)*
[HN13] *26 U.S.C.S. § 4252*(b)(1) presumes a formula where the charge correlates to both the elapsed time of the call and the distance, that is, the mileage, that the call travels. Telephone calls are designated according to geopolitical units due to the federalist regulatory scheme and the demarcation of jurisdiction between the Federal Communications Commission and state regulatory agencies. The distinctions between intrastate and interstate do not necessarily correlate to distance because, for example, an intrastate call may well travel a longer distance than certain interstate or even international calls. The jurisdictional classifications employed in the long distance service at issue does not amount to service where charges vary in amount with distance and thus do not place the service within § 4252(b)(1)'s definition of toll telephone service.

*Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)*
[HN14] Under *26 U.S.C.S. § 4252*(a), the term "local telephone service" does not include any service which is a "toll telephone service" or a "private communication service" as defined in *26 U.S.C.S. § 4252*(b) and (d).

*Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)*
[HN15] *26 U.S.C.S. § 4251* sets out which items will be taxed, *26 U.S.C.S. § 4252* defines those terms, and *26 U.S.C.S. § 4253* grants exemptions to certain services. The fact that certain exemptions are specified does not mean that anything not expressly exempted is subject to taxation.

**COUNSEL:** For American Bankers Insurance Group, Appellant: Stephen J. Rosen, Levine, Blaszak, Block &

Boothbay, LLP, WASHINGTON, DC; Farrokh Jhabvala, Jorden, Burt, Berenson & Johnson, LLP, Miami, FL; Franklin G. Burt, Jorden Burt LLP, WASHINGTON, DC; Henry D. Levine, Levine, Blaszak, Block & Boothbay, LLP, Washington, DC.

For UNITED STATES OF AMERICA, Appellee: Teresa E. McLaughlin, Washington, DC; Robert W. Metzler, U.S. Dept. of Justice/Tax Div./Appellate Sec., Washington, DC.

For Black Radio Network, In., Amicus: David Isaacson, Attorney at Law, NEW YORK, NY.

**JUDGES:** Before ANDERSON, DUBINA and BLACK, Circuit Judges.

**OPINIONBY:** DUBINA

**OPINION:** [*1330] DUBINA, Circuit Judge:

American Bankers Insurance Group, Inc. ("ABIG") appeals the district court's grant of summary judgment to the United States, finding the long distance telephone services ABIG purchased from AT&T subject to an excise tax under *Internal Revenue Code § 4252(b)(1)*. For the reasons that follow, we reverse the district court's judgment and hold that the long distance [**2] telephone services at issue are not subject to taxation under *§ 4252(b)(1)* n1 or *§ 4252(b)(2)* n2.

---

n1 *26 U.S.C. § 4252(a)* provides:

[HN1] (a) Local telephone service. For purposes of this subchapter, the term "local telephone service" means -

(1) the access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system and

(2) any facility or service provided in connection with a service described in paragraph (1).

The term "local telephone service" does not include any service which is a "toll telephone service" or a "private communication service" as defined in subsections (b) and (d).

n2 *26 U.S.C. § 4252(b)* provides:

[HN2] (b) Toll telephone service. For purposes of this subchapter, the term "toll telephone service" means -

(1) a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication and (B) the charge is paid within the United States, and

(2) a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

[**3]

## I. BACKGROUND

A. *Facts*

Between October 1, 1998, and March 31, 2002, taxpayer, ABIG, purchased interstate, [*1331] international, and (in five states) intrastate long distance service from AT&T. ABIG paid a uniform toll rate for all interstate calls made within the United States, uniform toll rates for all intrastate long distance calls made within the five states in which it purchased service, and toll rates for international calls (other than calls to and from Mexico) that varied only according to which country the calls were being placed. AT&T collected federal excise taxes from ABIG on the services pursuant to *§ 4252(b)(1) of the Internal Revenue Code* ("I.R.C."), and remitted the taxes collected to the Internal Revenue Service ("IRS").

Subsequently, ABIG filed claims with the IRS for a refund of $ 288,496.10, representing the federal excise taxes collected on services rendered between October 1, 1998, and September 30, 2001. ABIG later filed claims for an additional refund in the amount of $ 73,267.14 for the taxes on telephone calls placed between October 1, 2001, and March 31, 2002. ABIG sought the refunds, contending that the federal excise tax [**4] on long distance telephone calls does not apply to calls for which the rate does not vary based upon the distance of the call.

