Case 1:05-cv-00257-JJF-MPT    Document 19-4    Filed 09/23/2005    Page 1 of 11

Page 6

2004 U.S. Dist. LEXIS 18686, *; 2004-2 U.S. Tax Cas. (CCH) P70,231;
94 A.F.T.R.2d (RIA) 6005

n4 ABIG, which was decided on January 29, 2004, is now on appeal before the Court of Appeals for the Eleventh Circuit, No. 04-10720. Plaintiff's counsel in ABIG is the same as in this case and has provided the Court with a copy of the appellate briefs recently filed in that case.

In ABIG, the court recognized that the first question [*12] in interpreting § 4252(b)(1) is whether the phrase "varies in amount with distance and time" is ambiguous. The court found that "the statutory language is ambiguous because Congress could be using the conjunctive word 'and' in this instance to mean 'either or both of two alternatives,' that is, to mean where there is a toll charge which varies in amount with the distance or elapsed transmission time or both." *ABIG, 308 F. Supp. 2d at 1365*. Having found the statute ambiguous, the ABIG court examined extrinsic evidence of congressional intent, including the legislative history of the 1965 amendments. The court stated that "it is clear that the legislative intent was to impose an excise tax on all commercial local and long-distance telephone services, as well as on telegraph services." *ABIG, 308 F. Supp. 2d at 1369*. The ABIG court thus interpreted "distance and elapsed time" disjunctively to fulfill Congress's intent of taxing all long-distance services.

The ABIG court also supported its conclusion with IRS Revenue Ruling 79-404, issued in 1979, which considered the application of § 4252 to ship-to-shore communications where callers were [*13] charged according to a per-minute rate that did not depend on the distance between the origin and destination of the call. See *ABIG, 308 F. Supp. 2d at 1370-72, 1372 n.14*; see also *Rev. Rul. 79-404, 1979-2 C.B. 382, 1979 WL 51192, 1979 IRB LEXIS 291*. n5 The Ruling acknowledged:

> Literally, the service provided in this case does not come within the definition of ... "toll telephone service" as [it is] currently defined in *section 4252* of the Code ... because the charge for such service does not vary with distance and therefore does not meet the requirement of *section 4252(b)(1)*.

*Rev. Rul. 79-404, 1979 IRB LEXIS 291*, at *3-*4. Nonetheless, the IRS stated "that [HN6] a statute may be given an interpretation other than that which follows from its literal language where such interpretation is required in order to comport with the legislative intent." *1979 IRB LEXIS 291* at *4; see also *1979 IRB LEXIS 291* at *5 (citing *United States v. Am. Trucking Ass'ns, 310 U.S. 534, 84 L. Ed. 1345, 60 S. Ct. 1059 (1940)*, and *Corn Prods. Refining Co. v. Comm'r, 350 U.S. 46, 100 L. Ed. 29, 76 S. Ct. 20 (1955)*). The IRS concluded that the ship-to-shore communications [*14] were taxable--even though the amounts varied in elapsed time only--because the "intent of the statute [in taxing long-distance service] would be frustrated if a new type of service otherwise within such intent were held to be nontaxable merely because charges for it are determined in a manner which is not within the literal language of the statute." *1979 IRB LEXIS 291* at *6-*7.

n5 The ship-to-shore communications involved relaying calls from ship radio stations through a satellite and then connecting them into the United States' regular long-distance telephone system. See *Rev. Rul. 79-404, 1979 IRB LEXIS 291*, at *1-*2.

The ABIG court afforded the Ruling "great weight because it expresses a longstanding IRS interpretation of § 4252(b)(1), it is entirely reasonable, and it is consistent with the intent of Congress to tax commercial long-distance telephone services." *ABIG, 308 F. Supp. 2d at 1372*. The court found that subsequent congressional reenactment of § 4252 further supported [*15] its view of the statute. See *id. at 1372-73*. The court found that even if Congress was unaware of the Ruling itself, the legislative histories of the 1986 reenactment and a 1997 amendment indicated an intent to tax all long-distance telephone service. See *id. at 1373*.

In OfficeMax, the district court for the Northern District of Ohio reached the opposite conclusion, finding that § 4252(b)(1) unambiguously defines toll service as involving charges that vary in amount with both distance and elapsed time. *OfficeMax, 309 F. Supp. 2d at 993*. The OfficeMax court expressly addressed the reasoning in ABIG but concluded:

> Although the present-day Congress might wish to tax long-distance service as it is currently charged (i.e., on the basis of elapsed transmission time only), this Court believes the relevant inquiry is what Congress intended when it amended the statute in 1965. Given the fact that both distance and time influenced charges for long-distance service at that time, this Court feels compelled to conclude that the definition of that term is not ambiguous and that Congress' plain and unambiguous requirement that [*16] charges must vary

Case 1:05-cv-00257-JJF-MPT    Document 19-4    Filed 09/23/2005    Page 2 of 11

Page 7

2004 U.S. Dist. LEXIS 18686, *; 2004-2 U.S. Tax Cas. (CCH) P70,231;
94 A.F.T.R.2d (RIA) 6005

by both distance and time should be given full effect.

*Id. at 995.* The OfficeMax court also discussed in depth *Revenue Ruling 79-404* and found that it was neither supported by the legislative history of the 1965 amendments, nor justified on the theory that a statute's literal language can be abandoned if contrary to congressional intent. See *id. at 999-1000* (reviewing legislative history); *id. at 1001-03* (criticizing Ruling's reliance on American Trucking and Corn Products and concluding that circumstances did not require departing from statute's plain language). The OfficeMax court further found that congressional approval of the Ruling could not be inferred from subsequent reenactment of the statute. See *id. at 1003-05.*

IV.

In the current motions, the plaintiff and the defendant have taken positions on the application of *26 U.S.C. § 4252(b)(1)* that are substantially similar to those taken by the courts in OfficeMax and ABIG, respectively. Fortis argues that the plain meaning of the provision requires that the long-distance toll charges at issue vary both in distance [*17] and time to be taxable. The Government argues that the Court should not apply the literal language of the statute and should instead defer to the Revenue Ruling and enforce the alleged congressional purpose of taxing all long-distance telephone service.

