**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MBNA America Bank, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 05-cv-257 |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Defendant. | ) | |

---

**UNITED STATES' BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

---

Dated:        February 10, 2006


COLM F. CONNOLLY
United States Attorney

IVAN C. DALE (admitted *pro hac vice*)
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Ben Franklin Station
Washington, DC 20044
Telephone (202) 307-6615

## TABLE OF CONTENTS

NATURE OF THE PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF UNDISPUTED FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      I.    THE HISTORICAL DEVELOPMENT OF THE CURRENT
           STATUTE DEMONSTRATES THAT PLAINTIFF'S
           COMMUNICATIONS SERVICES ARE TAXABLE. . . . . . . . . . . . . . . . . . . . 7

      II.    THE STATUTORY LANGUAGE PLAINLY TAXES PLAINTIFF'S
           COMMUNICATIONS SERVICES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      III.   THE OPINIONS HOLDING THAT, IF LONG DISTANCE CALLS
           ARE NOT "TOLL TELEPHONE SERVICE," A GAP IN TAXATION
           OF COMMUNICATIONS SERVICES IS CREATED ARE
           ERRONEOUSLY DECIDED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF CITATIONS

26 U.S.C. § 4251 (Appendix A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

26 U.S.C. § 4252 (Appendix A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

26 U.S.C. § 4253 (Appendix A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

I.N.S. v. St. Cyr, 534 U.S. 289 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 16

Verizon Communications, Inc. v. FCC, 535 U.S. 467 (2002) . . . . . . . . . . . . . . . . . . . . . . . . 4

Am. Bankers Ins. Group (ABIG) v. United States, 408 F.3d 1328 (11th Cir. 2005) . . . . 6, 17

OfficeMax v. United States, 428 F.3d 583 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . 6, 17-19

Nat'l R.R. Passenger Corp. v. United States, 338 F. Supp. 2d 22 (D.D.C. 2004) . . . . . . . . 6

Honeywell Int'l, Inc. v. United States, 64 Fed. Cl. 188 (2005) . . . . . . . . . . . . . . . . . . . . . . . 6

Reese Bros., Inc. v. United States, 94 A.F.T.R.2d (RIA) 7229 (W.D. Pa. 2004) . . . . . . . . . 6

America Online, Inc. v. United States, 64 Fed. Cl. 571 (2005) . . . . . . . . . . . . . . . . . . . . . . . 6

Fortis v. United States, 94 A.F.T.R.2d (RIA) 6005 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . 6

H. Comm. on Ways and Means, 89th Cong., Material Prepared by the Executive
Branch Concerning Recommendations Proposed by the President Relative to
Excise and Fuel Taxes (Comm. Print May 17, 1965) ("Executive Branch Material")
(Appendix B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

H.R. Rep. No. 89-433, reprinted in 1965 U.S.C.C.A.N. 1645
(excerpts at Appendix C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

S. Rep. No. 89-324 (1965), reprinted in 1965 U.S.C.C.A.N. 1690
(excerpts at Appendix D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

Mackey v. Lanier Collection Agency & Service, Inc., 486 U.S. 825 (1988) . . . . . . . .  15, 17

## NATURE OF THE PROCEEDING

This is a civil action in which plaintiff seeks to recover certain monies paid over to the United States as taxes.   Specifically, this case concerns whether plaintiff's payments for communications services are subject to the 3-percent excise tax imposed by 26 U.S.C. § 4251.   Discovery is concluded, and a date for trial has not been set.   The United States moved for summary judgment on February 10, 2006.   This memorandum is submitted in support of that motion.

