C

# EXCISE TAX REDUCTION ACT OF 1965

For text of Act see p. 143

House Report (Ways and Means Committee) No. 433,
May 28, 1965 [To accompany H.R. 8371]

Senate Report (Finance Committee) No. 324,
June 14, 1965 [To accompany H.R. 8371]

Conference Report No. 525, June 16, 1965 [To accompany H.R. 8371)
Cong. Record Vol. 111 (1965)

## DATES OF CONSIDERATION AND PASSAGE

House June 2, 17, 1965

Senate June 15, 17, 1965

All three reports are set out.

## HOUSE REPORT NO. 433

THE Committee on Ways and Means, to whom was referred the bill (H.R. 8371) to reduce excise taxes, and for other purposes, having considered the same, report favorably thereon without amendment and recommend that the bill do pass.

### I. GENERAL STATEMENT AND SUMMARY

H.R. 8371, the excise tax reduction bill of 1965, represents a comprehensive overhaul of our Federal excise tax structure. The present excise taxes, for the most part, were initially levied as emergency revenue-raising measures at the time of the Korean war, or World War II, or the depression of the 1930's. As a result, they were not developed on any systematic basis and are often discriminatory in their application to the taxed industries or to purchasers of the taxed products. Your committee bill, either in the current fiscal year, or over the next 3 subsequent years, removes entirely this miscellany of selective excise taxes except those designed to serve certain specific purposes.

Your committee's bill follows closely the excise tax recommendations of the President's message of May 17, with one exception. This exception was the decision of the committee to repeal, gradually over a period of 4 years, the passenger automobile tax instead of merely reducing it to 5 percent. This difference will have a significant budget impact only after the fiscal year 1967.

The excise taxes which are retained fall in one of three categories. Those remaining will, in effect, constitute user charges (where the tax paid is in effect a charge based on the use of a given governmental service), regulatory taxes (such as those on marihuana, opium, and wagering), or sumptuary taxes (namely, those on alcohol and tobacco products). The bill only incidentally deals with highway and airway user taxes. Your committee has reserved the subject of these user taxes and the proposed inland waterway user taxes for future consideration. The bill, by removing all other excise taxes, substantially improves the fairness of the Federal ex-

# LEGISLATIVE HISTORY

**3. Communications (sec. 302 of the bill and sec. 4251 of the code)**

Under existing law, amounts paid for general telephone, toll telephone, telegraph, teletypewriter exchange, and wire mileage service are taxed at the rate of 10 percent of the amounts paid for the service. A tax at the rate of 8 percent is imposed on amounts paid for wire and equipment service. The tax is paid by the person paying for the service.

**(a) Rates of tax for local telephone service, toll telephone service, and teletypewriter exchange service.**—Your committee concluded that the tax on local and toll telephone service and teletypewriter exchange service is undesirable as a permanent feature of our excise tax system. This conclusion was reached on the grounds, first, that these taxes are regressive and therefore fall with greater severity on those with low incomes than those with higher incomes. Second, the charges for telephone services enter heavily into business costs. Therefore, the tax discriminates against those firms that must make extensive use of the taxed services. However, while elimination of the tax is desirable on the grounds listed above, your committee has concluded that since the tax is an important source of revenue for the Federal Government, reduction should be staged over a period of years. Your committee's bill, therefore, provides for the repeal of the communications service tax on local telephone service, toll telephone service, and teletypewriter exchange service over a period of 4 years. The first reduction, a substantial one, is a reduction of 7 percentage points effective January 1, 1966. In January of each of the three succeeding years, the rate is reduced by 1 percentage point. No tax, therefore, will apply for the calendar year 1969 and subsequent years. As a result, under the bill, the rate of tax on the three services will be reduced from the present level of 10 percent to—

   3 percent for amounts paid pursuant to bills first rendered on or after January 1, 1966, and before January 1, 1967;
   2 percent for amounts paid pursuant to bills first rendered on or after January 1, 1967, and before January 1, 1968; and
   1 percent for amounts paid pursuant to bills first rendered on or after January 1, 1968, and before January 1, 1969.
   The tax is not to apply to amounts paid pursuant to bills first rendered on or after January 1, 1969.

