# D

# LEGISLATIVE HISTORY

## SENATE REPORT NO. 324

THE Committee on Finance, to whom was referred the bill (H.R. 8371) to reduce excise taxes, and for other purposes, having considered the same, report favorably thereon with amendments and recommend that the bill as amended do pass.

### I. GENERAL STATEMENT AND SUMMARY

H.R. 8371, the excise tax reduction bill of 1965, represents a comprehensive overhaul of the Federal excise tax structure. It also is designed to help sustain the economic expansion which we have enjoyed for the last 52 months.

The present excise taxes, for the most part, were initially levied as emergency revenue-raising measures at the time of the Korean war, World War II, or the depression of the 1930's. As a result, they were not developed on any systematic basis and are often discriminatory in their application to the taxed industries or to the purchasers of the taxed products. Your committee's bill either this month, next January, or in the 3 subsequent years removes substantially all of these selective excise taxes except those which represent user charges, regulatory taxes, or the sumptuary taxes on alcohol, cigars and cigarettes.

Your committee's version of this bill provides a tax reduction effective the day after the date of enactment of this bill which, when fully effective, will result in a revenue loss of $1.76 billion. A further reduction is provided for next January which, when fully effective, will decrease taxes by an additional $1.62 billion. These two reductions taken together will amount to $3.38 billion. Further reductions are scheduled to occur in 1967, 1968, and 1969. The additional reductions in these years will amount to approximately $1.3 billion, raising the total excise tax reduction, when fully effective, to about $4.7 billion. The comparable figures for the House bill, which differ but slightly from the totals presented here, are shown in table 1 of the report.

With three exceptions, your committee has not appreciably modified the rate reductions which would have been provided by the House bill.

The first of these exceptions relates to the 10-percent manufacturers' tax on passenger automobiles. The House bill would have repealed this tax gradually over a period of 4 years. Your committee's action would retain one percentage point of this tax to be allocated to a special fund to aid in the disposal of old and wrecked automobiles. Also, four percentage points of the reduction would be made contingent upon the cars meeting the same safety standards as required by the General Services Administration with respect to the purchase of cars by the Federal Government.

Second, the House bill would have eliminated all of the tax on lubricating and cutting oil (either by exemption or refund procedure) except that used by highway vehicles. Your committee's bill retains this tax whether or not used in highway vehicles.

Third, your committee's bill repeals the 10-cents-per-pound tax on manufactured tobacco (i. e., smoking and chewing tobacco and snuff).

Your committee also has acted to minimize to the extent possible any delay in consumer purchases arising from consumers awaiting the tax

1690

# LEGISLATIVE HISTORY

## 2. Club dues (sec. 301 of the bill and sec. 4241 of the code)

Present law imposes a tax of 20 percent of the amounts paid as dues or membership fees to a social, athletic, or sporting club (if the total dues or fees paid exceed $10 a year). In the case of life memberships, the tax payable is the same as that of other members having privileges most nearly comparable to that of the life member; or, if the life member so elects, 20 percent of the amount paid for the life membership. Special provisions exempt from this tax amounts paid for capital improvements to the clubs provided the amounts are actually expended for such purposes within 3 years of the date of payment. Exemptions are also available in the case of dues paid to fraternal organizations and nonprofit swimming and skating clubs.

The present tax represents a tax on recreation which applies if the recreational outlet is a private club. Many other recreational facilities generally are not subject to excise tax. Moreover, the tax, which is substantial in this case, adds materially to the cost of club memberships, discouraging the formation and use of clubs. This is true not only of country clubs but also of other types of social or athletic clubs enjoyed by middle and lower income people.

Both the House bill and your committee's bill repeal the tax on club dues for payments attributable to periods beginning on or after January 1, 1966. Where the dues year straddles the effective date, the tax applies only to the dues (regardless of when paid) attributable to the portion of the year before that date. In the case of life memberships attributable in part to periods before 1966, in which the member has elected to pay a tax equal to 20 percent of the amount paid for the life membership, the full tax applies. However, in the case of life memberships where the tax is equivalent to the tax on amounts paid by members having privileges most nearly comparable to the life member, no tax will be due for periods beginning on or after January 1, 1966.

