# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**MBNA AMERICA BANK, N.A.**

           **Plaintiff,**

    **v.**

**UNITED STATES OF AMERICA,**

           **Defendant.**

**CASE NUMBER: 05-257-KAJ**

## OPENING BRIEF IN SUPPORT OF PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT ON LIABILITY

Kathleen M. Jennings, Esq. (I.D. No. 913)
Karen V. Sullivan, Esq. (I.D. No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
P.O. Box 2054
Wilmington, Delaware 19899-2054
(302) 576-2000

Jacob J. Miles, Esq.
Joseph A. Boyle, Esq
Paul L. Kattas, Esq.
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York  10178
(212) 808-7800

Dated:  February 10, 2006

## TABLE OF CONTENTS

Table of Authorities ............................................................................................................. iii

I.      Nature & Stage of Proceedings ....................................................................................1

II.     Summary of Argument ..................................................................................................1

III.    Statement of Facts ........................................................................................................3

IV.     Summary Judgment Standard of Review.......................................................................4

V.      Argument

        A.  Plaintiff is Entitled to a Refund of the Federal Communications Excise
            Taxes it Remitted Because Plaintiff's Services are Not "Toll Telephone
            Service" Within the Meaning of Section 4252(b) of the Code ...............................5

        B.  The Plain Language of § 4252(b)(1) Does Not Subject Plaintiff's Services
            to the Federal Communications Excise Tax Because Plaintiff's Services
            Did Not Vary Based Upon the Distance of Each Individual
            Communication.....................................................................................................6

            1.  There is No Basis to Disregard the Plain Meaning of Section
                4252(b)(1) .................................................................................................6

            2.  The Word "And" is Not Ambiguous ...........................................................8

            3.  Even if the Statutory Provision Were Ambiguous, the Statute
                Should be Construed Against the Government and in Favor of the
                Taxpayer...................................................................................................11

            4.  A Plan Meaning Interpretation of Section 4252(b)(1) Would Not
                Cause an Absurd Result ...........................................................................12

            5.  The Legislative History Relating to Section 4252 is Consistent
                with the Plain Language of Section 4252(b)(1)........................................14

            6.  Revenue Ruling 79-404 Ignores the Plain Language of Section
                4253(b)(1) ................................................................................................16

            7.  There Has Been No Congressional Reenactment of Section
                4252(b)(1) Approving the Holding in Revenue Ruling 79-404.................20

i

C. Plaintiff is Entitled to a Refund of the Telecommunications Federal Excise Taxes it Remitted Because Plaintiff's Services Are Not "Toll Telephone Service" Under Section 4252(b)(2) Because They Were Not Flat-Rated for Unlimited Usage for a Set Period of Time Within a Specific Area ......................22

VI.     Conclusion ....................................................................................................................25

# TABLE OF AUTHORITIES

Cases

*Aeroquip-Vickers, Inc. v. C.I.R.*, 347 F.3d 173 (6th Cir. 2003)......................................................19

*Am. Bankers Ins. Group v. United States*, 408 F. 3d 1328 (11th Cir. 2005),
    *rev'g*, 308 F. Supp. 2d 1360 (S.D. Fla. 2004) ...........................................................2, 9, 14, 21

*American Express Co. v. United States*, 262 F.3d 1376 (Fed. Cr. 2001)......................................19

*Am. Online, Inc. v. United States*, 64 Fed. Cl. 571 (Ct. Cl. 2005) ..................................................2

*Arkansas Best Corp. v. C.I.R.*, 485 U.S. 212 (1988)................................................................17, 18

*Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002) ........................................................................7

*Brown v. Gardner*, 513 U.S. 115 (1994)........................................................................................21

*Chevron U.S.A., Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837 (1984)...............18

*C.I.R. v. Soliman*, 506 U.S. 168 (1993) ...........................................................................................8

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) .................................................................7

*Connecticut Nat'l Bank v. Germain*, 503 U.S. 249 (1992) ..............................................................7

*Corn Products Refining Company v. C.I.R.*, 350 U.S. 46 (1955) .......................................16, 17, 18

*Crane v. C.I.R.*, 331 U.S. 1 (1947)...................................................................................................8

*Crooks v. Harrelson*, 282 U.S. 55 (1930) ...................................................................9, 10, 12, 13

*De Ganay v. Lederer*, 250 U.S. 376 (1919) .....................................................................................7

*Executive Jet Aviation, Inc. v. United States*, 125 F.3d 1463 (Fed. Cir. 1997) ............................10

*Farcell v. Planters Lifesavers Co.*, 206 F.3d 271 (3d Cir. 2000) .....................................................4

*Fisher Flouring Mills Co. v. United States*, 270 F.2d 27 (9th Cir. 1959).........................................8

*Fortis, Inc. v. United States*, 2004 U.S. Dist. Lexis 18686 (S.D.N.Y. 2004),
    *appeal pending*, No. 05-2518 (2d Cir.) .............................................................2, 9, 10, 13, 22

*Gitlitz v. Commissioner*, 531 U.S. 206 (2001).................................................................................7

*Gould v. Gould*, 245 U.S. 151 (1917) ...................................................................................10, 11

*Hewlett-Packard Company v. United States*, 2005 U.S. Dist. LEXIS 19972,
    2005-2 U.S. Tax Cas. (CCH) P70244 (N.D. Cal. 2005), *appeal docketed*,
    No. 06-15052 ..............................................................................................................2, 11

*Hillman v. Internal Revenue Service*, 263 F.3d 338 (4th Cir. 2001) ............................................13

*Honeywell Int'l, Inc. v. United States*, 64 Fed. Cl. 188 (Ct. Cl., 2005),
    *appeal pending, No. 05-5145 (Fed. Cir.)*..................................................................................2

*Horton Homes, Inc. v. United States*, 357 F.3d 1209 (11th Cir. 2004) .........................................11

*Koyo Seiko Co. v. United States*, 242 U.S. 470 (1917)..................................................................10

*Mack v. Otis Elevator Co.*, 326 F.3d 116 (2d Circ. 2003) ..............................................................4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).......................................4

*McFeely v. Commissioner*, 296 U.S. 102 (1935)...........................................................................11

*Mercy Catholic Medical Center v. Thompson*, 380 F.3d 142 (3d Cir. 2004) ................................16

*National Muffler Dealers Ass'n v. United States*, 440 U.S. 472 (1979)........................................20