B. *Procedural History*

The IRS did not respond to either of ABIG's refund claims. ABIG then brought suit in the Southern District of Florida seeking a refund in the amount of $

361,763.24 in communications excise taxes and interest. The parties filed cross-motions for summary judgment, and the district court ruled in favor of the government finding that the word "and" as used in *§ 4252(b)(1)* is ambiguous and in the context of the statute means "or." According to the district court, the excise tax at issue applies to toll telephone service varying by distance *or* elapsed transmission time. ABIG then perfected this appeal.

## II. ISSUE

Whether *Internal Revenue Code § 4252(b)(1)*, defining "toll telephone service" as a service for which there is a "toll charge which varies in amount with the distance and elapsed transmission time" of each call, is applicable to a toll charge varying with elapsed transmission time, but not distance.

## III. STANDARD OF REVIEW

[HN3] This court reviews the district court's disposition of cross-motions [**5] for summary judgment *de novo*, applying the same legal standards used by the district court, viewing the evidence and all factual inferences therefrom in the light most favorable to the non-movant, and resolving all reasonable doubts about the facts in favor of the non-moving party. *Gerling Global Reinsurance Corp. of America v. Gallagher, 267 F.3d 1228, 1233-34 (11th Cir. 2001)*. [HN4] Statutory interpretation is a question of law that we also review *de novo*. *Smith v. BellSouth Telecomms., Inc., 273 F.3d 1303, 1305 (11th Cir. 2001)*.

## IV. DISCUSSION

A. *The plain meaning of § 4252(b)(1)'s requirement that rates vary by "distance and elapsed transmission time" uses "and" conjunctively*

1. The phrase is unambiguous

The IRS collects taxes for toll telephone service, defined as "(1) a telephonic [*1332] quality communication for which (A) there is a toll charge which *varies in amount with the distance and elapsed transmission time* of each individual communication." *26 U.S.C. § 4252(b)(1)(A)* (emphasis added). ABIG contends that the statutory language quoted above is unambiguous, requiring the word "and" in the phrase [**6] "distance and elapsed transmission time" to be interpreted according to its ordinary, natural meaning. Accordingly, ABIG asserts "and" is used conjunctively. ABIG urges that to be taxable toll telephone service under this provision, the toll service must vary by both distance and elapsed transmission time.

The government contends that the statue is ambiguous and does not plainly require variation by both time and distance. Contending that the word "and" can be read conjunctively or disjunctively, the government argues that the district court was correct in determining that Congress did not intend to use the conjunctive meaning of "and" in requiring under *§ 4252(b)(1)* that taxable toll telephone service "vary in amount with the distance and elapsed transmission time."

[HN5] In construing a statute, "the preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183, 124 S. Ct. 1587, 1593, 158 L. Ed. 2d 338 (2004)* (second alteration in original) (quoting *Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 1149, 117 L. Ed. 2d 391 (1992))*. [**7] This inquiry requires the court to "begin[] with the statutory text, and end[] there as well if the text is unambiguous." *Id*. Furthermore, words are given their ordinary, plain meaning unless defined otherwise. *Id. at 183, 124 S. Ct. at 1593-94*; *see also In re Paschen, 296 F.3d 1203, 1207 (11th Cir. 2002)*. More specifically, [HN6] unless the context dictates otherwise, the word "and" is presumed to be used in its ordinary sense, that is, conjunctively. *Crooks v. Harrelson, 282 U.S. 55, 58, 51 S. Ct. 49, 50, 75 L. Ed. 156, 1931-1 C.B. 469 (1930)* (construing taxing statute and concluding that "nothing in the context or in other provisions of the statute . . . warrants the conclusion that the word 'and' was used otherwise than in its ordinary sense [,conjunctively]; and to construe the clause [disjunctively,] would be to add a material element . . ., and thereby to create, not to expound, a provision of law"); *see also Bruce v. First Fed. Sav. and Loan Ass'n of Conroe Inc., 837 F.2d 712, 715 (5th Cir. 1988)* ("The word 'and' is therefore to be accepted for its conjunctive connotation rather than as a word interchangeable with 'or' except where [**8] strict grammatical construction will frustrate clear legislative intent.") (citing, *inter alia, Peacock v. Lubbock Compress Co., 252 F.2d 892, 893-95 (5th Cir. 1958)* (construing "and" in the phrase "an employer engaged in . . . the ginning and compressing of cotton" as meaning "or" because "it is an acknowledged undisputed fact . . . that compressing is an operation entirely removed from ginning and that the two are *never carried on together*.") (emphasis added)).