A.

[HN7] "Interpretation of a statute must begin with the statute's language." *Mallard v. United States District Court, 490 U.S. 296, 300, 104 L. Ed. 2d 318, 109 S. Ct. 1814 (1989); Saks v. Franklin Covey Co., 316 F.3d 337, 345 (2d Cir. 2003).* To ascertain the plain meaning of a provision, the court should look to the language of the provision in light of the statutory scheme as a whole. See id. If the statutory terms are unambiguous, the inquiry generally ends there, and the statute is construed according to its plain meaning. See *United States v. Gayle, 342 F.3d 89, 92 (2d Cir. 2003); Greenery Rehabilitation Group, Inc. v. Hammon, 150 F.3d 226, 231 (2d Cir. 1998).* Where the text is ambiguous, the court may also consider the legislative history and the canons of statutory construction to resolve the ambiguity. See *Greenery Rehabilitation Group,150 F.3d at 231.*

The [*18] initial issue in this case involves the portion of *§ 4252(b)(1)* that defines toll telephone service as "a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication." *26 U.S.C. § 4252(b)(l).* This Court agrees with the *OfficeMax* court that [HN8] the meaning of the provision is plain: the amount of the toll charge must depend on both the distance and the elapsed time of the call. Under the long-distance service provided to Fortis, each call, except for those to and from Mexico, was charged based on the elapsed transmission time but without regard to the distance or mileage that the call traveled. The Government's position effectively eliminates "distance" from the statute, thus violating the principle that [HN9] "a statute generally should not be construed so as to render a word or clause inoperative." *Rangolan v. County of Nassau, 370 F.3d 239, 251 (2d Cir. 2004)* (internal quotation omitted).

The Government, in its reply papers, has advanced the ABIG court's argument that the statute is ambiguous because "distance and time" could be [*19] understood disjunctively as to cover charges that vary based on either distance or time, or both. The ABIG court correctly points out that in some contexts "and" can mean "or," and in fact there are examples of that usage in *§ § 4251* and *4252.* See *ABIG, 308 F. Supp. 2d at 1365* (noting that *§ 4251(b)(1)* defines "communication services" as local telephone service, toll telephone service, *and* teletypewriter exchange service, and that "and" also joins *§ 4252(b)(1)* and *(b)(2)*). But "ambiguity is a creature not of definitional possibilities but of statutory context," *Brown v. Gardner, 513 U.S. 115, 118, 130 L. Ed. 2d 462, 115 S. Ct. 552 (1994),* and these examples merely show that in certain contexts "and" can be used in the cumulative sense of presenting multiple, often mutually exclusive, alternatives. n6 Nothing in the grammatical structure or context of *§ 4252(b)(1)* requires such atypical treatment of "and" as "or." See *Crooks v. Harrelson, 282 U.S. 55, 58, 75 L. Ed. 156, 51 S. Ct. 49 (1930)* (finding "nothing in the context or in other provisions of the statute *[§ 402 of the Internal Revenue Code]* which warrants the conclusion that [*20] the word 'and' was used otherwise than in its ordinary sense," which is conjunctive); cf. *Edelman v. Taittinger (In re Edelman), 295 F.3d 171, 177 (2d Cir. 2002)* (noting that words in statutes generally carry their ordinary and common meaning). Unlike the three types of "communications services" in *§ 4251(b) (1)* and the two types of "toll telephone service" in *§ 4252(b)(1)* and *(2),* distance and time are not mutually exclusive concepts, and it is entirely natural to understand those characteristics of telephone service in the conjunctive. n7

n6 For example, Webster's Third New International Dictionary 80 (1993) notes that "and" can be "used as a function word to express ... (6) reference to either or both of two alternatives <choose between him [approximately] me> esp. in legal language when also plainly intended to mean *or* <bequeathed to a person [approximately]

Case 1:05-cv-00257-JJF-MPT    Document 19-4    Filed 09/23/2005    Page 3 of 11

Page 8

2004 U.S. Dist. LEXIS 18686, *; 2004-2 U.S. Tax Cas. (CCH) P70,231;
94 A.F.T.R.2d (RIA) 6005

her bodily issue> <property taxable for state [approximately] county purposes> ... "

n7 In contrast, in *Peacock v. Lubbock Compress, Co., 252 F.2d 892 (5th Cir. 1958)*, the phrase "an employer engaged in ... the ginning and compressing of cotton" was construed to cover employers engaged in ginning or compressing because it was well understood that ginning and compressing were separate operations and that no employers engaged in both. *Id. at 893-94.*

[*21]

Indeed, as the OfficeMax court noted in rejecting the ABIG court's construction, "both distance and time were, in fact, factors in determining charges for toll telephone service at the time of the 1965 amendments." *OfficeMax, 309 F. Supp. 2d at 995.* Thus [HN10] the phrase "distance and elapsed transmission time," when drafted, meant precisely what it appears to mean: "that a charge must vary by both distance and elapsed transmission time, and not by one or the other." Id. The argument that "and" can mean "or" is also inconsistent with *Revenue Ruling 79-404*, which recognized that the offshore-communication service was not toll telephone service under the literal terms of the statute because "the charge for such service does not vary with distance and therefore does not meet the requirement of *section 4252(b)(1).*" *Rev. Rul. 79-404, 1979 IRB LEXIS 291*, at *4; see also *Office Max, 309 F. Supp. 2d at 993 n.11.* Therefore, [HN11] toll telephone service in § 4252(b)(1) is unambiguously defined as involving charges that vary with both distance and elapsed transmission time.

B.