## SUMMARY OF THE ARGUMENT

Section 4251 (a) of the Internal Revenue Code (26 U.S.C.)[1] imposes a tax of 3% on amounts paid for "communications services" and divides "communications services" into three named categories.   Section 4252(a), (b), and (c) then define the services included in each category, while §4252(d) defines a category of communications service (private communications services) which is excluded from taxation.   Aside from §4252(d), the categories defined in §4252 allowed Congress, in § 4253, to exempt certain taxpayers from taxation on certain types of otherwise taxable communications services. This is because in providing for exemptions for some classes, §4253 utilizes the named categories defined in §4252.   Thus, for instance,  §4253(b) utilizes the categories

_____

[1]All section references are to the Internal Revenue Code of 1986, as amended, except where a section referenced is specifically referenced as being part of an earlier version of the statute.

identified in §4252 to exempt news organizations from paying a tax on services

described in §4252(b), but not on services described in § 4252(a).[2]

Congress's purpose in imposing a communications tax was to raise money.

Thus, the definition of the category defined in §4252(a) is extremely broad, applying to

charges for access to a local system, as well as to charges for all facilities and services in

connection with access to a local system. Section 4252(a) provides as follows:

> (a) [Service taxable under this section].... For purposes of this subchapter,
> [Services taxable under this section] means–
>> (1) the access to a local telephone system, and the privilege of telephonic
>> quality communication with substantially all persons having telephone or
>> radio telephone stations constituting a part of such local telephone system,
>> and
>> (2) any facility or service provided in connection with a service described
>> in paragraph (1).
>
> ...[service taxable under this section] does not include any service which is a "toll
> telephone service" or a "private communications service" as described in
> subsections (b) and (d).[3]

---

[2]For the court's convenience, §4251, §4252 and § 4253 are set forth in the
appendix at A.

[3]26 U.S.C. § 4252(a)(emphasis added).  The category defined in §4252(a) is
entitled "local telephone services" to distinguish that category from the category
defined in §4252(b), which is entitled "toll telephone services." The titles are not
completely descriptive of the contents of the definitions in that not all toll service is
encompassed in the definition in §4252(b) and §4252(a) encompasses more than just
local telephone service.  The title "local telephone service" is not part of the definition in
§4252(a), and cannot limit the plain meaning of the text.  See, e.g., I.N.S. v. St. Cyr, 534
U.S. 289, 309 (2001).   In our view, however, the "local telephone service" moniker has
distracted some courts from reaching the proper result on this issue.  Thus, §4252(a) has
been quoted above using only the language that is actually a part of the definition.

Because the nature of public telephone service is that it is provided in connection with access to a local system,[4] the definition in §4252(a) applies to all public telephone service. The definition also applies to private communications services that operate through access to a local system. Were it not for the fact that, in order to avoid an overlap, the final sentence of §4252(a) carves out telephone services of the type included in §4252(b) and §4252(d), all toll telephone service and some private communications services defined in §4252(d) would be included in both sections.

As a result, even if plaintiff is able to establish that its telephone services do not fit the definition of the "toll telephone service" category defined in §4252(b) (Compl. ¶¶ 17-23),[5] it will merely establish that the carve out sentence of §4252(a) is not applicable. If the carve out sentence is not applicable, then the plaintiff's long distance service is included in §4252(a) and subject to the same 3% tax rate. Thus, whether the long distance service fits the definition of the category defined in §4252(a) or §4252(b), it is

_____

[4]In theory a subscriber could enjoy local service without having a long distance service. Long distance service without local service is impossible, however, because long distance networks merely connect local systems.

[5]The United States contends that the telephone services on which plaintiff paid excise tax **are** within the definition of "toll telephone service" described in § 4252(b), and will demonstrate such at trial, or in opposition to any cross-motion for summary judgment. Such a demonstration, however, is unnecessary to the result. As demonstrated herein, the excise tax statute covers all telephone communications that connect to the local, public-switched network, and carves out the separate category of "toll telephone service" only because this separate category affords certain users (other than the plaintiff) different tax treatment elsewhere in the statute. As a result, plaintiff's allegation that its services do not constitute "toll telephone service," even if proven, would not entitle plaintiff to the relief it seeks.

taxable under §4251 at the same 3% rate.  Therefore, whether or not the long distance

telephone services at issue constitute "toll telephone service" under §4252(b), these

services were properly taxed, and the plaintiff is not entitled to the refund it seeks.