In applying the new tax rates referred to above, in the case of communication services rendered before November 1 of any calendar year for which a bill has not been rendered before the close of such year, a bill is to be treated as having been first rendered during such year. The existing 10 percent tax rate will continue to apply in the case of bills first rendered before January 1, 1966 (whether the services are rendered before, on, or after such date), and in the case of communication services rendered before November 1, 1965, even though the bill is first rendered on or after January 1, 1966.

The definitions of local telephone service (previously general telephone service), toll telephone service, and teletypewriter exchange service have been updated and modified to make it clear that it is the service as such which is being taxed and not merely the equipment being supplied. Thus, in the case of local telephone service, the definition makes it clear that it is the right of access to a local telephone system and the privilege of

EXCISE TAX REDUCTION ACT

telephonic quality communication which is taxed together with facilities or services provided with this service. Toll telephone service is defined as being a telephonic quality communication for which a toll charge is made which varies in amount with the distance and the lapsed transmission time of individual communications, but only if the charge is paid within the United States. Also included in this definition of toll telephone service is WATS (wide area telephone service). This is a long-distance service whereby, for a flat charge, the subscriber is entitled to make unlimited calls within a defined area (sometimes limited as to the maximum number of hours). A teletypewriter exchange service is defined as access from a teletypewriter or other data station to the teletypewriter exchange system of which such station is a part and the privilege of intercommunication by such station with substantially all persons having teletypewriter or other data stations in the same exchange system.

It is estimated that the reduction of the tax rate from 10 to 3 percent effective January 1, 1966, will result in a revenue loss of $639 million in a full year of operation. The elimination of the remaining 3 percentage points of tax over the next 3 years, it is estimated, will result in an additional revenue loss of $274 million when fully effective.

(b) **Private communications services.**—Under present law, a private communications system such as a private line or a private intercommunication system set up for a single subscriber (such as a PBX system or Centrex service) is taxed as a part of general telephone service if the telephones in this system have access to the local exchange system.

This has presented problems under present law because of competition from untaxed private equipment performing similar services. The telephone companies presently are losing intrapremise business (and interpremise business within local areas) to those providing telephone and microwave equipment which can be purchased and operated by the users themselves. Installation of equipment in this manner is accompanied by a reduction in the service from the local telephone company. Businesses installing their own internal communications systems in this manner avoid the tax on the telephone company's charge for both equipment and services. With the ever-increasing number of varied services which modern science makes it possible for telephone companies to provide, the tax on private communication systems represents a severe competitive handicap to the expanded use of these new and varied services.

For the reasons indicated above, your committee's bill provides an exemption from the tax on local telephone service for private communications service if a separate charge is made for this service. It is understood that private lines and PBX systems generally will immediately qualify for this exemption. However, it is understood that Centrex systems—where the switching equipment is generally on the premises of the local exchange rather than on that of the subscriber—generally do not, as yet, provide for a charge which is separate and distinct from that for local telephone service. Until such a separation is made, this exemption, therefore, will not apply in the case of Centrex service.

The definition of a private communication service refers to a communication service where a subscriber is entitled to the exclusive or priority use of a communication channel or groups of channels. This is

1677

sometimes referred to as a private line. The reference to an intercommunications system is intended to refer to a private exchange system for a single subscriber and thus to cover private PBX systems (whether or not they have in-dialing). Included in the definition of a private communication system is channel mileage for communication between a telephone station located outside a local exchange system and a central office in such local telephone system, if a separate charge is made for this service.

This exemption is to take effect as of January 1, 1966.

It is estimated that repeal of the tax on private communication services will reduce revenues by $130 million in a full year of operation.

(c) **Telegraph service and wire and equipment service.**—Telegraph service presently is subject to a tax of 10 percent of the amount paid while a tax of 8 percent is imposed on wire and equipment service. Wire and equipment service includes stock quotation and information services, burglar alarm and fire alarm service, and similar services.