Where dues or membership fees attributable to periods beginning before January 1, 1966, have been free of tax because they were paid to be used for capital improvements, if they are not used for this purpose within 3 years of the date of payment, a tax is to apply since tax would have been due initially in the absence of the exemption.

It is estimated that the repeal of this tax will reduce revenues by $85 million in a full year of operation.

## 3. Communications (sec. 302 of the bill and sec. 4251 of the code)

Under existing law, amounts paid for general telephone, toll telephone, telegraph, teletypewriter exchange, and wire mileage service are taxed at the rate of 10 percent of the amounts paid for the service. A tax at the rate of 8 percent is imposed on amounts paid for wire and equipment service. The tax is paid by the person paying for the service.

**(a) Rates of tax for local telephone service, toll telephone service, and teletypewriter exchange service.**—Your committee agreed with the conclusion of the House that the tax on local and toll telephone service and teletypewriter exchange service is undesirable as a permanent feature of our excise tax system. This conclusion was reached on the grounds, first, that these taxes are regressive and therefore fall with greater severity on

## EXCISE TAX REDUCTION ACT

those with low incomes than those with higher incomes. Second, the charges for telephone services enter heavily into business costs. Therefore, the tax discriminates against those firms that must make extensive use of the taxed services. However, while elimination of the tax is desirable on the grounds listed above, since the tax is an important source of revenue for the Federal Government, the reduction should be staged over a period of years. Both versions of the bill, therefore, provide for the repeal of the communications service tax on local telephone service, toll telephone service, and teletypewriter exchange service over a period of 4 years. The first reduction, a substantial one, is a reduction of 7 percentage points effective January 1, 1966. In January of each of the three succeeding years, the rate is reduced by 1 percentage point. No tax, therefore, will apply for the calendar year 1969 and subsequent years. As a result, under both versions of the bill, the rate of tax on the three services will be reduced from the present level of 10 percent to—

3 percent for amounts paid pursuant to bills first rendered on or after January 1, 1966, and before January 1, 1967;

2 percent for amounts paid pursuant to bills first rendered on or after January 1, 1967, and before January 1, 1968; and

1 percent for amounts paid pursuant to bills first rendered on or after January 1, 1968, and before January 1, 1969.

The tax is not to apply to amounts paid pursuant to bills first rendered on or after January 1, 1969.

In applying the new tax rates referred to above, in the case of communication services rendered before November 1 of any calendar year for which a bill has not been rendered before the close of such year, a bill is to be treated as having been first rendered during such year. The existing 10 percent tax rate will continue to apply in the case of bills first rendered before January 1, 1966 (whether the services are rendered before, on, or after such date), and in the case of communication services rendered before November 1, 1965, even though the bill is first rendered on or after January 1, 1966.

The definitions of local telephone service (previously general telephone service), toll telephone service, and teletypewriter exchange service have been updated and modified to make it clear that it is the service as such which is being taxed and not merely the equipment being supplied. Thus, in the case of local telephone service, the definition makes it clear that it is the right of access to a local telephone system and the privilege of telephonic quality communication which is taxed together with facilities or services provided with this service. Toll telephone service is defined as being a telephonic quality communication for which a toll charge is made which varies in amount with the distance and the elapsed transmission time of individual communications, but only if the charge is paid within the United States. Also included in this definition of toll telephone service is WATS (wide area telephone service). This is a long-distance service whereby, for a flat charge, the subscriber is entitled to make unlimited calls within a defined area (sometimes limited as to the maximum number of hours). A teletypewriter exchange service is defined as access from a teletypewriter or other data station to the teletypewriter exchange system of which such station is a part and the privilege of intercommunication by

1725

# LEGISLATIVE HISTORY

such station with substantially all persons having teletypewriter or other data stations in the same exchange system.

It is estimated that the reduction of the tax rate from 10 to 3 percent effective January 1, 1966, will result in a revenue loss of $639 million in a full year of operation. The elimination of the remaining 3 percentage points of tax over the next 3 years, it is estimated, will result in an additional revenue loss of $274 million when fully effective.