*Nat'l R.R. Passenger Corp. v. United States of America*,
    431 F.3d 374 (D.C. Cir. 2005), *aff'd*, 338 F. Supp. 2d 22 (D.D.C. 2004) ..............................2

*North Haven Board of Educ. v. Bell*, 456 U.S. 512 (1982) ....................................................20, 21

*Ocean Drilling & Exploration Co. v. United States*, 988 F.2d 1135 (Fed. Cir. 1993) .................11

*Office Max, Inc. v. United States*, 428 F.3d 583 (6th Cir. 2005), *aff'g*,
    309 F. Supp. 2d 984 (N.D. Ohio 2004) ...........................................2, 9, 11, 12, 15, 17, 21, 22

*Old Colony v. Commissioner*, 284 U.S. 552 (1932) .......................................................................7

*Omohundro v. United States*, 300 F.3d 1065 (9th Cir. 2002) .......................................................19

*O'Shaughnessy v. C.I.R.*, 332 F.3d 1125 (8th Cir. 2003) .............................................................19

*People's Federal Sav. and Loan Ass'n of Sidney v. C.I.R.*, 948 F.2d 289 (6th Cir. 1991) ...........21

*Perrin v. United States*, 444 U.S. 37 (1979) ..................................................................................8

*Reese Brothers, Inc. v. United States of America,* 2004 U.S. Dist. LEXIS 27507
(W.D. Pa. 2004) *appeal pending*, No. 05-2135 (3d Cir.) ........................2, 6, 9, 10, 14, 16, 19

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) ............................................................7

*Royal Caribbean Cruises, Ltd. v. United States*, 108 F.3d 290 (11th Cir. 1997) ........................11

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ........................................................18, 19

*Speights & Runyon v. Celotex Corp.*, 227 F.3d 1336 (11th cir. 2000) ...........................................8

*Tandy Leather Co. v. United States*, 347 F.2d 693 (5th Cir. 1965) ...............................................11

*The Limited, Inc. v. C.I.R.*, 286 F.3d 324 (6th Cir. 2002) ............................................................11

*United Dominion Indus. v. United States*, 532 U.S. 822 (2001) .....................................................12

*United States v. American Trucking Association*, 310 U.S. 534 (1940) ..................................16, 17

*United States v. Gonzales*, 520 U.S. 1 (1997) ................................................................................7

*United States v. Mead*, 533 U.S. 218 (2001) ........................................................................18, 19

*United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989) ..................................................7

*United States v. Rutherford*, 442 U.S. 546 (1979) .......................................................................20

*U.S. Freightways Corp. v. C.I.R.*, 270 F.3d 1137 (7th Cir. 2001) ................................................19

## Statutes

26 U.S.C. § 1 .........................................................................................................................1

26 U.S.C. § 4251 ...........................................................................................................1, 4, 20

26 U.S.C. § 4251(a)(1) .............................................................................................................5

26 U.S.C. § 4252 .......................................................................................................1, 11, 14, 17

26 U.S.C. § 4252(b) .....................................................................................................4, 5, 15, 16, 20

26 U.S.C. § 4252(b)(1) ..............................................5, 6, 9, 10, 11, 12, 13, 15, 16, 17, 23

26 U.S.C. § 4252(b)(2) ......................................................................................6, 22, 23, 24

Rules

Fed. R. Civ. P. 56(c) ..................................................................................................................4

Other Authorities

PLR 971003 (PLR 1996) ................................................................9, 16, 17, 18, 19, 20, 21, 22, 23

PLR 199923002 (PLR 1999) ............................................................................................14, 15, 24

PLR 200009005 (PLR 1999) ......................................................................................................14

PLR 200227008 (PLR 2001) ...............................................................................................15, 24

## I.    NATURE & STAGE OF PROCEEDINGS

Plaintiff MBNA America Bank, N.A. ("Plaintiff") brings this action to obtain a refund of the federal communications excise taxes Plaintiff paid for the quarters ending March 31, 2001, through September 30, 2004. On May 2, 2005, Plaintiff filed a complaint in the United States District Court for the District of Delaware, seeking a refund in excess of $3,761,394.51, plus interest, as provided by law.  The United States filed an Answer to the Complaint on August 4, 2005, refuting Plaintiff's entitlement to a refund.

This is Plaintiff's Opening Brief in Support of Plaintiff's Motion for Summary Judgment on Liability.

## II.    SUMMARY OF ARGUMENT

Plaintiff is entitled to a refund in excess of $3,761,394.51, which represents the amount of federal communications excise taxes paid by Plaintiff for the taxable quarters ending March 31, 2001, through September 30, 2004.   Plaintiff is entitled to this refund because its telecommunications services do not fall within the definition of "toll telephone services" as set forth in the Internal Revenue Code of 1986, as amended, 26 U.S.C. § 1. *et. seq.* (the "Code").[1]  The facts are not in dispute.

Sections 4251 and 4252 of the Code impose a three percent excise tax on certain toll telephone services.  Plaintiff was forced to pay this tax on certain of its telephone services.  Plaintiff properly sought a refund of these taxes, but no such refund was allowed.  The taxes are payable solely for services where there is a charge that varies

---

[1]        Except as otherwise indicated, all section references are to sections of the Code.

in amount with the distance and elapsed transmission time of each individual communication, or when the subscriber is entitled to unlimited telecommunications to or from all persons in a specified area. The charges associated with the relevant telecommunications services purchased by Plaintiff did not vary based on the distance of each call and were not flat-rated for unlimited usage within a specified geographic area. Consequently, and as has been the consensus of every federal court ruling on this issue, the services at issue are not "toll telephone services" as defined in the Code. Thus, Plaintiff's telecommunications services are not subject to the federal communications excise tax. Accordingly, Plaintiff is entitled to a refund.

Summary judgment is appropriate because there is no genuine issue of material fact before this Court. The sole issue raised is whether the plain meaning of the Code applies to Plaintiff's telecommunications services. Seven federal district courts, as well as the Courts of Appeals for the Sixth Circuit, the Eleventh Circuit (reversing the only government victory on this issue) and the District of Columbia Circuit, have already decided this identical issue in favor of a taxpayer plaintiff.[2] Plaintiff is also entitled to summary judgment on the issue of liability.