Here, there is nothing in the statutory context to suggest that "and" is used in the provision as meaning "or." The phrase is unambiguous. The plain meaning is clear - "and" is used conjunctively. *See also America Online, Inc. v. United States, 64 Fed. Cl. 571, 2005 WL 741847, No. 03-2383-T, at *5 (2005)* ("*Section 4252(b)(1)* unambiguously requires that a toll charge vary in amount according to both the distance and duration of calls."); *accord Honeywell Int'l, Inc. v. United*

*States, 64 Fed. Cl. 188, 199 (Fed. Cl. 2005)*; *Office Max, Inc. v. United States, 309 F. Supp. 2d 984, 993 (N.D. Ohio 2004)*; *Nat'l R.R. Passenger Corp. v. United States, 338 F. Supp. 2d 22, 27 (D.D.C. 2004)*; [**9] [*1333] *Fortis, Inc. v. United States, 2004 U.S. Dist. LEXIS 18686, No. 03 Civ. 5137(JGK), 2004 WL 2085528, at *6 (S.D.N.Y. 2004)*; *Reese Bros., Inc. v. United States, 2004 U.S. Dist. LEXIS 27505, No. 03-CV-745, 2004 WL 2901579 at *7 (W.D. Pa. November 30, 2004)*. The district court stated that even if it were to find the statute unambiguous, "this is one of the rare cases where the legislative intent is sufficiently clear that . . . the court would still be entitled to rely on extrinsic evidence of Congressional intent." *American Bankers Ins. Group, Inc. v. United States, 308 F. Supp. 2d 1360, 1367 n.7 (S.D. Fla. 2004)*. We respectfully disagree with the district court's analysis. Where the statutory text is unambiguous the inquiry ends. *BedRoc Ltd., LLC, 541 U.S. at 183, 124 S. Ct. at 1593*. In fact, the statutory context supports the conjunctive use of "and" in § 4252(b)(1)'s requirement that the rate must vary "by distance and elapsed transmission time." Though resort to the legislative history is unnecessary, as we conclude the statute is unambiguous, we note the legislative history supports our conclusion.

In defining taxable "toll telephone service," both parties [**10] agree that Congress, through the Excise Tax Reduction Act of 1965, Pub. L. No. 89-44, § 302, 79 Stat. 136 ("1965 Act"), sought to define the method of service provided by AT&T, the company, at the time of enactment, holding a monopoly on all long-distance telephone services. Prior to the 1965 Act, "toll telephone service" was defined as "a telephone or radio telephone message or conversation for which (1) there is a toll charge, and (2) the charge is paid within the United States." Pub. L. No. 85-859, § 133(a), 72 Stat. 1275, 1290 (1958). In 1965, it appears Congress amended the definition to its current language in an effort to modify and update it "in order to reflect and to meet the changing technology and market conditions of the industry." *Trans-Lux Corp. v. United States, 696 F.2d 963, 967 (Fed. Cir. 1982)*. AT&T's long distance service at that time charged long distance telephone services on the basis of the elapsed time of each individual call, multiplied by a rate determined through the use of distance mileage bands or for "Wide Area Telephone Service," commonly referred to as WATS, with a periodic charge for unlimited access within a specified area outside [**11] of local service. Thus, at the time of the 1965 Act, AT&T's service, which Congress sought to define as taxable toll service, did in fact utilize rates that varied by *both* elapsed transmission time and distance. Moreover, at the time of the 1965 Act, it was likely inconceivable that charges would be made without reference to distance as now exists.