[HN12] The plain meaning of § 4252(b)(1) may still be set aside [*22] if it would lead to "absurd or futile results" or "merely an unreasonable one plainly at variance with the policy of the legislation as whole." *Am. Trucking, 310 U.S. at 544* (internal quotation omitted); see also *Chrzanoski v. Ashcroft, 327 F.3d 188, 196 (2d Cir. 2003)* (citing American Trucking). In such cases, a court may follow the statute's purpose rather than its literal text. See *Am. Trucking, 310 U.S. at 544.* A statute's plain meaning, however, should be disregarded only in " 'rare and exceptional circumstances, and ... only upon 'the most extraordinary showing of contrary intentions.'" *United States v. Lucien, 347 F.3d 45, 51 (2d Cir. 2003)* (quoting *Garcia v. United States, 469 U.S. 70, 75, 83 L. Ed. 2d 472, 105 S. Ct. 479 (1984)*); see also *United States v. Ron Pair Enters., 489 U.S. 235, 242, 103 L. Ed. 2d 290, 109 S. Ct. 1026 (1989)* ("The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." (internal quotation and alteration omitted)); *Crooks, 282 U.S. at 60* [*23] (stating that departure from literal meaning is warranted "only under rare and exceptional circumstances" where "the absurdity [is] so gross so as to shock the general moral or common sense").

The Government argues that the legislative history to § 4252 indicates an intent to tax all long-distance service that should be enforced despite the literal language of the statute. Section 4252, in its current form, was enacted in 1965, and the Court of Appeals for the Federal Circuit, in a 1982 case involving charges for teletypewriter service under *26 U.S.C. § 4252(c)*, described the 1965 amendments as having three purposes. See *Trans-Lux Corp. v. United States, 696 F.2d 963, 966 (Fed Cir. 1982).* The first purpose was to reduce the tax rate on communication services from ten percent to three percent, with subsequent annual reductions of one percent until the tax was ultimately eliminated. n8 *Id. at 966.* The second purpose was to create through § 4252(d) an exception for private communication services, such as "intercom" or intrapremise services. *Id. at 967.* The third purpose identified in Trans-Lux is the most [*24] relevant to the current issue: to "update and modify the definitions of local telephone service, toll telephone service, and teletypewriter exchange service." Id.; see also *OfficeMax, 309 F. Supp. 2d at 999* (listing purposes of Act and focusing on last purpose involving "updated and modified" definitions). n9

n8 The phase-out rates and phase-out periods for the federal excise tax ("FET") on communications services were continually adjusted by subsequent legislation. (See Vasington Decl. at 7-8); see also *Trans-Lux, 696 F.2d at 966.* The rate was raised to as high as ten percent (1966-1972) and reached as low as one percent (1982), until Congress, in 1982, established an FET rate of three-percent, which was made permanent (not subject to phase-out) by legislation in 1990. (See Vasington Decl. at 7-8.) The current rate remains at three percent. (Id. at 8.)

n9 An additional purpose not relevant to this case was the repeal of the excise tax on telegraph service and wire and equipment service. See *OfficeMax, 309 F. Supp. 2d at 999.*

[*25]

Prior to 1965, taxable toll telephone service was defined in *26 U.S.C. § 4252(b)* simply as "a telephone or radio telephone message or conversation for which (1) there is a toll charge, and (2) the charge is paid within the United States." Excise Tax Technical Changes Act of 1958, Pub. L. No. 85-859, § 133, 72 Stat. at 1290; (see

Case 1:05-cv-00257-JJF-MPT    Document 19-4    Filed 09/23/2005    Page 4 of 11

Page 9
2004 U.S. Dist. LEXIS 18686, *; 2004-2 U.S. Tax Cas. (CCH) P70,231;
94 A.F.T.R.2d (RIA) 6005

also Vasington Decl. at 5-6). The 1965 amendments eliminated this broad definition of toll service, and, as explained in the legislative history, toll telephone service under § 4252(b) was refined to include, first,

> a telephonic quality communication for which a toll charge is made which varies in amount with the distance and the lapsed transmission time of individual communications, but only if the charge is paid within the United States.

H.R. Rep. No. 89-433, 1965 U.S.C.C.A.N. 1645, 1677. n10 This passage from the House Report recited almost precisely the statutory language in § 4252(b)(1), and it effectively described AT&T's MTS service, which billed subscribers per call based on a rate that was a function of the elapsed time and the applicable mileage band-that is, the distance between the call's origin and [*26] destination. (See Pearce Decl. at 4.) The definition of toll telephone service was also updated to include "WATS (wide area telephone service) ... whereby, for a flat charge, the subscriber is entitled to make unlimited calls within a defined area (sometimes limited as to the maximum number of hours)." H.R. Rep. No. 89-433, 1965 U.S.C.C.A.N. at 1677. This statement referred to § 4252(b)(2), and it described AT&T's WATS service, which had been introduced in 1961. (See Pearce Decl. at 3.)

> n10 The corresponding Senate Report is virtually identical in all relevant respects to the House Report. See S. Rep. No. 89-324, 1965 U.S.C.C.A.N. 1690, 1725.

The Government maintains that although the 1965 amendments eliminated the broad definition of toll service previously in place, Congress allegedly did not intend to narrow the scope of taxable long-distance service. Instead, the Government argues, the definitions had "been updated and modified to make it clear that it is the service as such which is being taxed [*27] and not merely the equipment being supplied." H.R. Rep. No. 89-433, 1965 U.S.C.C.A.N. at 1676. Because AT&T had a virtual monopoly over long distance service, the statute did effectively tax virtually all long-distance service available at the time, and the Government contends that the definitions, in the words of *Revenue Ruling 79-404*, merely "reflected Congress' understanding of how the charges for long distance calls were computed at the time the section was enacted." See *Rev. Rul. 79-404, 1979 IRB LEXIS 291*, at *6. n11

> n11 The Government also cites to recommendations made by the Executive Branch for the enactment of the 1965 amendments. See House Comm. on Ways and Means, 89th Cong., Materials Prepared by the Executive Branch Concerning Recommendations Proposed by the President Relative to the Excise and Fuel Taxes Including Draft Bills and Section-by-Section Analysis (Comm. Print May 17, 1965) ("Executive Branch Materials" or the "Materials"). In addressing § 4252(b)(1), the Executive Branch Materials recited word-for-word the language of the statute, and then added: "This definition is basically the same as present law except for clarifying changes." Id. at 21. The Materials support the undisputed point that § 4252(b)(1) was intended to cover all per-call long-distance service. But the key issue is the import of the "clarifying changes," and for the reasons stated in the text, it is difficult to argue that the specific definition in the current version of § 4252(b)(1) is the same as the very broad definition in the prior version.