Accordingly, the United States is entitled to judgment as a matter of law.

## STATEMENT OF UNDISPUTED FACTS

1.      Plaintiff seeks a refund of communications excise taxes in the amount of

$3,741,832.42 for the quarters ended March 31, 2001 to September 30, 2004.   Plaintiff

claims that it was improperly required to pay that amount of excise taxes on

communications services which it purchased from AT&T.   (Compl. ¶¶ 8-12.)

2.      A long distance service provider provides a long distance network to

connect a subscriber's local telephone system to the local telephone system servicing the

the recipient of the telephone call.  The local telephone systems provide service between

the point where the long distance network connects with the local system and the

subscriber's and recipient's telephones, the so-called "last mile."  The long distance

provider pays access charges to the local telephone systems to compensate them for their

role in the completion of the long distance call.  A long distance call cannot be made

without access to a local telephone system, at both the points of origin and destination of

the call.  Verizon Communications, Inc. v. FCC, 535 U.S. 467, 490-91 (2002).

3.      A local telephone system provides the user with the privilege of telephonic

quality communication with substantially all persons having terminals constituting part

of such system.   Long distance telephone companies, such as AT&T, provide users, such

as the plaintiff, with access to the local telephone system on which the recipient's

terminal is located.   On each and every long-distance call, this privilege of access to the

recipient's local telephone system(s) is provided to the caller by the long-distance

company.  The caller need not, and does not, separately contract for such access   Id. at

490.

## ARGUMENT

As discussed above, the reach of § 4252(a) is quite broad.   It covers both "access

to a local telephone system," together with the privilege of telephone communication to

anyone with a connection to that system, and "any facility or service provided in

connection with" that service.   It is clear that, for each and every call plaintiff contends is

not taxable, AT&T provided plaintiff with <u>access</u> to the local telephone system on which

the recipient's terminal is located.   In addition, because a long distance call cannot be

made without access to a local telephone system, the privilege of making such a call is, at

a minimum, a "facility or service provided in connection with" access to a local

telephone system.   Accordingly, plaintiff's services fall within the plain language of §

4252(a).

The statute is written broadly enough to encompass every telephone call which

accesses a local telephone network.   Because, for certain taxpayers, various types of

telephone calls are to be afforded differing treatment under the statute, and to prevent

overlap, the statute states that § 4252(a) "does not include any service which is a 'toll telephone service[.]'"   Toll telephone service, in turn, is defined in § 4252(b).   That the statute carves out "toll telephone service" from the definition of § 4252(a), however, does not mean that a service escapes taxation if it can be proven that it doesn't fall within the precise definition of "toll telephone service."   Rather, it simply means that the privilege of access to a local telephone network, which does not fall within the precise definition of "toll telephone service," will be afforded tax treatment under § 4252(a), rather than (b).   Because, for the plaintiff, the tax result is the same regardless of the category of the service, plaintiff is not entitled to a refund on account of its contention that the services taxed do not fall within § 4252(b).

   While the conclusion that long distance service falls within § 4252(a), if it is not excluded because it meets the definition of §4252(b), seems apparent, two courts of appeal, American Bankers Insurance Group (ABIG) v. United States, 408 F3d 1328 (11th Cir. 2005) and OfficeMax v. United States, 428 F.3d 583 (6th Cir. 2005) (petition for rehearing pending), and several lower courts[6] have held that if long distance telephone service does not meet the definition of §4252(b), there is a gap, and it is simply not

_____

   [6]Nat'l R.R. Passenger Corp. v. United States, 338 F. Supp. 2d 22 (D. D.C. 2004), aff'd on another issue, 431 F.3d 374 (D.C. Cir. 2005); Honeywell Int'l, Inc. v. United States, 64 Fed. Cl. 188 (2005), appeal pending, No. 05-5145 (Fed. Cir.); Reese Bros., Inc. v. United States, 94 A.F.T.R.2d 2004-7229 (W.D. Pa. Nov. 30, 2004), appeal pending, No. 05-2135 (3d Cir.); America Online, Inc. v. United States, 64 Fed. Cl. 571 (2005), appeal pending, No. 05-5138 (Fed. Cir.) Fortis v. United States, 94 A.F.T.R.2d (RIA) 6005 (S.D.N.Y. 2004), appeal pending, No. 05-2518 (2d Cir.)

taxable.[7]  These decisions, perhaps owing to the emphasis placed upon the issue by the

parties, paid only lip service, at most, to the consequence of their result under § 4252(a).