In the case of telegraph service, the present tax presents an added handicap to an industry which has been experiencing a decline in business for a long period of time. The tax on wire and equipment service not only taxes the communication feature of the service, but other services provided as well. Moreover, in many cases, the services provided are in competition with similar services provided on a tax-free basis.

Because of the factors indicated above, your committee's bill repeals the tax on telegraph service and wire and equipment service effective January 1, 1966.

The repeal of the tax on telegraph service is expected to result in a revenue loss of $17 million a year when fully effective, and the repeal of the wire and equipment service tax is expected to result in an annual revenue loss of $15 million a year.

4. **Transportation of persons by air (sec. 303 of the bill and sec. 4261 of the code)**

Under present law, a 5-percent tax is imposed on amounts paid within the United States for the taxable transportation of any person by air, and on amounts paid without the United States for transportation which begins and ends within the United States. Under existing law, this tax is scheduled to terminate on July 1, 1965.

The administration has pointed out that aviation contributes only a small percentage of the cost of developing and maintaining the Federal airways. For this reason, the administration included among its recommendations with respect to aviation user charges the proposal that the present tax on the transportation of persons by air be continued to give assurance that commercial airline passengers would pay a portion of the cost of maintaining the service they enjoy.

Your committee's bill continues indefinitely the present 5 percent tax in order that it may be considered subsequently in connection with a review by the committee of administration proposals with respect to user charges.

It is estimated that this provision will forestall a revenue loss of $140 million a year.

EXCISE TAX REDUCTION ACT

5. **Safe deposit boxes (sec. 304 of the bill and sec. 4286 of the code)**

Present law imposes a 10-percent tax on amounts collected for the use of safe-deposit boxes. The tax is paid by the person paying for the use of the box.

This item represents a tax on the safeguarding of essential papers. In addition, it produces so little revenue that its separate imposition can hardly be justified.

Your committee's bill repeals this tax effective with respect to rentals or renewals taking effect on or after July 1, 1965.

It is estimated that this provision will reduce revenues by $7 million in a full year of operation.

## D. MISCELLANEOUS TAXES

1. **Documentary stamp taxes (sec. 401 of the bill and secs. 4301, 4311, 4321, 4331, and 4361 of the code)**

Present law imposes documentary stamp taxes on the issuance of capital stock and certificates of indebtedness, sales or transfers of capital stock and certificates of indebtedness, conveyances of realty, and premiums on insurance policies issued by foreign insurers. The taxes are imposed at the following rates:

> 10 cents per $100 or major fraction thereof of the actual value on the issuance of capital stock (4 cents per $100 in the case of stock in regulated investment companies);
>
> 11 cents per $100 or fraction thereof of face value on the issuance of certificates of indebtedness;
>
> 4 cents per $100 or major fraction thereof of actual value on the sale or other transfer of shares or certificates of stock, or rights to receive such shares, but in no case shall the tax exceed 8 cents per share or be less than 4 cents per transfer;
>
> 5 cents per $100 or fraction thereof of face value on each sale or other transfer of a certificate of indebtedness;
>
> 55 cents per $500 or fractional part thereof of the consideration or value (when it exceeds $100) for which realty is conveyed; and
>
> in the case of policies insured by foreign insurers, at varying rates.

The taxes imposed on insurance policies issued by foreign insurers are not changed by the bill.

The taxes are administered through the sale of stamps.

The Federal documentary stamp taxes are frequently business cost items. In addition, they complicate the large variety of security transactions to which they apply. In the case of real estate conveyances, there is no effective means of Federal administration. Therefore, your committee concluded that this latter tax could better be left to the administration of State or local governments.

Your committee's bill repeals the documentary stamp taxes on the issuance of stock and certificates of indebtedness, on sales or transfers of stock and certificates of indebtedness, and on conveyances of real estate. The bill does not affect the existing regulatory tax imposed with respect to insurance policies issued by foreign insurers.

The documentary stamp taxes are repealed by your committee's bill as of January 1, 1966.