**(b) Private communications services.**—Under present law, a private communications system such as a private line or a private intercommunication system set up for a single subscriber (such as a PBX system or Centrex service) is taxed as a part of general telephone service if the telephones in this system have access to the local exchange system.

This has presented problems under present law because of competition from untaxed private equipment performing similar services. The telephone companies presently are losing intrapremise business (and interpremise business within local areas) to those providing telephone and microwave equipment which can be purchased and operated by the users themselves. Installation of equipment in this manner is accompanied by a reduction in the service from the local telephone company. Businesses installing their own internal communications system in this manner avoid the tax on the telephone company's charge for both equipment and services. With the ever-increasing number of varied services which modern science makes it possible for telephone companies to provide, the tax on private communication systems represents a severe competitive handicap to the expanded use of these new and varied services.

For the reasons indicated above, both the House bill and your committee's bill provide an exemption from the tax on local telephone service for private communications service if a separate charge is made for this service. It is understood that private lines and PBX systems generally will immediately qualify for this exemption. However, it is understood that Centrex systems—where the switching equipment is generally on the premises of the local exchange rather than on that of the subscriber—generally do not, as yet, provide for a charge which is separate and distinct from that for local telephone service. Until such a separation is made, this exemption, therefore, will not apply in the case of Centrex service.

The definition of a private communication service refers to a communication service where a subscriber is entitled to the exclusive or priority use of a communication channel or groups of channels. This is sometimes referred to as a private line. The reference to an intercommunications system is intended to refer to a private exchange system for a single subscriber and thus to cover private PBX systems (whether or not they have in-dialing). Included in the definition of a private communication system is channel mileage for communication between a telephone station located outside a local exchange system and a central office in such local telephone system, if a separate charge is made for this service.

This exemption is to take effect as of January 1, 1966.

Questions have been raised as to the application of this exemption to so-called answering services where, when the subscriber is not at home, the telephone is answered for him by the answering service. In such cases, it is understood that the line running to the answering service together with

## EXCISE TAX REDUCTION ACT

the board on which the signal is flashed is usable only for answering the subscriber's telephone. Where this is true, this line and the board provided in connection with it will be exempt from tax as a private communication service.

It is estimated that repeal of the tax on private communication services will reduce revenues by $130 million in a full year of operation.

**(c) Telegraph service and wire and equipment service.**—Telegraph service presently is subject to a tax of 10 percent of the amount paid while a tax of 8 percent is imposed on wire and equipment service. Wire and equipment service includes stock quotation and information services, burglar alarm and fire alarm service, and similar services.

In the case of telegraph service, the present tax presents an added handicap to an industry which has been experiencing a decline in business for a long period of time. The tax on wire and equipment service not only taxes the communication feature of the service, but other services provided as well. Moreover, in many cases, the services provided are in competition with similar services provided on a tax-free basis.

Because of the factors indicated above, both the House bill and your committee's bill repeal the tax on telegraph service and wire and equipment service effective January 1, 1966.

The repeal of the tax on telegraph service is expected to result in a revenue loss of $17 million a year when fully effective, and the repeal of the wire and equipment service tax is expected to result in an annual revenue loss of $15 million a year.

4. **Transportation of persons by air (sec. 303 of the bill and sec. 4261 of the code)**

Under present law, a 5-percent tax is imposed on amounts paid within the United States for the taxable transportation of any person by air, and on amounts paid without the United States for transportation which begins and ends within the United States. Under existing law, this tax is scheduled to terminate on July 1, 1965.

The administration has pointed out that aviation should contribute a larger percentage of the cost of developing and maintaining the Federal airways. For this reason, the administration included among its recommendations with respect to aviation user charges the proposal that the present tax on the transportation of persons by air be continued to give assurance that commercial airline passengers would pay a portion of the cost of maintaining the service they enjoy.

Both the House bill and your committee's bill continue indefinitely the present 5-percent tax in order that it may be considered subsequently in connection with any review of administration proposals with respect to user charges. Your committee has also made a technical change in the application of the tax to military personnel in the case of trips originating or ending abroad. This change is described in part V of this report.

It is estimated that this provision will forestall a revenue loss of $140 million a year.