---

[2]    Eight cases addressing this identical issue have recently been decided by federal courts. See *Office Max, Inc. v. United States*, 428 F.3d 583 (6th Cir. 2005), *aff'g*, 309 F. Supp. 2d 984 (N.D. Ohio 2004) ("*Office Max*"); *Fortis, Inc. v. United States*, 2004 U.S. Dist. Lexis 18686 (S.D.N.Y. 2004), *appeal pending*, No. 05-2518 (2d Cir.) ("*Fortis*"); *Nat'l R.R. Passenger Corp. v. United States of America*, 431 F.3d 374 (D.C. Cir. 2005), *aff'd*, 338 F. Supp. 2d 22 (D.D.C. 2004) ("*Amtrak*"); *Reese Brothers, Inc. v. United States of America*, 2004 U.S. Dist. LEXIS 27507 (W.D. Pa. 2004) *appeal pending*, No. 05-2135 (3d Cir.) ("*Reese Brothers*"); *Honeywell Int'l, Inc. v. United States*, 64 Fed. Cl. 188 (Ct. Cl., 2005), *appeal pending*, No. 05-5145 (Fed. Cir.) ("*Honeywell*"); *Am. Online, Inc. v. United States*, 64 Fed. Cl. 571 (Ct. Cl. 2005) ("*AOL*"); *Hewlett-Packard Company v. United States*, 2005 U.S. Dist. LEXIS 19972, 2005-2 U.S. Tax Cas. (CCH) P70244 (N.D. Cal. 2005), *appeal docketed*, No. 06-15052 ("*HP*"); and *Am. Bankers Ins. Group v. United States*, 408 F. 3d 1328 (11th Cir. 2005), *rev'g*, 308 F. Supp. 2d 1360 (S.D. Fla. 2004) ("*ABIG*") (collectively referred to herein as the

### III.     STATEMENT OF FACTS

Plaintiff is a national banking association formed under the laws of the United States of America, with its headquarters and principal place of business located in Wilmington, Delaware.  (*See* the Declaration of Frank Faerber ("Faerber Dec." ¶ 2). During the taxable periods from March 31, 2001, through September 30, 2004, Plaintiff purchased telecommunications services pursuant to contracts with AT&T and other telecommunications service providers.  (*See* Faerber Dec. ¶ 3).  The terms of the contracts dictated that charges for the telecommunications were based exclusively on the duration of each call.  (*See* Faerber Dec. ¶ 4).  The telecommunications services purchased by Plaintiff were billed on a per minute basis for each individual call made. (*See* Faerber Dec. ¶ 6).  Distance was never a factor in the charges under these contracts. (*See* Faerber Dec. ¶ 5).  Also, Plaintiff did not have the ability to make an unlimited number of calls within a specified geographic region for a flat or periodic fee.  (*See* Faerber Dec. ¶ 7).

Plaintiff paid federal communications excise taxes in excess of $3,761,394.51, for the taxable quarters ended March 31, 2001, through September 30, 2004.  (*See* Faerber Dec. ¶ 8).  On June 9, 2003, Plaintiff filed a timely claim for refund of these taxes for the quarters ended March 31, 2001, through March 31, 2003, with the

---

"Companion Cases").  In seven of these cases—*Office Max, Fortis, Amtrak, Reese Brothers, Honeywell, AOL* and *HP*—the district court granted the taxpayers' motions for summary judgment, finding that under the plain meaning of § 4252(b)(1), charges had to vary with both distance and duration to be taxable. Thus, the statutory definition of "toll telephone service" no longer fit with the manner in which the services were provided.  The court in *ABIG* granted the government's motion for summary judgment.  However, as noted above, the Eleventh Circuit reversed the lower court.  There is no standing case in the Government's favor.  On the contrary, courts in 6 circuits have found for the taxpayer plaintiffs.

Internal Revenue Service ("IRS") in Cincinnati, Ohio. (*See* Faerber Dec. ¶ 9). The IRS denied this claim for refund. (*See* Faerber Dec. ¶ 11). On November 1, 2004, Plaintiff filed a timely claim for refund of these taxes for the quarters ended June 30, 2003, through September 30, 2004, with the IRS in Cincinnati, Ohio. (*See* Faerber Dec. ¶ 10). The IRS also denied this claim for refund. (*See* Faerber Dec. ¶ 11).

## IV.    SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, "a District Court must grant a motion for summary judgment if there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *See Farcell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In other words, the Court should grant summary judgment "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.'" *Mack v. Otis Elevator Co.*, 326 F.3d 116, 120 (2d Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Here, there are no genuine issues of material fact in dispute. The Government's obligation to issue a refund (*i.e.,* the validity of Plaintiff's claim) turns solely on whether the IRS has correctly interpreted a specific statutory provision. Thus, the disputed issue is purely a legal one, pertaining to the statutory interpretation of provisions of the Code. Plaintiff is entitled to summary judgment because Plaintiff's telecommunications services were not "toll telephone service" as defined in Section 4252(b), nor were Plaintiff's services flat-rated for unlimited usage within a specified geographic area. Therefore, the services were not subject to the federal excise taxes imposed by Section 4251 of the Code.

## V.    ARGUMENT

**A.    Plaintiff Is Entitled to a Refund of the Federal Communications Excise Taxes It Remitted Because Plaintiff's Services are Not "Toll Telephone Service" Within the Meaning of Section 4252(b) of the Code**

Section 4251(a)(1) imposes a three percent excise tax on amounts paid for "communications service," which includes "toll telephone service." Section 4252(b) defines two types of "toll telephone service":

> (b)    **TOLL TELEPHONE SERVICE**. — For purposes of this subchapter, the term "toll telephone service" means —
>
> (1)    a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance and elapsed transmission time for each individual communication and (B) the charge is paid within the United States, and
>
> (2)    a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephone communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

Plaintiff's telecommunications services do not fall within either definition.

Based upon the plain language of Section 4252(b)(1), the long-distance services purchased by Plaintiff do not constitute a "toll telephone service" because: (1) the charges imposed on the services did not vary based on distance and elapsed transmission time, as required by the statute, but solely on elapsed time; and (2) the services at issue were not flat-rated for unlimited usage as required by Section

5

4252(b)(2). Hence, Plaintiff's services do not fall within either definition of "toll telephone service".