In addition, Congress was seeking to modify and narrow the definition and to phase this excise tax out entirely by 1969. *See America Online, 64 Fed. Cl. 571, 2005 WL 741847, at *6 (citing Trans-Lux Corp., 696 F.2d at 966)*. Congress could have amended the language in 1965 to include broad terms able to adapt to technological changes; instead, Congress specifically defined "toll telephone service" with an eye toward the tax expiring four years later. *See id.*

> Consequently, now, forty years later, 'if the statutory language no longer fits the infrastructure of the industry, the IRS needs to ask for congressional action to bring the statute in line with today's reality. It cannot create an ambiguity that does not exist or misinterpret the plain meaning of statutory language to bend an old law toward a new direction. [**12] '

*America Online, 64 Fed. Cl. 571, 2005 WL 741847, at *6* (quoting *Nat'l R.R., 338 F. Supp. 2d at 27-28*).

Based on the foregoing, we agree with the numerous courts that have concluded the language in the phrase at issue is clear and unambiguous. *See America Online, 64 Fed. Cl. 571, 2005 WL 741847, at *5* ("Section 4252(b)(1) unambiguously requires that a toll charge vary in amount according to both the distance [*1334] and duration of calls."); *Honeywell Int'l, Inc. v. United States, 64 Fed. Cl. at 199* (finding § 4252(b)(1)'s phrase "distance and elapsed transmission time" unambiguous and noting that "and" can be construed in certain contexts cumulatively, but finding the clearly conjunctive use in § 4252(b)(1) "'supported by the fact that both distance and time were . . . factors in determining charges for toll telephone service at the time of the 1965 amendments[;] in this context, it is only logical to conclude that when Congress wrote the phrase, . . . it meant for the word 'and' to be read conjunctively.'") (quoting *Office Max, 309 F. Supp. 2d at)*; *Nat'l R.R. Passenger Corp., 338 F. Supp. 2d at 27-28* (finding phrase unambiguous; [**13] "and" intended conjunctively); *Fortis, Inc. 2004 U.S. Dist. LEXIS 18686, 2004 WL 2085528, at *6* (same), *Reese Bros., Inc. v. United States, 2004 U.S. Dist. LEXIS 27505, 2004 WL 2901579, *7* (same). Although "and" may be used cumulatively in some contexts, here, the statutory language is plain and unambiguous - the provision requires that to come within the definition of "toll telephone service" the rate must vary by *both* "distance and elapsed transmission time."

While true that [HN7] the plain meaning rule is not to be blindly applied if application leads to an absurd or

futile result, *Hughey v. JMS Development Corp., 78 F.3d 1523, 1529 (11th Cir. 1996)*, here the plain meaning of the statute does not lead to such a result. *See America Online, 64 Fed. Cl. 571, 2005 WL 741847, at *7*. "To justify a departure from the letter of the law upon that ground, the absurdity must be so gross as to shock the general moral or common sense." *Crooks, 282 U.S. at 60, 51 S. Ct. at 50*. Here, no gross absurdity results from a plain meaning interpretation of the provision. The plain meaning is not an "unreasonable [interpretation] plainly at variance with the policy of the legislation [**14] as a whole." *See United States v. American Trucking Assoc., 310 U.S. 534, 543, 60 S. Ct. 1059, 1063, 84 L. Ed. 1345 (1940)* (internal quotation marks omitted). Instead, using the plain meaning furthers the Congressional intent at the time it was adopted. Moreover, we note "that [HN8] in statutes levying taxes the literal meaning of the words employed is most important for such statutes are not to be extended by implication beyond the clear import of the language used." *Crooks, 282 U.S. at 61, 51 S. Ct. at 51* (internal quotation omitted).

[HN9] "The Court must presume that Congress meant what it said when it tailored the definition of taxable 'toll telephone service' to include distance and time requirements, particularly in light of the overall goal of the Act to reduce and restrict the application of federal excise taxes." *Office Max, 309 F. Supp. 2d at 1000*; *see also Honeywell Int'l, Inc., 64 Fed.Cl. at 199-200*; *America Online, 64 Fed. Cl. 571, 2005 WL 741847, at *6*. "While it may have been short-sighted of Congress to define 'toll telephone service' to specifically address the charging scheme [**15] used by AT&T in 1965, . . . 'it is beyond [the court's] province to rescue Congress from its drafting errors." *Honeywell Int'l, Inc., 64 Fed. Cl. at 199* (first alteration in original) (quoting *Lamie v. United States Tr., 540 U.S. 526, 542, 124 S. Ct. 1023, 1034, 157 L. Ed. 2d 1024 (2004)*) (internal marks and citation omitted).