[*28]

To an extent, the structure of the statute does reflect a general purpose of taxing all long-distance service, at least as it then existed. But, the refined definitions of the two forms of toll telephone service cannot be explained as merely a clarification that it is service rather than the equipment being taxed, and, as the Trans-Lux court concluded, it appears likely that "the definitions were updated and modified in order to meet the changing technology and market conditions of the industry." *Trans-Lux, 696 F.2d at 967*. The statute and its legislative history thus equally reflect an intent to tax specifically the service described and to base the tax on a relatively specific description of the services provided by the industry.

Moreover, there is no language in § 4252(b) or its legislative history to support the Government's claim that the overriding purpose of the statute was to tax all long-distance service in perpetuity. Nor is there any indication that Congress intended the definition of toll telephone service to be construed broadly or that it intended the services described to be merely illustrative. In contrast, § 4252(c), as enacted in 1965 and [*29] in its current form, defines "teletypewriter exchange service" as involving the "privilege of intercommunication" by a teletypewriter station "to which the subscriber is entitled upon payment of a charge or charges (whether such charge or charges are determined as a flat periodic amount, on the basis of distance and elapsed transmission time, *or in some other manner*)." *26 U.S.C. § 4252(c)* (emphasis added). Congress could have included

Case 1:05-cv-00257-JJF-MPT    Document 19-4    Filed 09/23/2005    Page 5 of 11

Page 10
2004 U.S. Dist. LEXIS 18686, *; 2004-2 U.S. Tax Cas. (CCH) P70,231;
94 A.F.T.R.2d (RIA) 6005

similar inclusive language in § 4252(b) to indicate an intent to tax all forms of long-distance service regardless of the manner in which it was charged. But there is no such language in § 4252(b)(1) or its legislative history. The difference between *subsections (b)(1)* and *(c)* is powerful evidence of the statute's meaning because [HN13] "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Brown*, 513 U.S. at 120 (alteration in original) (internal quotation omitted); *Rangolan*, 370 F.3d at 251.

The more specific and narrow [*30] understanding of Congress's intent-that Congress intended to tax the services it described-is also supported by the fact that the 1965 Act reduced the FET and scheduled it for elimination on January 1, 1969. See *Trans-Lux, 696 F.2d at 966*. While subsequent legislation postponed the elimination of the FET and eventually made it permanent, "importantly, the proper inquiry focuses on the ordinary meaning of the [provision] at the time Congress enacted it." *Bedroc Ltd. v. United States, 541 U.S. 176, 158 L. Ed. 2d 338, 124 S. Ct. 1587, 1594 (2004)*; see also *OfficeMax, 309 F. Supp. 2d at 995* (stating that "although he present-day Congress might wish to tax long-distance service as it is currently charged ... the relevant inquiry is what Congress intended when it amended the statute in 1965). Given the intended elimination of the tax within four years, it is difficult to argue that Congress in 1965 intended the definition of toll telephone service to be so adaptable as to incorporate innovations in the forms of service arising thirty years later.

The Government, therefore, cannot make the "extraordinary showing of contrary intentions" to override the [*31] plain meaning of the statute. See *Lucien, 347 F.3d at 51* (quoting *Garcia, 469 U.S. at 75*). Indeed, the clearest lesson of the legislative history is that Congress, in referring to charges that vary "in amount with the distance and elapsed transmission time of each individual communication," meant precisely what it said: it intended to tax the AT&T MTS service that varied based on mileage and call duration. This is not a case where Congress inartfully chose the words to effectuate its intent or where the plain meaning has produced absurd or futile results. n12 Congress in 1965 chose the words necessary to tax long-distance service at the time, and in fact, the words of § 4252(b), in their literal form, were sufficient to tax virtually all long-distance service for the next thirty to thirty-five years.

n12 This case thus is not analogous to *Slodov v. United States, 436 U.S. 238, 56 L. Ed. 2d 251, 98 S. Ct. 1778 (1978)*, where the Supreme Court enforced the purpose rather than the literal terms of an "inartfully" drafted statute. *Id. at 250*. That case addressed *26 U.S.C. § 6672*, which imposes liability on "any person required to collect, truthfully account for, and pay over any tax imposed by this title." *Id. at 245*. The petitioner contended that because the statute was phrased in the conjunctive, liability could exist only if the person were charged with all three duties.

The Court rejected that argument because such a result was "obviously at odds with the statute's purpose to assure payment of withheld taxes." *Id. at 248*. But the Court did not merely rely on the obstruction of congressional purpose. It also investigated the legislative history and found that, in context, Congress was, "perhaps inartfully, ... attempting to clarify the type of tax to which the penalty section was applicable." *Id. at 250*. That is, the tax had to be subject to all three duties, but liability could be imposed on a person charged with any of the three. Thus in *Slodov*, the legislative history indicated that Congress, upon drafting the statute, intended the words to have a different construction than the literal language suggested. That is not the situation in this case.

[*32]

The recent emergence of service that falls outside of the current definitions does not justify abandoning the statute's plain and original meaning. Updating the statute is not the Court's role, particularly when doing so would require reading the term "distance" out of the statute. As the Supreme Court has instructed, "there is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." *Lamie v. United States Tr., 540 U.S. 526, 124 S. Ct. 1023, 1032, 157 L. Ed. 2d 1024 (2004)* (internal quotation omitted). The Lamie Court, in the face of an alleged drafting error by Congress, maintained that it was "unwilling[] to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome," id., and that[HN14] if the statute needs to be amended, that task should be left to Congress. See *id. at 1034*. This case does not even involve a drafting error; it involves a disconnect between a forty-year-old tax scheme and recent innovations in the telecommunications industry. It is plainly Congress's responsibility to decide whether to revise the statute to accommodate [*33] such developments.