Applying §4252(a) to long distance service which does not fall within the definition of

§4252(b) "toll telephone service," however, is perfectly consistent with both

Congressional intent and the historical development of the statute.   This brief will

present a more complete statement of the government's position in this regard.   In the

remainder of this brief, we will therefore discuss the structure and historical

development of the telephone excise tax statutes in general, and §4252(a) in particular,

demonstrating that the decisions summarily dismissing the argument based on §4252(a)

are in error.  Congress actually meant what the words of the statute say.

I.      THE HISTORICAL DEVELOPMENT OF THE CURRENT STATUTE
        DEMONSTRATES THAT PLAINTIFF'S COMMUNICATION SERVICES
        ARE TAXABLE.

        An excise tax has been periodically imposed on telephone service almost from

the time the telephone was invented.  The tax has been consistently in force since 1941.

Congress's purpose in imposing the excise tax on telephone service has always been to

raise money.  Thus, it has defined telephone service very broadly so as not to leave gaps

in coverage.   At least since 1954, the structure of the taxing statutes is to have a tax

_____

        [7]The result of such a judicially-created "gap" is absurd.   The result is to construe
the statute, for long-distance calls, to favor one form of pricing method over another,
see § 4252(b)(1), and to levy a tax on accesses of the local telephone network where both
the points of origin and destination are telephones within the network, but not accesses
of the local telephone network that connect to the long-distance switchboard.

imposing statute, §4251, setting forth the various categories of taxable service, a definition statute, §4252, setting forth the definition of the various categories, and an exemption statute, §4253.  The categories defined in §4252 serve the purpose of establishing the categories of service with respect to which certain taxpayers are exempt. Today all services defined in §4252 are taxed at the same 3% rate under §4251, except private communications services, which are the only telephone services excluded by the statute (§4252(d)) from the reach of the excise tax.

The current version of the telephone excise tax statute was passed in 1965 and amended prior versions of §4251, §4252, and §4253.   Immediately before the amendment, § 4251 provided for the imposition of a tax on telephone communications services and divided those services into several categories, all defined in §4252.  The two categories with relevance to the issue involved here were entitled "general telephone service" and "toll telephone service."   Definitions of the services included in the categories were then provided in §4252 and showed an intent to cover all possible telephone communications services or services related to telephone communications services.   In particular, immediately before the 1965 amendment, the definition, in §4252(a) of the first named service, "general telephone service", was extremely broad and would have covered the second named service, "toll telephone service", except that the last sentence of §4252(a) specifically carved out toll telephone service.  Under the pre-1965 version of §4252(a) the following was provided:

(a) General telephone service.
For purposes of this subchapter, the term "general telephone service" means any telephone or radio telephone service furnished in connection with any fixed or mobile telephone or radio telephone station which may be connected (directly or indirectly) to an exchange operated by a person engaged in the business of furnishing communication service, if by means of such connection communication may be established with any other fixed or mobile telephone or radio telephone station.  Without limiting the preceding sentence, any service described therein shall be treated as including the use of -
    (1) any private branch exchange (and any fixed or mobile telephone or radio telephone station connected, directly or indirectly, with such an exchange) and
    (2) any tie line or extension line.
The term "general telephone service" does not include any service which is toll telephone service or wire and equipment service.