**B.**    **The Plain Language of § 4252(b)(1) Does Not Subject Plaintiff's Services to the Federal Communications Excise Tax Because Plaintiff's Services Did Not Vary Based Upon the Distance of Each Individual Communication**

Section 4252(b)(1) defines "toll telephone service" as "a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance ***and*** elapsed transmission time of each individual communication and (B) the charge is paid within the United States" (emphasis added). Plaintiff's services do not satisfy the definition of "toll telephone service" within the meaning of Section 4252(b)(1) because the charges for these services did not vary in amount based upon distance and duration.

**1.**    **There is No Basis to Disregard the Plain Meaning of Section 4252(b)(1)**

Section 4252(b)(1) plainly defines "toll telephone service" as a service for which there is a toll charge varying in amount with both distance and elapsed transmission time for each call. The language of the statute includes both distance and duration as obligatory elements. There is simply no basis to avoid the plain meaning of the statutory language. Therefore, Plaintiff's telecommunications services are not subject to the excise tax because the pricing of each call was not dependent on the distance of the individual calls. Federal courts examining this precise controversy have concluded that "it is clear from the plain language of the statute that Congress intended to impose the tax on calls charged based on both distance and duration." *Reese Brothers, Inc. v. United*

6

*States*, 2004 U.S. Dist. LEXIS 27507 *20 (W.D. Pa. 2004), *appeal pending*, No. 05-2135 (3d Cir.).

It is well-established that the interpretation of a statute "begins where all such inquiries begin: with the language of the statute itself." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241 (1989). As the Supreme Court has noted:

> [I]n interpreting a statute a Court should always turn first to one, cardinal canon before all others. We have stated time and again that Courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253-54 (1992) (internal citations omitted).[3]

It is also settled that the plain meaning doctrine extends to the Code. As the Supreme Court has explained, "'[T]he plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an astute and powerful intellect would discover.' This rule is applied to taxing acts." *Old Colony v. Commissioner*, 284 U.S. 552, 560 (1932) (quoting *De Ganay v. Lederer*, 250 U.S. 376, 381 (1919)). Where the text of the taxing statute is clear on its face, and the structure of the statute does not suggest a contrary result, a court will not construe a statute contrary to its plain meaning—even if the result is a "double windfall" to the taxpayer. *Gitlitz v.*

---

[3]     The inquiry into legislative intent ceases "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Barnhart v. Sigmon Coal Co.* 534 U.S. 438, 450 (2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). "Given [a] straightforward statutory command, there is no reason to resort to legislative history." *United Stated States v. Gonzales*, 520 U.S. 1, 6 (1997); *accord, Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 119 (2001) ("As the conclusion we reach today is directed by the text of § 1, we need not assess the legislative history of the … provision").

*Commissioner*, 531 U.S. 206, 219-20 (2001)*; see also Fisher Flouring Mills Co. v. United States*, 270 F.2d 27, 30 (9th Cir. 1959) (holding, as to the federal transportation excise tax, that there is no room for interpretation or construction where the language of the excise tax provision is clear and concise, even though the language allowed taxpayer to arrange the situs of payments for transportation outside the United States for transportation within the United States so as to avoid being taxed and to bestow on them an unexpected windfall).

A corollary to the plain meaning doctrine is the "fundamental canon of construction … that unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979).[4] "The words of statutes – including revenue acts – should be interpreted where possible in their ordinary, everyday senses." *Crane v. C.I.R.*, 331 U.S. 1, 6 (1947); s*ee also C.I.R. v. Soliman*, 506 U.S. 168, 174 (1993) ("in interpreting the words in a revenue act, we look to the 'ordinary, everyday senses' of the words" (citations omitted)). Here, Plaintiff's telecommunications services are not subject to the excise tax because they are not "toll telephone service" as defined in the Code.

## 2.    The Word "And" is Not Ambiguous

There is no ambiguity in the federal communications excise tax provisions. By using the term "distance" in the conjunctive with "elapsed transmission time," the statute requires that charges for the service vary based upon distance in order

---

[4]     *See also Speights & Runyon v. Celotex Corp.*, 227 F.3d 1336, 1338 (11th Cir. 2000) ("In interpreting a statute, we begin by examining the 'plain, ordinary, and most natural meaning' to terms not otherwise defined in the text itself.")

for the service to constitute a taxable "toll telephone service."[5]  The Government is attempting to rewrite an unambiguous statute in the guise of construing it.  As the courts in the Companion Cases have recognized, there is nothing in the grammatical structure or content of the statute that would allow the strained interpretation of "and" as "or".  In fact, the meaning of the words of Section 4252(b)(1) "is clear and unambiguous."  *Am. Bankers Ins. Group v. United States,* 408 F. 3d 1328, 1333 (11th Cir. 2005).  As the Sixth Circuit Court of Appeals noted recently, "Every court to reach this issue – save one district court subsequently reversed – has concluded that the statute unambiguously requires variance by both distance and elapsed transmission time."  *Office Max, Inc. v. United States*, 428 F.3d 583, 591 (6th Cir. 2005).

The Court in *Crooks v. Harrelson* grappled with the same issue presented here: whether to interpret a conjunctively worded provision of the Code in the disjunctive, and held that requirements "expressed conjunctively…may not be read as though stated disjunctively."  *Crooks v. Harrelson*, 282 U.S. 55, 59 (1930).  The court in *Reese Brothers* agreed, holding that "it appears logical to conclude that Congress intended the word "and" to be read conjunctively."  *Reese Brothers*, 2004 LEXIS 27507 at *13.  The court added that reading the statute "as requiring that the toll charge vary in amount with both the distance and the time elapsed is neither unclear nor defies common sense."  *Id*. at *12.  The *Fortis* court also agreed with that assessment, holding that the

---

[5]        Indeed, the IRS has acknowledged that the literal language of § 4252(b)(1) requires that the charge for long-distance service vary with distance in order to constitute a "toll telephone service."  *See e.g*., Revenue Ruling 79-404, 1979-2 C.B. 382.  ("Literally, the service provided in this case does not come within the definition of ... 'toll telephone service' as [that term is] currently defined in section 4252 of the Code …  It is not "toll telephone service" because the charge for such service does not vary with distance and therefore does not meet the requirement of section 4252(b)(1)").

"toll telephone service in Section 4252(b)(1) is unambiguously defined as involving charges that vary with both distance and elapsed transmission time." *Fortis, Inc. v. United States of America,* 2004 U.S. Dist. LEXIS 18686 at *21. (S.D.N.Y. 2004), *appeal pending*, No. 05-2518 (2d Cir.).