2. *Revenue Ruling 79-404, 1979-2 C.B. 382* does not provide support for abandoning § 4252(b)(1)'s plain meaning

The government also argues that in interpreting § 4252(b)(1) the district court properly attributed "great weight" to *Revenue Ruling 79-404, 1979-2 C.B. 382. Revenue Ruling 79-404, 1979-2 C.B. 382* deals with whether communications services between onshore facilities and offshore ships fall within § 4252(b)(1)'s definition of "toll telephone service." While acknowledging that "literally, the service provided in [the] case does not come within the definition of . . . toll telephone service because the charge for such services *does* [*1335] *not vary with distance and therefore does not meet the requirement of section 4252(b)(1),*" Rev. Rul. 79-404, 1979-2 C.B. 382, 1979 IRB LEXIS 291, Rev. Rul. 79-404 (1979) (emphasis added), the IRS nonetheless concluded [**16] that "a statute may be given an interpretation other than that which follows from its literal language where such interpretation is required in order to comport with the legislative intent." *Id.*; *see e.g. America Online, 64 Fed. Cl. 571, 2005 WL 741847, at *8*.

The government argues that the court should give *Revenue Ruling 79-404, 1979-2 C.B. 382 Chevron* deference . See *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)*. [HN10] Under *Chevron*, the court must first determine whether the congressional intent is clear. *Chevron U.S.A., Inc., 467 U.S. at 843-44, 104 S. Ct. at 2781-82*. If the intent is clear, the inquiry ends; the court and agency "must give effect to the unambiguously expressed intent of Congress." *Chevron, 467 U.S. at 843-44, 104 S. Ct. at 2781-82*; *see also Ala. Power Co. v. United States Dep't of Energy, 307 F.3d 1300, 1312-13 (11th Cir. 2002)* (holding agency interpretation did not overcome clear intent of statute even if given *Chevron* deference).

Accordingly, because we hold that § 4252(b)(1) is clear and directly answers the question [**17] here, the inquiry ends; we need not give deference to *Revenue Ruling 79-404, 1979-2 C.B. 382*. Moreover, we need not determine the proper level of deference to be given *Revenue Ruling 79-404, 1979-2 C.B. 382. See Wilderness Watch v. Mainella, 375 F.3d 1085, 1091 n. 7 (11th Cir. 2004)* (noting "because [the court] holds that the *Wilderness Act* speaks directly to the question at issue, we need not resolve the question of the precise level of deference due the agency action under the second prong of *Chevron*").

3. Re-enactment Doctrine is not applicable

The government contends that even if *Revenue Ruling 79-404, 1979-2 C.B. 382* is not entitled to deference, under the re-enactment doctrine, Congress should be deemed to have approved the Revenue Ruling because the federal communications excise tax imposed under § 4251 has been amended and re-enacted since the publication of *Revenue Ruling 79-404, 1979-2 C.B. 382*. However, [HN11] the re-enactment doctrine will serve to give weight or approval to an agency interpretation only "where an agency's statutory construction has been fully brought to the attention of the public and the Congress, and the latter has not sought to alter that interpretation [**18] although it has amended the statute in other respects, then presumably the legislative intent has been discerned." *North Haven Bd. of Educ. v. Bell, 456 U.S. 512, 535, 102 S. Ct. 1912, 1925, 72 L. Ed. 2d 299 (1982)* (quotations omitted).

Here, not only is the statutory language clear under § 4252(b)(1), but there is nothing to indicate that Congress