For similar reasons, the cases cited by the Revenue Ruling and the Government--American Trucking and Corn Products--do not support abandoning the statute's

Case 1:05-cv-00257-JJF-MPT    Document 19-4    Filed 09/23/2005    Page 6 of 11

Page 11
2004 U.S. Dist. LEXIS 18686, *; 2004-2 U.S. Tax Cas. (CCH) P70,231;
94 A.F.T.R.2d (RIA) 6005

plain meaning. In American Trucking, the Supreme Court did state that courts may follow a statute's purpose rather than it literal terms when the language would produce unreasonable results "plainly at variance with the policy of the legislation as a whole." *Am. Trucking, 310 U.S. at 544* (internal quotation omitted). The case, however, involved the meaning of the term "employees" in Section 204 of the Motor Carrier Act, and the Court interpreted the term as "limited to those employees whose activities affect the safety of operation." *Id. at 553*. The Court thus assigned to an undefined term a narrow meaning that limited the jurisdiction of the Interstate Commerce Commission. Ultimately, the Court reached that conclusion through the uncontroversial process of construing an ambiguous and potentially overbroad provision in light of, among other things, the structure, history, and purpose of the statute. See *id. at 545-53*; see also *OfficeMax, 309 F. Supp. 2d at 1001* [*34] (discussing and distinguishing American Trucking from this case). In contrast, the Government argues that "toll telephone service" has been over defined and that this Court should eliminate the specific distance requirement evident from the statute's plain meaning in favor of a generally inferred congressional intent. There is no basis to do so where the plain meaning of *§ 4252(b)(1)* is not absurd or unreasonable, and the broad intent asserted by the Government is not clearly indicated by the statute's language, its legislative history, or the context of its enactment. n13

n13 The Revenue Ruling also cites Corn Products for the proposition that a court should not follow the literal terms of a statute "as to defeat rather than further the purpose of Congress." *Corn Prods., 350 U.S. at 52*. The OfficeMax court thoroughly addressed the Ruling's reliance on Corn Products, describing the case, its meaning, and why it fails to support the Government's construction of *§ 4252(b)(1)*. See *OfficeMax, 309 F. Supp. 2d at 1002*. In short, Corn Products was later interpreted in *Arkansas v. Best, 485 U.S. 212, 99 L. Ed. 2d 183, 108 S. Ct. 971 (1988)*, as applying the rule that a general definition in a statute should be construed narrowly while its exceptions should be construed broadly. See *id. at 220*. Thus while corn futures held by a refiner of corn syrup were not actual inventory, they fell under a broad construction of the "inventory" exception to a statute defining "capital assets." See *id. at 220-21, 223*.

Corn Products, like American Trucking, can be understood as involving traditional canons of statutory construction, rather than as applying a broad principle of rejecting a statute's plain meaning in favor of its purpose. In any event, case law clearly indicates that a statute's plain meaning should only be disregarded upon "the most extraordinary showing of contrary intentions." See *Lucien, 347 F.3d at 51* (internal quotation omitted); see also *Ron Pair Enters., 489 U.S. at 242*. For the reasons explained above, there is no such showing in this case.

[*35]

C.

The Government is also mistaken in arguing that Revenue Ruling 79-404 is entitled to deference and that the subsequent reenactment of the statute by Congress has given the Ruling the force of law. The Court of Appeals for the Second Circuit has stated that revenue rulings issued by the IRS "are entitled to great deference, and have been said to have the force of legal precedent unless unreasonable or inconsistent with the provisions of the Internal Revenue Code." *Gillespie v. United States, 23 F.3d 36, 39 (2d Cir. 1994)* (internal quotation omitted). There is some doubt as to whether revenue rulings are necessarily entitled to such deference after the Supreme Court's more recent decisions in *Christensen v. Harris County, 529 U.S. 576, 146 L. Ed. 2d 621, 120 S. Ct. 1655 (2000)*, and *United States v. Mead Corp., 533 U.S. 218, 150 L. Ed. 2d 292, 121 S. Ct. 2164 (2001)*; instead, the appropriate level of deference may simply depend on a ruling's power to persuade. See *Aeroquip-Vickers, Inc. v. Comm'r, 347 F.3d 173, 180-81 (6th Cir. 2004)* (finding that revenue rulings, unlike treasury regulations, do not involve IRS's ability make rules with [*36] force of law and, consistent with Christensen and Mead, should be afforded deference depending on factors articulated in *Skidmore v. Swift & Co., 323 U.S. 134, 140, 89 L. Ed. 124, 65 S. Ct. 161 (1944)*), cert. filed, No. 03-1449, 72 U.S.L.W. 3674 (Apr. 19, 2004); see also *ABIG, 308 F. Supp. 2d at 1370-72* (discussing deference owed to revenue rulings after Christensen and Mead). n14

n14 The IRS has recently proposed a Treasury Regulation that would provide in full: "For a communications service to constitute toll telephone service described in *section 4252(b)(1)*, the charge for the service need not vary with the distance of each individual communication." Prop. Treas. Reg. § 49.4252-0, *68 Fed Reg. 15690* (Apr. 1, 2003), attached at Pl. Ex. 15. The proposed regulation would thus formally adopt the decision of *Revenue Ruling 79-404*, but it has not yet been enacted and does not affect the deference owed to the IRS's construction of the statute.

Case 1:05-cv-00257-JJF-MPT    Document 19-4    Filed 09/23/2005    Page 7 of 11

Page 12
2004 U.S. Dist. LEXIS 18686, *; 2004-2 U.S. Tax Cas. (CCH) P70,231;
94 A.F.T.R.2d (RIA) 6005

[*37]

In any event, even under the more deferential standard, [HN15] Revenue Ruling 79-404 is not entitled to deference because it is inconsistent with the unambiguous definition of toll telephone service in § 4252(b)(1). The Revenue Ruling concedes that its interpretation of § 4252(b)(1) is contrary to the statute's literal language, and, as explained above, the Ruling's reliance on American Trucking and Corn Products does not provide a persuasive basis to depart from the statute's plain meaning. Statutes often contain general terms that call for regulatory interpretation and reflect a decision by Congress to delegate implementation to a regulatory body. See *Nat'l Muffler Dealers Ass'n v. United States*, 440 U.S. 472, 476-77, 59 L. Ed. 2d 519, 99 S. Ct. 1304 (1977). Section 4252(b)(1) is not such an statute, and the Revenue Ruling does not purport to provide meaning to general terms; rather it effectively attempts to erase a specific term from the statute.