In §4252(b), before the 1965 amendment, Congress then defined what was meant by the

toll telephone service that was excluded from §4252(a):

(b) Toll telephone service.
  For purposes of this subchapter, the term "toll telephone service" means a telephone or radio telephone message or conversation for which (1) there is a toll charge, and (2) the charge is paid within the United States.

While the tax rate on "general telephone service" and "toll telephone service" was

the same (10%), the categories served an important function in the taxing scheme

because some of the exemptions in §4253 depended upon which category of service was

involved.   In particular, immediately prior to the amendment, general telephone service

was exempted from taxation for people using pay telephones, while toll telephone

service in excess of 24 cents was not. §4253(a).[8]  News organizations were exempt from

the tax on toll telephone service, but not on general telephone service.[9]  Telephone calls

by certain members of the armed forces were exempt from the tax on toll telephone

service, see §4253(d), but not general telephone service.[10]

---

[8]§ 4253. Exemptions.
(a) Certain coin-operated service.
  Services paid for by inserting coins in coin-operated telephones available
to the public shall not be subject to the tax imposed by section 4251 with
respect to general telephone service, or with respect to toll telephone
service or telegraph service if the charge for such toll telephone service or
telegraph service is less than 25 cents; except that where such coin-
operated telephone service is furnished for a guaranteed amount, the
amounts paid under such guarantee plus any fixed monthly or other
periodic charge shall be subject to the tax.

[9]§4253.  Exemptions
(b) News Services.
  No tax shall be imposed under section 4251, except with respect to
general telephone service, on any payment received from any person for
services used in the collection of news for the public press, or a news
ticker service furnishing a general news service similar to that of the
public press, or radio broadcasting, or in the dissemination of news
through the public press, or by means of radio broadcasting, if the charge
for such services is billed in writing to such person.

[10] §4253.  Exemptions
 (d) Servicemen in combat zone.
  No tax shall be imposed under section 4251 on any payment received for any
toll telephone service which originates within a combat zone, as defined in
section 112, from a member of the Armed Forces of the United States performing
service in such combat zone, as determined under such section, provided a
certificate, setting forth such facts as the Secretary or his delegate may be
regulations prescribe, is furnished to the person receiving such payment.

In 1965, based on a proposal sent to the Hill by the Executive Branch,[11] Congress amended the telephone excise tax provisions.  According to the legislative history, see H.R. Rep. No. 89-433 at 30, reprinted in 1965 U.S.C.C.A.N. 1645, 1676 (1965), S. Rep. No. 89-324 at 35, reprinted in 1965 U.S.C.C.A.N. 1690, 1725 (1965),[12] one of Congress's objectives was to reduce, and ultimately phase out entirely, the telephone excise tax.  To reduce the taxes the rate was cut from 10% to 3%.  Id.[13]  As is typical where Congress believes that a change will have a revenue impact, Congress estimated the revenue loss from the rate change.  Id.

Another objective of the amendment was to exclude private communications services from the tax.  S. Rep. No. 89-324 at 35, reprinted in 1965 U.S.C.C.A.N. 1690, 1726 (1965).  While, in 1965, all public long distance service was provided by AT&T, private communications services had developed, some of which operated through access to local telephone systems and some of which did not.  Id.  If a private communications system did not operate through access to a local system, it was not taxed and thus operated at a

---

[11]see H. Comm. on Ways and Means, 89th Cong., Material Prepared by the Executive Branch Concerning Recommendations Proposed by the President Relative to Excise and Fuel Taxes (Comm. Print May 17, 1965) ("Executive Branch Material") (Appendix B) at 8.

[12]These House and Senate reports are provided in the Appendix at C and D, respectively.

[13]The phase out was to be accomplished through a large rate reduction as a result of the amendment and then further rate reductions in succeeding years.  While the reduction from 10% to 3% was accomplished, Congress has consistently refused to allow further reductions because of the loss of revenue.

competitive advantage over private systems that operated though access to a local system. Thus, in the 1965 legislation, Congress excluded from the communications tax the service provided by private systems which operated through access to a local system, as long as there was a separate charge for the service provided by the private communications provider.. H.R. Rep. No. 89-433 at 31, 1965 U.S.C.C.A.N. at 1677; S. Rep. No. 89-324 at 36, 1965 U.S.C.C.A.N. at 1726. It was estimated that exclusion of service provided by private communications providers would reduce revenues by $130 million per year. Id.