As with the *Crooks*, *Reese Brothers* and *Fortis* courts, this Court should apply the language in Section 4252(b)(1)(A) consistent with its conjunctive "distance and elapsed transmission time." Because Plaintiff's telecommunications services did not vary based upon the distance and elapsed transmission time of the individual communications, the services are simply not taxable "toll telephone service".

In addition, it is "well settled that the legislature's failure to define commonly-used terms does not create ambiguity, because the words in a statute 'are deemed to have their ordinarily understood meaning.'" *Executive Jet Aviation, Inc. v. United States*, 125 F.3d 1463, 1468 (Fed. Cir. 1997) (quoting *Koyo Seiko Co. v. United States*, 242 U.S. 470, 485 (1917)). When interpreting statutes levying taxes, courts should not extend the statutory provisions by implication or enlarge the interpretation of the language to include matters that are not specifically referenced. *Gould v. Gould*, 245

U.S. 151, 153 (1917).[6]  As a result, the term "and" in § 4252(b)(1)(A) should not be extended or limited by implication and must be given its plain and ordinary meaning.[7]

### 3.     Even if the Statutory Provision Were Ambiguous, the Statute Should be Construed Against the Government and in Favor of the Taxpayer

Even if Section 4252 were deemed ambiguous (it is definitely not, as numerous courts have already held), the Court must construe the provision in Plaintiff's favor.  As the Supreme Court has expressed, "In case of doubt, [taxing statutes] are construed most strongly against the government, and in favor of the citizen." *Gould*, 245 U.S. at 153; *see also McFeely v. Commissioner*, 296 U.S. 102, 111 (1935) ("[h]ere the rule obtains that a taxing statute, if of doubtful intent, should be construed favorably to the taxpayer.")[8]  The *Office Max* appellate court emphasized that the Government's

---

[6]    *See also Horton Homes, Inc. v. United States*, 357 F.3d 1209, 1212 (11th Cir. 2004) (the Court declined to extend the plain language of the statute to cover "toters" for the purpose of imposing the first retail sale of "tractors" excise tax, reasoning that "such a finding, impermissibly would stretch the clearly expressed Congressional intent in § 4051(a)(1)(E)); and *The Limited, Inc. v. C.I.R.*, 286 F.3d 324, 338 (6th Cir. 2002) (the Court declined to extend the meaning of the term "banking business" to impose a definition of "bank" that Congress never expressly intended to apply, noting that "it makes little sense to stretch the ordinary meaning of an undefined term").

[7]    Furthermore, the government may argue – as it did in *HP* – that the word "distance" is ambiguous in the statute and may be synonymous with "toll rate". As the court in *HP* noted, this argument is unpersuasive because, even if true, the government has acknowledged that distance would still be a factor in calculating this "toll rate" and therefore a "distance" element must still be present for the tax to apply.  *HP*, 2005 U.S. Dist. LEXIS 19972 at *8.

[8]    *See also Royal Caribbean Cruises, Ltd. v. United States*, 108 F.3d 290, 294 (11th Cir. 1997) (in denying imposition of the voyage excise tax, the Court interpreted the term "embarkation" and "disembarkation" consistently "with the general rule of construction that ambiguous tax statutes are to be construed against the government and in favor of the taxpayer"); *Ocean Drilling & Exploration Co. v. United States*, 988 F.2d 1135, 1156 (Fed. Cir. 1993) (holding that self-insured insurance premium paid to foreign subsidiary was deductible, stating the "[i]n case of doubt [about the meaning of statutes levying taxes], they are construed most strongly against the government, and in favor of the citizen"); *Tandy Leather Co. v. United States*, 347 F.2d 693, 695 (5th Cir. 1965) (in overruling the lower Court's decision denying the taxpayer a refund of luggage excise taxes, the

argument that the statute be construed in its favor was "perilously close to suggesting an interpretive presumption in favor of the government and against the taxpayer." *Office Max*, 428 F.3d at 594. This, the court declared, was contrary to the "traditional canon" that a revenue-raising law must be construed against the Government.. *Id.* (quoting from *United Dominion Indus. v. United States*, 532 U.S. 822, 839 (2001). This "traditional canon" dictates that where there is any ambiguity, a taxpayer Plaintiff's motion must prevail.

  **4. A Plain Meaning Interpretation of Section 4252(b)(1) Would Not Cause an Absurd Result**

  In the Companion Cases, the Government attempted to invoke the absurdity principle to override the plain meaning of Section 4252(b)(1) by arguing that: (1) Congress intended to tax all long-distance services, except as otherwise specifically exempted; and that (2) applying the plain meaning of Section 4252(b)(1) would effectively abolish the telecommunications excise tax with respect to long-distance service given that long-distance service is generally no longer priced on a distance-sensitive basis. The Companion Cases courts rejected these arguments. A review of the facts in this case manifestly demonstrates that the absurdity principle should not be applied here either.

  Under the absurdity principle, the plain meaning of a statute "should be rejected as leading to absurd results, and a construction [should be] adopted in harmony with what is thought to be the spirit and purpose of the act in order to give effect to the intent of Congress." *Crooks v. Harrelson*, 282 U.S. at 59. To be truly characterized as

---

Court reasoned that "any doubts as to meaning are to be resolved in favor of the taxpayer").

absurd, the absurdity "must be so gross as to shock the general moral or common sense." *Id.* at 60. The absurdity principle is "an extremely narrow exception" to the plain meaning rule and instances in which the exception applies "should be exceptionally rare." *See*, e.g., *Hillman v. Internal Revenue Service*, 263 F.3d 338, 342 (4th Cir. 2001); *Crooks v. Harrelson*, 282 U.S. at 60.

This case, as with the Companion Cases, is not one of those "rare and exceptional" occasions in which the absurdity principle should be applied. First, there is no evidence in the statute itself or in its underlying legislative context that demonstrates that Congress intended to tax all long-distance services other than services specifically exempted. In fact, the legislative history reveals that Congress meant to narrow the definition of "toll telephone service" and thus the statute's reach. (*See* Section 5 *infra*). Second, following the plain meaning of the statute would not lead to an "absurd" result; it would simply mean the federal communications excise tax incorrectly levied on certain "toll telephone service" would be eliminated. The loss of tax dollars is not an occasion in which the absurdity principle should be applied. As the *Fortis* court noted, it is the province of Congress, not the IRS or the courts, to amend and expand underlying statutes to respond to industry changes:

> This case does not even involve a drafting error; it involves a disconnect between a forty-year old tax scheme and recent innovations in the telecommunications industry. It is plainly Congress' responsibility to decide whether to revise the statute to accommodate such developments. *Fortis*, 2004 LEXIS 18686 at *32.