was aware of *Revenue Ruling 79-404, 1979-2 C.B. 382* when it subsequently amended and re-enacted this taxing statute. The legislative history reveals no mention of *Revenue Ruling 79-404, 1979-2 C.B. 382* nor does the record reveal consideration of the issue raised in the Ruling. *See, e.g., Office Max, 309 F. Supp. 2d at 1004-1005.* Thus, there is nothing to indicate Congress was aware of *Revenue Ruling 79-404, 1979-2 C.B. 382* when the taxing provisions were re-enacted. *See id.* n3 [HN12] "When the [*1336] 'congressional discussion preceding re-enactment makes no reference to the . . . regulation, and there is no other evidence to suggest that Congress was even aware of the . . . interpretive position[,] 'we consider the . . . reenactment to be without significance.'" *America Online, 64 Fed. Cl. 571, 2005 WL 741847, at *9* (quoting [**19] *Brown v. Gardner, 513 U.S 115, at 121, 115 S. Ct. 552, 556, 130 L. Ed. 2d 462 (1994)* (quoting *United States v. Calamaro, 354 U.S. 351, 359, 77 S. Ct. 1138, 1 L. Ed. 2d 1394, 1957-2 C.B. 916 (1957))*. Accordingly, Congressional approval cannot be inferred from re-enactment of this statute. *See America Online, 64 Fed. Cl. 571, 2005 WL 741847, at * 9; Honeywell Int'l, Inc., 64 Fed. Cl. at 201; Office Max, 309 F. Supp. 2d at 1004-1005; Fortis, 2004 U.S. Dist. LEXIS 18686, 2004 WL 2085528, at *12; Reese, 2004 U.S. Dist. LEXIS 27505, 2004 WL 2901579, at *12.*

n3 Unlike *Cottage Savings Association v. Commissioner, 499 U.S. 554, 111 S. Ct. 1503, 113 L. Ed. 2d 589 (1991)*, in which the defendant relied on Treasury Department regulations and the precise issue was not addressed by the statute, here the government seeks to use as determinative Revenue Rulings where the statute and its context address the issue before the court. In addition, the treasury regulations at issue in *Cottage Savings* were "consistent with [the Supreme Court's] precedents . . . [preceding enactment and the] decisions were part of the contemporary legal context in which Congress enacted [the statute at issue]" *Id., 499 U.S. at 562, 111 S. Ct. at 1508* (internal quotation omitted).

[**20]

B. *The services at issue are not within the statute*

1. Services at issue do not vary by "distance"

The rates at issue vary according to whether the call is intrastate, interstate or international. The government argues that "distance" as used in *§ 4252(b)(1),* includes the services at issue because the toll bands used (intrastate, interstate and international) are based on distance. ABIG contends that the toll bands are not based on distance, but are based on political units, i.e. the governmental entity having regulatory authority over the services.

While there may be *some* correlation between distance and the geopolitical subdivisions, the rates themselves do not vary by distance per se. n4 The jurisdictional boundaries - interstate, intrastate, and international - are divisions of regulatory authority between the Federal Communications Commission and state regulators. *See Louisiana Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 360, 106 S. Ct. 1890, 1894, 90 L. Ed. 2d 369 (1986).* In *Honeywell International*, the government made the same argument it makes here. *See 64 Fed. Cl. at 201, at *14.* The *Honeywell* court, relying on the several [**21] other courts faced with this issue, aptly reasoned that the rates at issue, similar to those at issue here, do not vary by "distance" within the meaning of *§ 4252(b)(1).*

> [HN13] '*Section 4252(b)(1)* presumes a formula where the charge correlates to both the elapsed time of the call and the distance - that is, the mileage - that the call travels.' *Fortis, 2005 U.S. Dist. LEXIS 18686, 2004 WL 2085528 at *13.* 'Telephone calls are designated according to geopolitical units due to the federalist regulatory scheme and the demarcation of jurisdiction between the Federal Communications Commission and state regulatory agencies.' *Id.; see Office Max, 309 F. Supp. 2d at 995.* 'The distinctions between intrastate and interstate do not necessarily correlate to distance because, for example, an intrastate call may well travel a longer distance than certain interstate or even international calls.' *Fortis, 2004 U.S. Dist. LEXIS 18686, 2004 WL 2085528 at *13; see Office Max, 309 F. Supp. 2d at 996; Reese, 2004 U.S. Dist. LEXIS 27505, 2004 WL 2901579 at *12. . . .* 'The jurisdictional classifications employed in the long distance service at issue does not amount to service where charges vary in [*1337] amount [**22] with distance and thus do not place the service within *§ 4252(b)(1)*'s definition of toll telephone service.' *Fortis, 2004 U.S. Dist. LEXIS 18686, 2004 WL 2085528 at *13; see Reese, 2004 U.S. Dist. LEXIS 27505, 2004 WL 2901579 at *13.*

*Honeywell Int'l, Inc., 64 Fed. Cl. at 201*; *see also America Online, 64 Fed. Cl. 571, 2005 WL 741847, at *8.* We

agree with the above reasoning. Accordingly, we conclude that the services at issue do not vary by "distance" as required under § 4252(b)(1).