The subsequent reenactment of the statute since the issuance of the Revenue Ruling also does not provide the Ruling with the force of law. It is generally true that [HN16] "Congress is presumed to be aware of an administrative [*38] or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580, 55 L. Ed. 2d 40, 98 S. Ct. 866 (1978), quoted by *United States v. Awadallah*, 349 F.3d 42, 54 (2d Cir. 2003). Consistent with this principle, "treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law." *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 220, 149 L. Ed. 2d 401, 121 S. Ct. 1433 (2001) (quoting *Cottage Sav. Ass'n v. Comm'r*, 499 U.S. 554, 561, 113 L. Ed. 2d 589, 111 S. Ct. 1503 (1991)).

[HN17] The reenactment doctrine, however, tends to be applied when there is reason, either based on the nature of regulatory interpretations or the context of the reenactment, to presume that Congress was aware of the interpretation that it was supposedly adopting. For example, in Cleveland Indians Baseball, the Supreme Court stated that reenactment supported deference for "an agency's steady interpretation of its own 61-year-old regulation implementing a 62-year-old statute." *Id.* [*39] *at 220.* n15 In Lorillard, the Court specifically noted that the judicial interpretations underlying the issue were "well established" and that "Congress exhibited both a detailed knowledge of the [relevant] provisions and their judicial interpretation." *Lorillard, 434 U.S. at 580-81.* Similarly, the Court of Appeals in Awadallah found: "In Lorillard, as here, there was clear evidence that Congress had considered the specific judicial interpretation in question." *Awadallah, 349 F.3d at 54.* n16

n15 Cottage Savings also involved a treasury regulation, which was implemented in 1934 and required a "disposition of property" under 26 U.S.C. § 1001(a) to involve the exchange of "materially different" properties to constitute a realization event. See *Cottage Sav. Ass'n, 499 U.S. at 561.* The Supreme Court found the regulation reasonable because it was consistent with the "landmark precedents on realization" decided around the time of the statute's initial enactment, and subsequent reenactments had left undisturbed the realization principles established in both the regulation and the landmark cases. *Id. at 561-62.*

[*40]

n16 Another example is *Bob Jones Univ. v. United States*, 461 U.S. 574, 76 L. Ed. 2d 157, 103 S. Ct. 2017 (1983), which involved IRS rulings that withheld tax-exempt status from discriminatory institutions. The Supreme Court noted that congressional inaction "is not often a useful guide," but it found Congress's acquiescence to the IRS rulings significant because of Congress's "prolonged and acute awareness of so important an issue." *Id. at 600-01.*

Moreover, [HN18] courts in a number of cases have expressly declined to apply the reenactment doctrine where evidence of congressional awareness was lacking. For example, in Brown v. Gardner, the Supreme Court rejected a reenactment doctrine argument with respect to a regulation by the Department of Veteran Affairs (the "VA") because, among other reasons, "the record of congressional discussion preceding reenactment makes no reference to the VA regulation, and there is no other evidence to suggest that Congress was even aware of the VA's interpretive position." *Brown, 513 U.S. at 121.* Similarly, in *SEC v. Sloan*, 436 U.S. 103, 56 L. Ed. 2d 148, 98 S. Ct. 1702 (1978), [*41] the Supreme Court stated that it was "extremely hesitant to presume general congressional awareness of the [Securities and Exchange Commission's] construction [of a statute granting it power to suspend trading] based only upon a few isolated statements in the thousands of pages of legislative documents." *Id. at 121.* The Court explained that "without additional indication of more widespread congressional awareness," the evidence was "simply not sufficient to invoke the presumption" of congressional approval for a pre-existing regulatory interpretation. Id.

Case 1:05-cv-00257-JJF-MPT    Document 19-4    Filed 09/23/2005    Page 8 of 11

Page 13

2004 U.S. Dist. LEXIS 18686, *; 2004-2 U.S. Tax Cas. (CCH) P70,231;
94 A.F.T.R.2d (RIA) 6005

Other decisions confirm that [HN19] subsequent re-enactment is significant only where the context indicates that Congress was aware of the regulatory interpretation. See *N. Haven Bd. of Educ. v. Bell, 456 U.S. 512, 535, 72 L. Ed. 2d 299, 102 S. Ct. 1912 (1982)* ("Where an agency's statutory construction has been fully brought to the attention of the public and the Congress, and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned." (internal quotations omitted)); *Nat'l Muffler Dealers, 440 U.S. at 477* [*42] (noting that "the degree of scrutiny Congress has devoted to the regulation during subsequent re-enactments of the statute" factors into deference owed to regulation); *Isaacs v. Bowen, 865 F.2d 468, 475 (2d Cir. 1989)* ("The basic requirement for the application of the [reenactment] doctrine remains congressional awareness coupled with meaningful action aimed at the agency's interpretation."). The reenactment doctrine is best understood as a tool for interpreting a statute and understanding its legislative history if the statute is otherwise ambiguous. See *Fishgold v. Sullivan Drydock & Repair Corp., 154 F.2d 785, 790-91 (2d Cir. 1946)*; see also *Peoples Fed. Sav. & Loan Ass'n of Sidney v. CIR, 948 F.2d 289, 302-03 (6th Cir. 1991)*. Thus the "obvious trump" to any reenactment argument is that "'where the law is plain, subsequent reenactment does not constitute an adoption of a previous administrative construction.'" *Brown, 513 U.S. at 121* (quoting *Demarest v. Manspeaker, 498 U.S. 184, 190, 112 L. Ed. 2d 608, 111 S. Ct. 599 (1991)*, which rejected reenactment argument where statute's meaning was plain and nothing indicated [*43] congressional awareness of a prior administrative construction).