Finally, the enactment updated and simplified the definitions in §4252, including specifically noting that the local telephone service category was previously named general telephone service, "to make it clear that it is the service that is being taxed and not merely the equipment being supplied," H.R. Rep. No. 89-433 at 30, 1965 U.S.C.C.A.N. at 1676; S. Rep. No. 89-324 at 35, 1965 U.S.C.C.A.N. at 1725, and made conforming changes in §4251 and §4253. No revenue loss was estimated as a result of the latter changes.

The language of the 1965 amendments was almost verbatim the language proposed in the Executive Branch Materials, with one significant change. Under the Executive branch proposal, the rate of taxation imposed under §4251 was reduced to 3%, the categories of service identified in §4251 were reduced to three and the name of the "general telephone service" category was changed to "local telephone service." The

Executive branch materials then defined the term "local telephone service" in §4252(a) as follows:

> (a) Local telephone service.--For purposes of this subchapter, the term"local telephone service" means–
>
> (1) the access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system, and
> (2) any facility or service provided in connection with a service described in paragraph (1), <u>to which the subscriber is entitled upon payment of a charge or charges other than a toll charge</u>.  The term "local telephone service" does not include any service which is a "toll telephone service" or a "private communication service" as defined in subsections (b) and (d). (emphasis supplied)

Thus, as had been the case with the definition of  "general telephone service" in the pre-1965 statute, the definition of the "local telephone service" category was broad enough to apply to "toll telephone service," which was defined in §4252(b), because long distance service is provided in connection with access to a local telephone system, but for the fact that the service described in §4252(b) was specifically carved out of §4252(a).  The underlined portion of the language proposed by the Executive branch would have done more and prevented the inclusion in §4252 (a) of service for which the subscriber paid a toll charge.  Under the dictionary definition, a toll is a charge for a long distance call,[14] so the language in the Executive proposal excluding toll charges from §4252(a)

_____

[14]  Webster's Third International Dictionary (1966).

-13-

would have applied to long distance calls that did not meet the specialized definition of "toll telephone service" in §4252(b). Congress struck that language. In short, the Executive branch version of the bill would have created the very gap that plaintiff argues entitles it to a refund here. The consequence of Congress striking the language is to prevent that gap. If long distance services are not taxed at 3% because they constitute "toll telephone services" within the meaning of §4252(b), they are taxed at 3% because they constitute services provided in connection with access to a local system which are not excepted from §4252(a) by virtue of being included in §4252(b).

As had been the case under the pre-1965 law, the Executive branch proposal, as accepted by Congress, utilized the categories defined in §4252 to identify the services that certain customers could obtain without being subject to the tax. The same exemptions were provided as had been provided under pre-1965 law, except that the words "local telephone service" were substituted for "general telephone service."

II.    THE STATUTORY LANGUAGE PLAINLY TAXES PLAINTIFF'S COMMUNICATIONS SERVICES.

Similar to the pre-1965 law, the definition in §4252(a), covering both access to a local system in (a)(1) and any service or facility in connection with access to a local system in (a)(2), is very broad. Like the pre-1965 statute, it would have overlap with §4252(b), except that Congress specifically provided in the flush language of § 4252(a) a carve-out for service defined in §4252(b). While some courts, in finding that there is an unintended gap in coverage under the taxing statute, have blamed Congress for not

-14-

being far sighted enough to recognize that telephone service and billing methods for it

might change over the years, they give Congress too little credit.  In fact, as

demonstrated above, Congress perfectly prepared for the possible gap by striking from

the Executive branch proposal for §4252(a) the language that would have produced a

gap, so that if long distance service in connection with access to a local system does not

fall within §4252(b), it necessarily falls within §4252(a). [15]