The courts in *Fortis*, *Amtrak*, *Office Max*, *Honeywell*, *Reese Brothers*, *AOL* and *HP* have all rejected the Government's attempt to apply the absurdity principle to override the plain meaning of Section 4252(b)(1). These decisions have been

reaffirmed by the Courts of Appeals of the Sixth Circuit and the District of Columbia Circut, and, as has been noted, the Eleventh Circuit overruled the lower court's decision in the Government's favor.  For example, the *Reese Brothers* court rejected this precise argument and maintained that although "it cannot be disputed that where the reading of a statute would produce an absurd result…courts may look past the plain language.  It does not appear, however, that this case falls into [this] category, and, thus, we decline to attach another meaning to the statute other than that which appears on its face."  *Reese Brothers*, 2004 LEXIS 27507 at *21-22 (internal citations omitted).  Indeed, the Eleventh Circuit confirmed that the plain meaning of the statute does not lead to an absurd result.  *See Am. Bankers*, 408 F. 3d at 1334.  The same conclusion should be reached in this case.

### 5.    The Legislative History Relating to Section 4252 is Consistent with The Plain Language of Section 4252(b)(1)

An analysis of the legislative history of the Excise Tax Reduction Act of 1965 (the "1965 Act") supports Plaintiff's position.  The 1965 Act accomplished four objectives: (1) it lowered the rate of taxation for local telephone service, toll telephone service, and teletypewriter exchange service (with a sunset of the tax scheduled in 1969); (2) it updated and modified the statutory definitions of local telephone service, toll telephone service, and teletypewriter exchange service "to make clear it is the service as such which is being taxed and not merely the equipment being supplied;" (3) it created an exemption for private communication services; and (4) it repealed the excise tax on teletype service and wire and equipment service.  H.R. Rep. No. 89-433 at 1676-78; S. Rep. No. 890324 at 1725-27.

Prior to the amendment of Section 4252 by Section 302 of the 1965 Act, "toll telephone service" was broadly defined, in part, as "a telephone or radio telephone

message or conversation for which (1) there is a toll charge, and (2) the charge is paid within the United States."  26 U.S.C. § 4252(b), as enacted by P.L. 85-859.  The 1965 Act changed this definition to the current restrictive definition of "toll telephone service."  The only language in either the House or Senate Reports addressing the current definition of "toll telephone service" states that "[t]oll telephone service is defined as being a telephonic quality communication for which a toll charge is made which varies in amount with the distance **and** elapsed transmission time of individual communications, but only if the charge is paid within the United States" (emphasis added).  H.R. Rep. No. 89-433 at 1645; S. Rep. No. 89-324 at 1725.

This legislative history confirms that it was Congress's intent to narrow the definition of "toll telephone service."  This is consistent with the plain meaning of the words of the statute.  The *Office Max* court relied upon this legislative history and held that

> Congress took the broad definition of "toll telephone service" in § 4252(b)(1) and expressly modified it to include the additional requirements that charges vary by distance and time.  The House and Senate Report language is, in fact, identical in all material respects to the plain language of the statute itself.  The Court must presume that Congress meant what it said when it tailored the definition of taxable "toll telephone service" to include distance and time requirements, particularly in light of the overall goal of the [1965] Act to reduce and restrict the application of federal excise taxes.  *Office Max, Inc. v. United States of America*, 309 F. Supp. 2d  984, 1000 (N.D. Ohio 2004).

Thus, the legislative history further supports Plaintiff's position that to be taxable, the charges on telecommunications services must vary based upon duration and distance.  Absolutely nothing in this history indicates that Congress intended the words "distance and elapsed transmission time" to have a meaning other than their plain

meaning. On the contrary, the history confirms that Congress intended to use the term "distance and elapsed transmission time" as a conjunctive phrase.

### 6. Revenue Ruling 79-404 Ignores the Plain Language of Section 4252(b)(1)

The Government cannot rely upon Revenue Ruling 79-404 in its efforts to override the plain meaning of Section 4252(b).[9] The Revenue Ruling itself is flawed because it ignores the literal requirements of Section 4252(b)(1) and relies on *United States v. American Trucking Association*, 310 U.S. 534 (1940) and *Corn Products Refining Company v. C.I.R.*, 350 U.S. 46 (1955) to avoid the plain meaning of certain statutory language. As the *Reese Brothers* court noted, the Court of Appeals for the Third Circuit recently declared that no deference is owed "to an agency interpretation plainly inconsistent with the relevant statute." *Reese Brothers*, 2004 LEXIS 27507 at * 31 (quoting *Mercy Catholic Medical Center v. Thompson*, 380 F.3d 142, 152 (3d Cir. 2004)). The plain language of the statute overrides the agency's interpretation. Additionally, the Government's reliance on *American Trucking* and *Corn Products* is misplaced because *American Trucking* does not support the Government's contention and is distinguishable, and *Corn Products* has been substantially limited since the issuance of Revenue Ruling 79-404.

---

[9]     Revenue Ruling 79-404 considered the taxability of a ship-to-shore communication service that was priced based upon elapsed transmission time and not distance. The IRS ruled that the service in question was a "toll telephone service", within the meaning of § 4251(b), even though it was priced on a non-distance sensitive basis. Before reaching this conclusion, the Ruling explicitly acknowledged that the service did not satisfy the literal definition of "toll telephone service" in § 4252(b)(1) because the charge for the service did not vary with distance.