> n4 As argued by ABIG counsel at oral argument, similarly, there is some correlation between weight and belt size, however, weight does not necessarily coincide with belt size. *See America Online, 64 Fed. Cl. 571, 2005 WL 741847, at *9* ("A call from Dulles, Virginia to Toronto covers a shorter distance than a call from Dulles to Seattle, and a call from Dulles to Philadelphia would be shorter than both, yet the rate for calls to Seattle and Philadelphia would be the same, while the rate to Toronto would be different.").

2. Services [**23] at issue do not fall within § 4252(b)(2)

The government argues that even if the services at issue are not taxable under § 4252(b)(1), the services fall within § 4252(b)(2) and are taxable under this provision. The government urges that under a plain reading of this provision, the services are taxable because the charge for the services at issue is "periodic." Section 4252(b)(2) applies to WATS service and provides:

> [A] service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

26 U.S.C. § 4252(b)(2). Again, the government has made the very same argument it makes here to several courts previously faced with this particular issue. We agree with the reasoning of those earlier decisions.

Instead of paying for the "total elapsed transmission time" of the [**24] call, the duration of each call is rounded up to the next highest billing increment and multiplied by a postalized rate to produce a per call charge. Based upon the foregoing, the services at issue are not subject to a "periodic charge." ABIG's long distance services do not fall within the meaning of "toll telephone service" as provided in § 4252(b)(2).

3. Services at issue are not "local" telephone service under § 4252(a)

Finally, the government contends, alternatively, that the services AT&T provided to ABIG are taxable as local telephone services pursuant to § 4252(a). Section 4252(a) defines "local telephone service" as:

> (1) the access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system, and
>
> (2) any facility or service provided in connection with a service described in paragraph (1). [HN14] The term "local telephone service" does not include any service which is a "toll telephone service" or a "private communication service" as defined in subsection (b) and (d).

While conceding that "local" is not defined by the [**25] I.R.C., the government argues that the legislative history demonstrates that the term is broad enough to cover the services at issue. The government asserts that Congress used the term "local telephone service" as a catchall in rearranging the telephone tax provision in the 1954 Internal Revenue Code defining "local telephone service" as telephone service not taxable under § 4252. *See* 1954 I.R.C. § 4252(a). Thus, the government argues that all services not specifically exempted under § 4253 are to be taxed. In addition, the government contends that the 1958 redesignation of local telephone service as "general telephone service" did not remove local telephone service from the tax base.

[*1338] The government's interpretation of "local telephone service" would make the statute a nullity. "It is hardly a plain or natural reading of the statute to claim that the entire United States is part of one 'local telephone system.'" *Honeywell Int'l, Inc., 64 Fed. Cl. at 203* (quoting *Fortis, 2004 U.S. Dist. LEXIS 18686, 2004 WL 2085528 at *15*); *see also Office Max, 309 F. Supp. 2d at 1007* (finding the government's argument that the services should be [**26] deemed local telephone service because Congress had to intend to tax the service at issue, "entirely unpersuasive" and holding "there is absolutely no basis upon which to find that the long-distance service at issue herein falls within the statutory definition of 'local telephone service'). Moreover, "the government's argument mischaracterizes the structure of the statute[.] *Section 4251* [HN15] sets out which items will be taxed, . . . *Section 4252* defines those terms[, and] *Section 4253* grants exemptions to certain services . . . .

The fact that certain exemptions are specified does not mean that anything not expressly exempted is taxed." *America Online, 64 Fed. Cl. 571, 2005 WL 741847, at *11*. Accordingly, we conclude that the services at issue are not taxable as "local" telephone service under § *4252(a)*.

**V. CONCLUSION**

For the foregoing reasons, we reverse the district court's grant of the government's cross-motion for summary judgment and remand this case with instructions that the district court enter judgment in favor of ABIG.

**REVERSED and REMANDED.** [**27]