In this case, the reenactment doctrine cannot alter the plain meaning of the statute, and, moreover, there is nothing to indicate the Congress adopted, tacitly or otherwise, the interpretation presented in *Revenue Ruling 79-404*. The Revenue Ruling was limited to the narrow issue of ship-to-shore communications, and there is no evidence that the Ruling was ever cited or applied between 1979 and the latest congressional reenactment in 1998. See *ABIG, 308 F. Supp. 2d at 1372* (noting that Revenue Ruling 79-404 has been cited in Private Letter Rulings in 1999 and 2001). While the Ruling was issued over twenty years ago, it is not comparable to the long-standing treasury regulations in Cleveland Indians Baseball and College Savings. Ultimately, there is no indication that Revenue Ruling 79-404 was brought to the attention of Congress or that Congress in any subsequent reenactments considered the question involved in that Ruling. See *OfficeMax, 309 F. Supp. 2d at 1004-05* (finding that congressional approval of Revenue Ruling 79-404 [*44] could not be inferred from reenactment and distinguishing Cleveland Indians Baseball). There is thus no basis to find that subsequent reenactment of the statute has provided it with the force of the law. n17

n17 In *Ashland Oil, Inc. v. Commissioner, 95 T.C. 348 (1990)*, the Tax Court rejected a reenactment argument with respect to a revenue ruling because there was no showing "that Congress has been even aware of this administrative interpretation, which has not been litigated in a reported decision and has been cited in only a smattering of private letter rulings." *Id. at 363*. "Without affirmative indications of congressional awareness and consideration," the Tax Court explained, "we decline to cloak this revenue ruling with the aura of legislative approval." Id. The same conclusion is warranted in this case.

In sum, neither the Revenue Ruling itself nor the subsequent reenactment of the statute compels an interpretation of *§ 4252(b)(1)* that is different from the provision's [*45] plain meaning and directly expressed intent to tax long-distance service where the charges vary by both distance and time.

D.

In the alternative to advancing its interpretation of *§ 4252(b)(1)*, the Government argues that Fortis's toll telephone service does vary by "distance" because rates may vary depending on whether the call is intrastate, interstate, or international. This alternative argument is also unpersuasive. *Section 4252(b)(1)* presumes a formula where the charge correlates to both the elapsed time of the call and the distance--that is, the mileage--that the call travels. As the plaintiff points out, telephone calls are designated according to geopolitical units due to the federalist regulatory scheme and the demarcation of jurisdiction between the Federal Communications Commission and state regulatory agencies. The distinctions between intrastate and interstate do not necessarily correlate to distance because, for example, an intrastate call may well travel a longer distance than certain interstate or even international calls.

For essentially these reasons, the OfficeMax court reached the same conclusion as this Court: the jurisdictional classifications employed [*46] in the long distance service at issue does not amount to service where charges vary in amount with distance and thus do not place the service within *§ 4252(b)(1)*'s definition of toll telephone service. See *OfficeMax, 309 F. Supp. 2d at 996*. If the statute defined toll telephone service according to charges that vary by "the location called" and the elapsed time, the Government would have a good argument because "location" could account both for charges

Case 1:05-cv-00257-JJF-MPT    Document 19-4    Filed 09/23/2005    Page 9 of 11

Page 14
2004 U.S. Dist. LEXIS 18686, *; 2004-2 U.S. Tax Cas. (CCH) P70,231;
94 A.F.T.R.2d (RIA) 6005

based on the mileage-band system and for charges related to the political-subdivision system. But the term "distance," in the context of the statue, has a clear and much more specific meaning that does not encompass distinctions based on geopolitical units.

IV.

The Government has also argued that, if the service does not fall within the definition in § 4252(b)(1), it can still be taxed as falling within other definitions of communications services: namely, the second definition of toll telephone service in § 4252(b)(2) or the definition of local telephone service in § 4252(a). Neither argument has merit.

A.

First, the Government argues that if the long-distance service at issue does not fall within the definition [*47] of § 4252(b)(1), then it must fall within the alternative definition of long-distance service in § 4252(b)(2), involving 35

> a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

26 U.S.C. § 4252(b)(2). The plaintiff argues that its service does not fit the above definition because it is not entitled to make an unlimited number of calls "upon payment of a periodic charge" based on a flat amount or the total elapsed transmission time for the period. Instead, the plaintiff pays a per-minute rate for each call placed. The Government argues that the plaintiff effectively pays a periodic charges for unlimited calls because each monthly bill is based on the sum of the elapsed time of the calls made multiplied by the rate.

The Government argues that it [*48] is irrelevant that the bill is determined by multiplying the duration of each call by the rate and then adding the calls, rather than adding the duration of all the calls and then multiplying by the rate. The Government argues that the periodic charge is still determined "upon the basis of total elapsed transmission time" in accordance with § 4252(b)(2). The Government, however, is incorrect in arguing that the method of calculation is irrelevant. As the plaintiff states, a per-call billing method contains a rounding formula where the duration of each call is multiplied by the rate, producing a charge that is then rounded off to the nearest cent. (See Decl. of Stephen J. Rosen, dated Dec. 18, 2003, Ex. A (AT&T Business Service Guide describing rounding of charges).) Under a periodic-charge system based on total elapsed transmission time, each call is not individually assigned a cost. Thus, depending on the actual length of each call, two callers placing the same number of calls and using the same number of minutes at the same rate would not necessarily have the same monthly bill if one were charged according to a per-call plan while the other were charged according to a periodic-charge [*49] plan. Determining the periodic charge on a per-call basis is thus unlikely to produce the same charge as a billing system that charges based on the "total elapsed transmission time."

In any event, even putting aside the issue of rounding formulas, the per-call charges in this case do not fall within the statutory definition in § 4252(b)(2). The statutory scheme in § 4252(b) divides toll telephone service into two categories: *subsection (b)(1)* addresses charges for individual communications (that vary by distance and time) while *subsection (b)(2)* addresses services that involve periodic charges for the privilege of "an unlimited number of telephonic communications" to or from all or a substantial portion of the persons in a specified area whether the charge is based on a flat fee or total elapsed transmission time. Thus, [HN20] the plain meaning of § 4252(b)(2)'s reference to a "periodic charge" is that the provision does not cover services that charge by the individual call. See *OfficeMax, 309 F. Supp. at 1006-07* (rejecting similar argument by Government for essentially same reasons).