        "Toll telephone service" within the meaning of §4252(b) is not included within

the definition of  §4252(a) because Congress, following the pattern of the pre-1965

statute, specifically carved it out.   If "toll telephone service" within the meaning of

§4252(b) were not otherwise included within the reach of §4252(a)(2), the very next

_____

        [15]  The carve-out sentence in §4252(a) preventing an overlap with §4252(b) also
contains a provision preventing an overlap with private communications services under
§4252(d).  As noted earlier, one of the purposes of the 1965 amendment was to prevent
taxation of private communications services which operate through access to a local
system, so that such systems did not operate at a competitive disadvantage to similar
systems which hook up directly to the customer's phone without going through the
local telephone system.  Thus, it was also necessary to specifically carve out "private
communications services" under §4252(d) from the operation of §4252(a) or those that
operated through a local system would have been covered under §4252(a).
        One type of private communications service is not excluded from §4252(a) and
therefore is  taxable under it.  The last sentence of §4252(d) excludes from that section a
charge for a private communications service if the charge is not separately stated.  Thus,
if there is no separately stated charge for a private communications service that
operates through access to a local system, the full amount paid for the local service is
taxable under §4252(a)  because the portion attributable to the private communication
service will not have the protection of the carve-out sentence by virtue of being
included in §4252(d).  The same result occurs with long distance calls where they no
longer have protection from §4252(a) by virtue of being covered by §4252(b).

sentence specifically carving it out would be meaningless or superfluous. It is familiar

law that a statute should not be interpreted so as to render provisions superfluous or

pointless. See, e.g., Mackey v. Lanier Collection Agency & Service, Inc., 486 U.S. 825, 837

(1988) (listing multiple similar holdings in footnote 11). Unless long-distance was

otherwise understood to be a service "in connection with" "access to a local system", the

sentence carving it out of §4252(a) was totally unnecessary.

Toll telephone service normally is synonymous with telephone service, other

than local service, for which a toll charge is made per call. Plaintiff claims that the title

"toll telephone service" in §4252(b) has a more limited meaning which applies only to

calls for which there is a toll charge that is distance sensitive. The fact that the title

implies coverage that is broader than the statutory definition is not fatal to plaintiff's

argument, because when Congress specifically defines a term, it is the Congressional

definition, not the common meaning of the term, that controls. As the Supreme Court

has noted, "the title of a statute ... cannot limit the plain meaning of the text." I.N.S. v.

St. Cyr, 533 U.S. 289, (2001). By the same token, the fact that the services in §4252(a) are

called "local telephone services"[16] is not fatal to a finding that Congress provided that

---

[16] The name "local telephone service" was chosen by the Executive branch at a time when the language it proposed in §4252(a) contained words, later stricken by Congress, which would have excluded all services for which a toll charge is paid in connection with access to a local telephone system, even if the service did not meet the definition of §4252(b). When Congress struck the language, thereby eliminating the gap that would have been produced, it did not rename the subsection "general telephone services." The name has no independent significance. To the extent courts have based their decisions on the name "local telephone service," rather than the definition

long distance service that escapes the grasp of §4252(b) is included within §4252(a). If long distance services meet the definition of services provided in connection with access to a local system, they are covered by §4252(a), unless excluded because defined in §4252(b), regardless of the fact that the name appended to the services included in §4252(a) was "local telephone services."

III.    THE OPINIONS HOLDING THAT, IF LONG DISTANCE CALLS ARE NOT "TOLL TELEPHONE SERVICE," A GAP IN TAXATION OF COMMUNICATIONS SERVICES IS CREATED ARE ERRONEOUSLY DECIDED.

As noted earlier, five lower court opinions now on appeal and two court of appeals decisions, ABIG, and OfficeMax, have, at least briefly, considered the issue of whether modern day long distance services meet the definition of §4252(a) if changes in provider pricing plans have eliminated the services from §4252(b). All have concluded that Congress unwittingly left a gap, so that most long distance telephone service today is not taxable. For the reasons set forth in this brief, the opinions do not withstand scrutiny.