The Court in *American Trucking* was asked to interpret a broad term ("employee"), which was not defined in the statute at issue—the Motor Carriers Act of 1935. In sharp contrast, the statutory term at issue in Revenue Ruling 79-404, as well as in the present case ("toll telephone service"), is defined in Section 4252(b)(1) with clarity, detail and precision (in requiring that the charge vary with both distance and elapsed transmission time). In *American Trucking*, the Court found clear evidence in the legislative history that Congress intended to limit the scope of the meaning of the term "employee." Here, the legislative history of the 1965 Act clearly evidences Congress' intent to limit the definition of "toll telephone service." As noted by the court in *Office Max*, "there are no comparable indications in the legislative history to the Excise Tax Reduction Act of 1965 and, indeed, it is more logical to draw the opposite conclusion in light of the fact that Congress expressly chose to narrow a formerly broadly-worded definition of the term 'toll telephone service.'" *Office Max*, 309 F. Supp. 2d at 1001.

In addition, the Court in *American Trucking* turned to legislative history to explain an ambiguous term. However, Revenue Ruling 79-404 turns to legislative history to obfuscate a clearly defined term. Even more problematic, Revenue Ruling 79-404 does not even cite the legislative history of Section 4252; it merely states that there was no indication that Congress intended to change those services subject to the tax. (*See* Revenue Ruling 79-404). In essence, the IRS has argued that the absence of legislative history expresses congressional intent and supercedes actual statutory language. This is the contention the Government has used to defend its reading of Section 4252.

Equally unjustifiable is the Revenue Ruling's reliance on *Corn Products,* which was substantially narrowed by the Court in *Arkansas Best Corp. v. C.I.R.*, 485 U.S.

212 (1988), a decision that came 33 years after *Corn Products* and nine years after the issuance of Revenue Ruling 79-404. In *Arkansas Best,* the Supreme Court applied the plain meaning rule to the same Code provision that the *Corn Products* court had read so broadly.

Revenue Ruling 79-404 was wrongly decided and the basis for its support is tenuous at best. It should not be relied upon by this Court to avoid the plain meaning of a clear and unambiguous statutory position.

In any event, this Court should not accord any deference to the Revenue Ruling. Although the Supreme Court has not addressed the level of deference to be accorded Revenue Rulings, it held in *United States v. Mead*, 533 U.S. 218 (2001), that the standard set forth in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) should apply to executive agency interpretations that do not fall within the deference standard set forth in *Chevron U.S.A., Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837 (1984).

Under the *Chevron* deference standard, where Congress has "explicitly left a gap for an agency to fill, [and] there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation," any ensuing regulation is "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843-44.

The *Mead* Court, however, limited *Chevron* deference by holding that "*Chevron* deference [is appropriate only] when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *Mead*, 533 U.S. at 226-27. The *Mead* Court further added that "an

[administrative] agency's interpretation may merit some deference, whatever its form, given the 'specialized experience and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires." *Id*. at 234 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944)).  However, in the absence of evidence establishing that the agency interpretation was issued in furtherance of congressionally delegated authority, "(t)he weight [provided to an administrative] judgment will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Mead*, 533 U.S. at 222 (quoting  *Skidmore,* 323 U.S. at 140).   The court in *Reese Brothers* agreed, explaining that "an agency interpretation is entitled to substantial deference only where Congress generally delegated authority to the agency to make rules carrying the force of law and the interpretation was, in fact, promulgated in the exercise of that authority."  *Reese Brothers,*  2004 LEXIS 27507 at *31 (citing *Mead*, 533 U.S. at  226-27).

Several Courts of Appeals have followed the *Skidmore* and *Mead* courts' approach.  *See, e.g., Omohundro v. United States*, 300 F.3d 1065, 1068 (9th Cir. 2002); *Aeroquip-Vickers, Inc. v. C.I.R.,* 347 F.3d 173, 181 (6th Cir. 2003); *O'Shaughnessy v. C.I.R.*, 332 F.3d 1125, 1130 (8th Cir. 2003); *U.S. Freightways Corp. v. C.I.R.*, 270 F.3d 1137, 1142 (7th Cir. 2001); and *American Express Co. v. United States*, 262 F.3d 1376, 1383 (Fed. Cir. 2001).

Regardless of which standard of deference applies to Revenue Rulings, Revenue Ruling 79-404 is invalid and should not be accorded any deference by this Court

because (1) it is completely at odds with the plain language of Section 4252(b) (indeed, it acknowledges that fact) and (2) it is not supported by its own reasoning.

### 7.    There Has Been No Congressional Reenactment of Section 4252(b)(1) Approving the Holding In Revenue Ruling 79-404

The Government may argue (as it has argued in the Companion Cases) that subsequent to the publication of Revenue Ruling 79-404, Congress reenacted the communications excise tax imposed by Section 4251, *et. seq.*, and that as a result, it is the intention of Congress to widen the scope of services to which the excise tax applies. The *Fortis*, *OfficeMax*, *Amtrak*, *Reese Brothers, Honeywell, AOL and HP* lower courts, and the appellate courts of the Sixth Circuit, the Eleventh Circuit and the District of Columbia Circuit, have all rejected this argument given the clear statutory language at issue and the fact that there is no evidence that Congress even considered Revenue Ruling 79-404. This Court should reach the same correct conclusion.

"Where an agency's statutory construction has been 'fully brought to the attention of the public and Congress,' and the latter had not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative interest has been correctly discerned." *North Haven Board of Educ. v. Bell*, 456 U.S. 512, 535 (1982) (quoting *United States v. Rutherford*, 442 U.S. 546, 554 N.10 (1979)). The reenactment doctrine is an interpretive tool invoked by a court only after finding the statute at issue is silent or ambiguous. *Id.* at 522. An important consideration in the application of the reenactment doctrine is "the degree of scrutiny Congress has devoted to the regulation during subsequent re-enactments of the statute." *National Muffler Dealers Ass'n v. United States*, 440 U.S. 472, 477 (1979). The reenactment doctrine "is most useful in situations when there is some indication that Congress noted

or considered the regulation in effect at the time of its action.  Otherwise, the doctrine may be as doubtful as the silence of the statutes and legislative history to which it is applied."  *People's Federal Sav. and Loan Ass'n of Sidney v. C.I.R.*, 948 F.2d 289, 302-03 (6th Cir. 1991).