To the extent that the statute is ambiguous, the legislative history conclusively shows [*50] that § 4252(b)(2) was intended to cover "WATS (wide area telephone service). This is a long-distance service whereby, for a flat charge, the subscriber is entitled to make unlimited calls within a defined area (sometimes limited as to the maximum number of hours)." H.R. Rep. No. 89-433, 1965 U.S.C.C.A.N. at 1677. No one disputes that § 4252(b)(2) generally described the WATS service introduced by AT&T in 1961 and that the service at issue is not WATS service.

B.

The Government next argues that if Fortis's service does not meet either definition of toll telephone service in § 4252(b), then it must be considered "local service" under § 4252(a), which provides in full:

Case 1:05-cv-00257-JJF-MPT    Document 19-4    Filed 09/23/2005    Page 10 of 11

Page 15
2004 U.S. Dist. LEXIS 18686, *; 2004-2 U.S. Tax Cas. (CCH) P70,231;
94 A.F.T.R.2d (RIA) 6005

[HN21] (a) Local telephone service.-- For purposes of this subchapter, the term "local telephone service" means --

> (1) the access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system, and
>
> (2) any facility or service provided in connection with a service described in paragraph (1).

The term "local telephone service" does not include any service [*51] which is a "toll telephone service" or a "private communication service" as defined in subsections (b) and (d).

26 U.S.C. § 4252(a). The Government argues that because the term "local" is a broad term not defined in the statute, and because Congress allegedly intended to tax all telephone service, the plaintiff's service should be construed as "local telephone service" if it does not fall within any other definition. The Government contends that the "plain" meaning of "local" area could be considered the entire United States.

The Government's argument is without merit. It is hardly a plain or natural reading of the statute to claim that the entire United States is part of one "local telephone system." [HN22] Words are to be construed, unless the context indicate otherwise, according to their ordinary and common meaning, and neither the term "local" nor "local telephone service" is consistent with nationwide service. See Edelman, 295 F.3d at 177 ("where they are not otherwise defined, individual words in a statute carry their ordinary, contemporary, common meaning.") (internal quotation marks and citation omitted). Local service plainly involves [*52] the telephone users' presence in, and their ability to make calls within, a limited geographic area. Moreover, the assertion that local service can be construed as including nationwide long-distance service is entirely contrary to the regulatory system, which is premised on a distinct notion of local telephone service, local exchange systems, and local telephone companies and carriers. See, e.g., 47 C.F.R. § 36.377(a)(1)(i) ("Local service order processing expense (primarily local telephone service orders) is assigned to the State jurisdiction."); 47 C.F.R. § 51.217 (defining duties of local exchange carrier providing local telephone service vis-a-vis other providers of telephone exchange service and telephone toll service).

The rejection of the Government's asserted "plain" meaning arguments with respect to 26 U.S.C. § § 4252(a) and (b)(2) is not inconsistent with this Court's interpretation of § 4252(b) (1) above. The Court's construction of § 4252(b)(1) is based on the common and ordinary meaning of the language in that section as contrasted to the Government's reading which would ask the Court to ignore [*53] what Congress actually provided. The Court's statutory construction is consistent with the structure of the statute and its historical context. The context of the 1965 amendments confirms that the words employed by Congress mean precisely what they, on their face, appear to mean. The Court is not enforcing the terms of the statute in spite of Congress's intent; the Court is enforcing the specific intent of Congress to tax the service that it expressly described and clearly intended to tax, rather than rewriting the statute to comport with a generalized notion of what Congress might intend if it were to revise the statute in light of subsequent innovation's in the industry.

V.

Finally, the Government raises the narrow and separate issue of whether Fortis's inbound 800 service is taxable WATS service under 26 U.S.C. § 4252(b)(2). The Government relies almost entirely on Fortis's service falling under an AT&T Tariff entitled "Wide Area Telecommunications Services." Fortis argues that its services are in fact labeled "800 READYLINE" and "MEGACOM 800" service, and, in any event, involve charges that are assessed per call and do not fit within § 4252(b)(2).

The [*54] mere labeling of Fortis's service as WATS does not necessarily mean that it is covered by § 4252(b)(2). Section 4252(b)(2) was enacted to cover the AT&T WATS service then in existence, and historically, inbound 800 services have been described as inbound WATS. But the issue is whether the service falls within the definition in § 4252(b)(2) by involving a periodic charge, based on a flat rate or total elapsed transmission time, for unlimited calls to a specified area.

The plaintiff has stated that its inbound 800 service involves per-call charges, but that is not clear from the record. The Contract Tariffs indicate that the AT&T MEGACOM 800 and AT&T 800 READYLINE service for Canada do involve per-call charges. (See, e.g., Contract Tariff No. 10725 § § 7.C.1, 7.D.1, attached at Pl.

Case 1:05-cv-00257-JJF-MPT   Document 19-4   Filed 09/23/2005   Page 11 of 11

Page 16
2004 U.S. Dist. LEXIS 18686, *; 2004-2 U.S. Tax Cas. (CCH) P70,231;
94 A.F.T.R.2d (RIA) 6005

Ex. 3) For the reasons explained earlier, such charges would not fall within the periodic-charge requirement of § 4252(b)(2). The Contract Tariffs, however, indicate that the MEGACOM 800 and 800 READYLINE domestic services are charged "per hour of use." (See, e.g., id. § 7.B.) That suggests that charges are based on total elapsed transmission time for the billing period, which could place the service [*55] within § 4252(b)(2). Because the Government failed to make this argument and neither party sufficiently described the service at issue, and because there are issues of fact as to the billing rates for this service, neither party is entitled to summary judgment on the narrow issue of the right to a refund for the inbound 800 services.

Conclusion

The plaintiff's motion for summary judgment on liability is **granted** and the defendant's cross-motion for summary judgment is **denied,** except with respect to the limited issue of whether the plaintiff's inbound 800 service is taxable under § 4252(b)(2). As to that issue, both the motion and cross-motion are **denied.**

**SO ORDERED.**

Dated: New York, New York

September 16, 2004

John G. Koeltl

**United States District Judge**