None of the opinions attempt to analyze the structure and language of §4252(a). None discuss the historical development of the §4252(a) category and its role as a "catch-all" applicable to a broad range of telephone communications services, some of which are then carved out through a carve-out sentence   None of the opinions even acknowledge the existence of the carve-out sentence, much less attempt to justify rendering it pointless

_____

provided in the statute, those decisions should not be followed.

or superfluous in contravention of <u>Mackey v. Lanier Collection Agency & Service, Inc.</u>, <u>supra</u>, and the cases cited therein.   The courts either were unaware of, or missed the significance of, the fact that in 1965 Congress struck language in the Executive proposal related to §4252(a) that would have created the very gap in excise tax coverage that the opinions now create.  Indeed, only <u>OfficeMax</u> acknowledges awareness of the fact that long distance service is a service in connection with access to local systems.[17]

But <u>OfficeMax</u> rejects the conclusion that long distance services fall within §4252(a) if they are not in §4252(b) primarily because  "It makes one wonder why Congress would not eliminate the definition of toll telephone service all together and apply the tax to all telephone services of any kind."  428 F.3d at 600.  One need not wonder long, however, before recognizing that Congress needed the §4252 categories because of the exemptions in §4253 which exempt certain persons (<u>e.g.</u>, news organizations) from some, but not necessarily all, services (<u>e.g.</u>, toll telephone services but not local services).  But for that need for service categories, Congress would simply have stated that the tax applies to telephone services of any kind.  Because of the need created by the §4253 exemptions,

---

[17]The <u>OfficeMax</u> court stated: "Yet the definition of local telephone service requires 'access to a local telephone System' not 'access to every' local telephone system included within the boundaries of a long-distance plan."  428 F.3d at 600.  A subscriber has to have access to the local system servicing its phone to utilize long distance.  Once there is long distance service, however, the subscriber is able access other local systems.  Contrary to the suggestion in <u>OfficeMax</u>, there is nothing in the definition in §4252(a) to suggest that access to many local systems does not include access to a local system within the meaning of the statute.

Congress had to use the broad definition and carve out only "toll telephone service" and "private communications service."

While the opinions on the subject are very brief, they seem preoccupied with the fact that the title given to the category defined in §4252(a) is "local telephone service," as though that name alone prevents long distance service from being encompassed by the category. It certainly did not prevent the same courts from concluding that the toll telephone calls at issue did not fall under the section entitled "toll telephone service." In any event, it is a bedrock principle of statutory interpretation that a title cannot limit the plain meaning of the text. See e.g. I.N.S. v. Cyr, supra. As discussed above, Congress accepted the change in the title when the Executive branch proposal changed it from "general telephone service" to "local telephone service", while indicating that no substantive change in coverage was intended, (see p. 9) and indeed striking the one clause that could have created a substantive change in coverage. We respectfully submit that the courts have created the huge gap in the telephone excise tax, a gap that would cost the Treasury billions of dollars, because of the title attached to the category covered by §4252(a). The fact remains that principles of statutory interpretation require that the language in the definitional section control taxation, whether the subsection is titled "local telephone service," "general telephone service" or "other long distance service."

//

## CONCLUSION

Even if the plaintiff's telephone services are not services defined in §4252(b), as it claims but the United States disputes, they are services defined in § 4252(a).  Services in both categories are taxed at the same 3% rate.  Accordingly, plaintiffs cannot demonstrate entitlement to their claimed refund, and the United States respectfully requests summary judgment in its favor, and dismissal of plaintiff's complaint with prejudice.

Dated:          February 10, 2006

COLM F. CONNOLLY
United States Attorney

By:     ____/s/_____

IVAN C. DALE (admitted *pro hac vice*)
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Ben Franklin Station
Washington, DC 20044
Telephone (202) 307-6615

**Counsel to the United States**