In this case, the reenactment doctrine is inapplicable.  First, the statutory language at issue is clear and unambiguous, thereby negating the applicability of the doctrine.  *North Haven*, 456 U.S. at 535 (doctrine is only applicable when the statutory language is ambiguous).  The *Office Max* appellate court went further, noting that "even the cases applying the reenactment doctrine impose limitations on it that are applicable here –'where the law is plain, subsequent reenactment does not constitute an adoption of a previous administrative construction.'"   *Office Max*, 428 F.3d at 596 (quoting from *Brown v. Gardner*, 513 U.S. 115 at 131 (1994).  Furthermore, there is no indication whatsoever in the legislative history that Congress was even aware of Revenue Ruling 79-404.  *Am. Bankers*, 2005 408 F.3d 1335 ("there is nothing to indicate that Congress was aware of Revenue Ruling 79-404 when it subsequently amended and re-enacted this taxing statute.")  The Sixth Circuit appellate court agreed with this assessment, "the government fails to identify any evidence in the telephone-excise-tax legislation from 1979 to the present that discusses or acknowledges the existence of the 1979 revenue ruling." *OfficeMax*, 428 F.3d at 596.  As the *Fortis* court noted:

> In this case, the reenactment doctrine cannot alter the plain meaning of the statute, and, moreover, there is nothing to indicate the Congress adopted, tacitly or otherwise, the interpretation presented in Revenue Ruling 79-404.  The Revenue Ruling was limited to the narrow issue of ship-to-shore communications, and there is no evidence that the Ruling was ever cited or applied between 1979 and the latest congressional reenactment in 1998.  *See ABIG*, 308 F.

Supp. 2d at 1372 (noting that Revenue Ruling 79-404 has been cited in Private Letter Rulings in 1999 and 2001). While the Ruling was issued over twenty years ago, it is not comparable to the longstanding treasury regulations in Cleveland Indians Baseball and College Savings. Ultimately, there is no indication that Revenue Ruling 79-404 was brought to the attention of Congress or that Congress in any subsequent reenactments considered the question involved in the Ruling. *See Office Max*, 309 F. Supp. 2d at 1004-05 (finding that congressional approval of Revenue Ruling 79-404 could not be inferred from reenactment and distinguishing *Cleveland Indians Baseball*). There is thus no basis to find that subsequent reenactment of the statute has provided it with the force of the law.

*Fortis,* 2004 LEXIS 18686 at *43. This Court should reject any attempt to apply the reenactment doctrine to alter the plain meaning of the statute.

C. **Plaintiff Is Entitled to a Refund of the Telecommunications Federal Excise Taxes it Remitted Because Plaintiff's Services Are Not "Toll Telephone Service" Under Section 4252(b)(2) Because They Were Not Flat-Rated for Unlimited Usage for a Set Period of Time Within a Specific Area**

Section 4252(b)(2) of the Code provides that a service is a "toll telephone service" if the customer pays a "periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time) for the privilege of making an unlimited number of calls to or from a specified area that is outside the local telephone system in which the stations used to make the calls are located." The services provided to Plaintiff did not allow the company to make "unlimited calls" for a "flat amount" or "periodic" charge. (*See Faerber* Dec. ¶ 7). Furthermore, Plaintiff's services were not billed based on a "flat rate" method, which is the method adopted by Section 4252(b)(2).[10] Instead, Plaintiff was

---

[10]    *Black's Law Dictionary* 575 (5th Ed. 1979) defines "flat rate" as "fixed amount paid each period without regard to actual amount of electricity, gas, etc. used in

charged an amount that varied based upon the duration of each individual call. As a result, Plaintiff's telecommunications services do not constitute taxable "toll telephone services" under Section 4252(b)(2).

The National Office of the IRS, in at least four separate Technical Advice Memoranda, has consistently held that where there is a charge for each call made, the service cannot constitute a "toll telephone service" under Section 4252(b)(2). *See* Technical Advice Memorandum 199923002 (February 19, 1999), Technical Advice Memorandum 97100003 (November 19, 1996), Technical Advice Memorandum 200227008 (March 8, 2001) and Technical Advice Memorandum 200009005 (November 8, 1999).[11]

In Technical Advice Memorandum 200227008, the National Office stated as follows:

> "Taxpayer argues that it purchases services described in §4252(b)(2). Taxpayer emphasizes that the charge for each service is based upon total elapsed transmission time as used in the parenthetical in §4252(b)(2). However, the charges for the Services are determined on the basis of the duration of each call. Unlike local service, Taxpayer does not pay a fixed amount in advance for an unlimited number of calls. Thus, the Services are similar to the service in Revenue Ruling 79-404 that was held to be described in §4252(b)(1), not §4252(b)(2). That is, the Services in question do not entitle Taxpayer to an unlimited number of calls to a specified area for which a charge is made based

---

the particular period." Under § 4252(b)(2), Plaintiff's services were not flat-rated because Plaintiff was charged according to actual use rather than a fixed amount paid each month without regard to the actual amount of telephone usage.

[11]    Although a Technical Advice Memorandum is, by its terms, only binding with respect to the particular taxpayer subject to the private ruling, in the absence of regulations under § 4252(b)(2), the Technical Advice Memoranda reflects the IRS viewpoint in this area.

> on flat fee or elapsed transmission time, but rather provide Taxpayer with telephone service for which Taxpayer is charged an amount that varies based upon the duration of each call."

Finally, the legislative history of Section 4252(b)(2) makes it clear that Plaintiff's services would not fall within the penumbra of Section 4252(b)(2). The legislative history demonstrates that this provision was intended to cover "WATS (wide area telephone service)," which was described as "a long-distance service whereby, for a flat charge, the subscriber is entitled to make unlimited calls (sometimes limited as to the maximum number of hours)." H.R. Rep. No. 89-433, at 1677; S. Rep. No. 89-324, at 1725. Thus, whereas the WATS service would allow Plaintiff to make an unlimited number of calls for a fixed, agreed-upon *amount*, Plaintiff incurred a separate charge with respect to each call that was made.

## VI. __CONCLUSION__

For the reasons set forth above, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Summary Judgment on Liability and rule that the non-distance sensitive long-distance services purchased by Plaintiff are not subject to taxation under Sections 4251 and 4252 of the Code.

Dated: February 10, 2006

/s/ Kathleen M. Jennings
Kathleen M. Jennings, Esq. (I.D. No. 913)
Karen V. Sullivan, Esq. (I.D. No. 3872)
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
P.O. Box 2054
Wilmington, Delaware 19899-2054
(302) 576-2000


Jacob J. Miles, Esq.
Joseph A. Boyle, Esq.
Paul L. Kattas, Esq.
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178

Attorneys for Plaintiff
MBNA AMERICA BANK, N.A.