LEXSEE 2004 U.S. DIST. LEXIS 27507

**REESE BROTHERS, INC., Plaintiff, v. UNITED STATES OF AMERICA, Defendant.**

**Civil Action No. 03-745**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

*2004 U.S. Dist. LEXIS 27507*

**October 20, 2004, Decided**

**SUBSEQUENT HISTORY:** Adopted by, Summary judgment granted by, Judgment entered by *Reese Bros. v. United States, 2004 U.S. Dist. LEXIS 27505 (W.D. Pa., Nov. 30, 2004)*

**DISPOSITION:** [*1] Magistrate Judge's recommendation to grant plaintiff's motion for summary judgment and to deny defendant's motion for summary judgment.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff taxpayer filed suit against defendant, the United States, pursuant to *26 U.S.C.S. §§ 6532*, 7422, seeking reimbursement of federal excise tax that the taxpayer claimed to have overpaid on interstate and intrastate long distance telephone services. The parties filed cross motions for summary judgment, which were referred to a magistrate for report and recommendation.

**OVERVIEW:** The taxpayer paid excise taxes pursuant to *26 U.S.C.S. § 4251*(b)(1) on intrastate and long distance calls. The taxpayer argued that it was entitled to a refund because the charges for the services were not based on the distance of the calls. Essentially, the issue was whether the "and" in § 4251(b)(1) should be read as a conjunctive or a disjunctive. The magistrate held that it should be read in the conjunctive because it had been the clear intent of Congress, when it enacted § 4251(b)(1) in 1965, to require payment of the tax for long distance services only where the charges were based on both the distance of the call and on the transmission time of a call. The fact that billing methods had changed since 1965 and that calls were no longer charged using mileage bands did not negate the fact that Congress had intended distance to be a factor in 1965 and did not provide a basis for disregarding the plain meaning of § 4251(b)(1). Further, deference could not be given to *Rev. Rul. 79-404*, which interpreted *26 U.S.C.S. § 4251*(b)(1) as imposing a tax on all long distance calls, because it was an informal interpretation and was at odds with the unambiguous language of § 4251(b)(1).

**OUTCOME:** The magistrate recommended that the taxpayer's motion for summary judgment be granted and that the government's motion for summary judgment be denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN1] Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Fed. R. Civ. P. 56(c)*.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN2] In deciding a motion for summary judgment the court must view all inferences in a light most favorable to the non-moving party. The non-moving party, however, may not rely on bare assertions, conclusory allegations or mere suspicions to support its claim but must demonstrate by record evidence the meritorious nature of the claim.

*Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)*
[HN3] *26 U.S.C.S. § 4251* imposes a three percent tax on amounts paid for "communications services," which includes toll telephone service. *26 U.S.C.S. § 4251*(a)(1), (b)(1), (b)(2). Although the person paying for the telephone service is responsible for the tax imposed,

Case 1:05-cv-00257-JJF-MPT    Document 42-8    Filed 02/10/2006    Page 2 of 7

Page 2
2004 U.S. Dist. LEXIS 27507, *

the service provider is required to collect the tax from its customers and remit it to the government. *26 U.S.C.S. § 4251*(a)(2).

**Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)**
[HN4] See *26 U.S.C.S. § 4252*(b).

**Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)**
[HN5] The controversy of whether the word "and," as used in *26 U.S.C.S. § 4252*(b)(1), should be read in the conjunctive or disjunctive has been decided by four district courts. One district court has found that based on the purpose of *26 U.S.C.S. §§ 4251* and 4252, long distance service is taxable even though charges are based on time and not distance. The three other district courts have found that under plain meaning of § 4252(b)(1), charges have to vary with both distance and elapsed time to be taxable. The United States District Court for the Western District of Pennsylvania agrees with those district courts that hold that under plain meaning of § 4252(b)(1), charges have to vary with both distance and elapsed time to be taxable.

**Governments > Legislation > Interpretation**
[HN6] In interpreting a statute, the role of the courts is to give effect to Congress's intent. Because it is presumed that Congress expresses its intent through the ordinary meaning of its language, every exercise of statutory interpretation begins with an examination of the plain language of the statute. If the statutory language is clear and unambiguous, no further inquiry is necessary. Where an ambiguity exists, however, the court may look beyond the statute to the legislative history to determine congressional intent.

**Governments > Legislation > Interpretation**
[HN7] Determining whether the language of a statute is ambiguous in the first instance requires a court to examine the language itself, the specific context in which the language is used, and the broader context of the statute as a whole. As recently found by the Court of Appeals for the Third Circuit, however, ambiguity does not arise merely because a particular provision can, in isolation, be read in several ways or because a statute contains an obvious scrivener's error. Nor does it arise if the ostensible plain meaning renders another provision of the Code superfluous. Rather, a provision is ambiguous when, despite a studied examination of the statutory context, the natural reading of a provision remains elusive.

**Governments > Legislation > Interpretation**
[HN8] Although it cannot be disputed that in certain contexts "and" is sometimes used in the disjunctive, its ordinary meaning has a conjunctive connotation. Ordinary use of the term "or" in a statute signifies a disjunctive requirement, while "and" signifies a conjunctive one.

**Governments > Legislation > Interpretation**
[HN9] The plain meaning of a statute should be given effect unless that interpretation defies common sense.

**Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)**
[HN10] Congress intended the word "and" in *26 U.S.C.S. § 4252*(b)(1) to be read conjunctively thereby reflecting the manner in which calls were billed at the time. The fact that billing methods have changed and long distance calls are no longer charged based on distance does not alter Congress's intent in 1965 when it amended the statute.

**Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)**
[HN11] Courts should endeavor to give meaning to every word which Congress used in a statute and therefore should avoid an interpretation which renders an element of the language superfluous.

**Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)**
[HN12] "Communications services" is defined in *26 U.S.C.S. § 4251*(b)(1) as local telephone service, toll telephone service, and teletypewriter exchange service. "And" also joins *26 U.S.C.S. § 4252*(a)(1) and (a)(2) as well as (b)(1) and (b)(2). In all three instances, it appears clear that "and" is meant to be read either cumulatively or in the disjunctive. That fact, however, does not require "and" to be read disjunctively everywhere it is used in the statute.

**Governments > Legislation > Interpretation**
[HN13] Ambiguity is not a creature of definitional possibilities but of statutory context.

**Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)**
[HN14] Each provision of *26 U.S.C.S. § 4251* should be read in its own context.

**Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)**
[HN15] The obvious meaning of *26 U.S.C.S. § 4252*(b)(1), particularly when read in conjunction with § 4252(b)(2), is that where the charge for each call is assessed on an individual basis and the charges vary in amount from call to call depending on the distance and time elapsed, the service is covered under the provision. This distinguishes § 4252(b)(1) from the services de-

Case 1:05-cv-00257-JJF-MPT    Document 42-8    Filed 02/10/2006    Page 3 of 7

Page 3
2004 U.S. Dist. LEXIS 27507, *

scribed in § 4252(b)(2) which are not charged on a per-call basis but rather are assessed at a flat rate or based on the total elapsed transmission time for calls made during a billing period.

*Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)*
[HN16] The fact that there is no toll charge for individual calls under the WATS does not negate the fact that *26 U.S.C.S. § 4252*(b)(2) describes a service where a charge is made for an unlimited number of calls or for a fixed number of hours to or from persons outside the local telephone system area.

*Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)*
[HN17] It is clear from the plain language of *26 U.S.C.S. § 4252*(b)(1) that Congress intended to impose the tax on calls charged based on both distance and duration and that courts need not resort to legislative history or other interpretive aids to ascertain that intent.

*Governments > Legislation > Interpretation*
[HN18] Where the reading of a statute would produce an absurd result or one that is clearly contrary to legislative intent, courts may look past the plain language.

*Constitutional Law > Separation of Powers*
*Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)*
[HN19] Updating *26 U.S.C.S. § 4252*(b)(1) is not a court's role, particularly when doing so would require reading the term "distance" out of the statute. As the United States Supreme Court has instructed, there is a basic difference between filling a gap left by Congress's silence and rewriting rules that Congress has affirmatively and specifically enacted. If the statute needs to be amended, that task should be left to Congress. It is plainly Congress's responsibility to decide whether to revise the statute to accommodate developments in the telecommunications industry.

*Administrative Law > Agency Rulemaking > Rule Application & Interpretation*
*Administrative Law > Separation & Delegation of Power > Legislative Controls*
[HN20] The Court of Appeals for the Third Circuit holds that courts owe no deference to an agency interpretation plainly inconsistent with the relevant statute. Moreover, an agency interpretation is entitled to substantial deference only where Congress generally delegated authority to the agency to make rules carrying the force of law and the interpretation was, in fact, promulgated in the exercise of that authority.

*Administrative Law > Agency Rulemaking > Formal Rulemaking*
*Administrative Law > Agency Rulemaking > Rule Application & Interpretation*
*Administrative Law > Separation & Delegation of Power > Legislative Controls*
[HN21] Interpretive guidelines and other informal interpretations such as agency statements contained in opinion letters, policy statements, agency manuals, and enforcement guidelines are distinguishable from promulgated regulations because they lack the force of law and, thus, do not warrant substantial deference. To hold otherwise would unduly validate the results of an informal process. However, because an agency's informal interpretation can offer some guidance, the weight that should be afforded such an interpretation will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control. Deference is appropriate only when Congress has delegated authority to the agency to make rules carrying the force of law and where the agency interpretation was promulgated in the exercise of that authority through notice-and-comment rule making.

*Administrative Law > Agency Rulemaking > Informal Rulemaking*
*Governments > Legislation > Interpretation*
[HN22] An Internal Revenue Service revenue ruling does not have the force and effect of regulations and cannot be used to overturn the plain language of a statute.

*Governments > Legislation > Enactment*
*Governments > Legislation > Interpretation*
[HN23] The doctrine of legislative reenactment assumes that when Congress reenacts legislation, it incorporates existing administrative and judicial interpretations of the statute into its reenactment. Where, however, the statutory language is unambiguous and the regulation is at odds with it, the reenactment doctrine does not apply.

*Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)*
[HN24] The fact that Congress continued to reenact *26 U.S.C.S. § 4252*(b)(1) after the Internal Revenue Service issued *Rev. Rul. 79-404* appears to be of little significance and does not provide the basis for deferring to the ruling.

*Communications Law > Telephony > Local Exchange Carriers*
*Communications Law > Telephony > Long Distance Carriers*

Case 1:05-cv-00257-JJF-MPT    Document 42-8    Filed 02/10/2006    Page 4 of 7

Page 4
2004 U.S. Dist. LEXIS 27507, *

*Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)*

[HN25] With regard to *26 U.S.C.S. § 4252*(b)(1), differentiating between interstate, intrastate and international calls is solely for the purpose of allocating regulatory responsibility between the Federal Communications Commission (FCC) and state regulators as set forth in the Communications Act of 1934 and that, although rates may differ between the jurisdictional classification, that is a result of the classification itself and the corresponding rate structures imposed by the relevant regulatory agency and not because of the distance of the call. It appears undisputed that the Communications Act of 1934 establishes a dual system for regulating telephone service whereby the FCC regulates interstate and international communications and state agencies control intrastate service. Thus, different states may have different per-minute rates for intrastate calls that are unrelated to the distance the call travels just as intrastate and interstate rates could be the same for calls that travel different distances. Further, in certain instances, an intrastate call could travel a longer distance that an interstate call.

*Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)*

[HN26] See *26 U.S.C.S. § 4252*(b)(2).

*Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)*

[HN27] Under the plain language of the statute, to fall under *26 U.S.C.S. § 4252*(b)(2), the service must entitle the subscriber to make unlimited calls within a specific geographic area for a periodic charge that is to be determined as a flat amount or upon the basis of total elapsed transmission time.

*Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)*

[HN28] See *26 U.S.C.S. § 4252*(a).

**COUNSEL:** For REESE BROTHERS, INC., plaintiff: Stanley M. Stein, Feldstein, Grinberg, Stein & McKee, Pittsburgh, PA; Stephen J. Rosen, Henry D. Levine, Levine, Blaszak, Block & Boothby, Washington, DC; Bradley S. Waterman, Washington, DC.

For UNITED STATES OF AMERICA, defendant: Albert W. Schollaert, United States Attorney's Office, Pittsburgh, PA; R. Scott Clarke, United States Department of Justice, Washington, DC.

**JUDGES:** AMY REYNOLDS HAY, United States Magistrate Judge.

**OPINIONBY:** AMY REYNOLDS HAY

**OPINION:**

REPORT AND RECOMMENDATION

I. RECOMMENDATION

It is respectfully recommended that the motion for summary judgment submitted on behalf of plaintiff (Docket No. 7) be granted; and the motion for summary judgment submitted on behalf of defendant (Docket No. 14) be denied.

II. REPORT

Presently before this Court for disposition are cross motions for summary judgment brought by plaintiff, Reese Brothers, Inc. ("Reese") and defendant, the United States of America.

Reese commenced [*2] this action under *26 U.S.C. §§ 6532* and *7422*, seeking reimbursement of federal excise tax in the amount of $ 345,351.53, it claims it overpaid to defendant.

According to the record, Reese, a Pennsylvania corporation, purchased intrastate and interstate long distance voice services from LCI International Telecom Corp. ("LCI"), Qwest Communications Corporation ("Qwest") and MCI Telecommunications Corporation ("MCI") from July 1, 1998 through March 31, 2002. n1 LCI, Qwest and MCI collected federal excise tax on these various services and remitted them to the Internal Revenue Service ("IRS"). n2 On November 21, 2001, Reese filed claims with the IRS for a refund of $ 319,496.33 for the federal excise taxes collected for the services rendered from July 1, 1998 through June 30, 2001. n3 On August 2, 2002, Reese filed claims with the IRS for a refund of $ 26,048.38 for the federal excise taxes collected for the services rendered from July 1, 2001 through March 31, 2002. n4 In both instances, Reese claimed that it was entitled to the refund because it was not charged for the services based on the distance of the telephone calls and, thus, the services were not subject [*3] to the federal excise tax. The IRS, it appears, received the refund claims on November 26, 2001, and August 7, 2002, respectively, but has not responded to them. n5 Consequently, Reese filed the instant complaint on May 22, 2003, seeking a refund of the taxes paid.

---

n1 Plaintiff's Exhibit 1: Affidavit of Ralph Reese ("Reese Aff."), PP3-9; Plaintiff's Exhibit 2: LCI Agreement; Plaintiff's Exhibit 3-5, 6: Qwest Agreements and Qwest Pennsylvania Tariff, respectively; Plaintiff's Exhibits 7, 8: MCI Agree-

Case 1:05-cv-00257-JJF-MPT   Document 42-8   Filed 02/10/2006   Page 5 of 7

Page 5
2004 U.S. Dist. LEXIS 27507, *

ment and MCI Pennsylvania Tariff, respectively (Docket No. 7).

n2 Reese Aff. P10. See Supplemental Reese Aff. ("Suppl. Reese Aff."), PP2, 3; Exhibit A to Suppl. Reese Aff.: Copies of Reese's canceled checks remitted to LCI, Qwest and MCI for services (Docket No. 19).

n3 Plaintiff's Exhibit 9: Reese's Claim for Refund filed on November 21, 2001 (Docket No. 7).

n4 Plaintiff's Exhibit 10: Reese's Claim for Refund filed on August 2, 2002 (Docket No. 7). In its first amended complaint, Reese reduced the amount of the refund sought for services provided between July 1, 2001 and March 31, 2002, to $ 25,855.20 thereby reducing the aggregate amount sought to $ 345,351.53. See First Amended Complaint, P13 (Docket No. 5); Plaintiff's Statement of Undisputed Facts, PP17, 21; Defendant's Response and Counter-statement of Undisputed Facts, PP17, 21.

[*4]

n5 See Plaintiff's Statement of Undisputed Facts, PP16, 18 (Docket No. 7); Defendant's Response and Counter-statement of Undisputed Facts, PP16, 18 (Docket No. 16).

Cross-motions for summary judgment have now been filed in which the parties largely dispute the meaning of the word "and" that appears in the portion of the Internal Revenue Code under which the federal excise tax on toll telephone service is imposed. n6

n6 We note here that defendant initially argued in its motion that subject matter jurisdiction was wanting because plaintiff had failed to demonstrate that it had actually paid the excise tax at issue. Apparently satisfied by the copies of cancelled checks submitted by plaintiff in conjunction with its responsive brief (Docket No. 19), defendant now concedes that jurisdiction lies with the Court. See Docket No. 23. Consequently, we have not addressed the issue.

[HN1] Summary judgment is appropriate [*5] where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *Fed. R.Civ. P. 56(c)*. See *Marzano v. Computer Science Corp., 91 F.3d 497, 501 (3d Cir. 1996)*. [HN2] In deciding a motion for summary judgment the court must view all inferences in a light most favorable to the non-moving party. Id., citing *Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)*. The non-moving party, however, may not rely on bare assertions, conclusory allegations or mere suspicions to support its claim but must demonstrate by record evidence the meritorious nature of the claim. *Orsatti v. New Jersey, 71 F.3d 480, 484 (3d Cir. 1995)*.

[HN3] Section 4251 of the Internal Revenue Code ("the Code"), imposes a three percent tax on amounts paid for "communications services," which includes "toll telephone service." *26 U.S.C. § § 4251(a)(1), (b)(1), (b)(2)*. n7 The Code further defines "toll telephone service" as:[HN4]

> (1) a telephonic quality communication for which (A) there is a toll charge which varies in amount [*6] with the distance and elapsed transmission time of each individual communication and (B) the charge is paid within the United States, and
>
> (2) a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

*26 U.S.C. § 4252(b)*.

n7 Although the person paying for the telephone service is responsible for the tax imposed, the service provider is required to collect the tax from its customers and remit it to the government. *Office Max, Inc. v. United States, 309 F. Supp. 2d 984, 988 n.5 (N.D. Ohio 2004)*. See *26 U.S.C. § 4251(a)(2)*.

This version [*7] of § 4252 was adopted in 1965, n8 and appears to reflect an effort by Congress to conform the definition of "toll telephone service" to the long distance pricing methods used by AT&T which held a monopoly on long distance service at the time. n9 AT&T offered either Message Telephone Service ("MTS"), where subscribers were charged based on tolls which

were calculated according to the elapsed time of each telephone call and the mileage band that corresponded to the actual distance of the call, or Wide Area Telephone Service ("WATS"), where subscribers were charged a flat fee for unlimited calls or calls up to a certain hourly limit. n10

n8 See Excise Tax Reduction Act of 1965, Pub.L. 89-44, § 302, 79 Stat. 136, 146.
n9 Defendant's Exhibit 2: Declaration of Alan Pearce ("Pearce Decl."), PP23, 25 (Docket No. 14).
n10 Pearce Decl. PP17, 24.

Since then, however, largely because AT&T no longer has a monopoly and wireless service has been introduced, the billing methods for long distance services [*8] have changed. Indeed, AT&T and other long distance carriers have abandoned the mileage bands and have aggregated them into one band that covers the entire continental United States. n11 Thus, it appears that charges for interstate long distance services no longer vary by the distance of the call. n12

n11 Pearce Decl. PP29, 35.
n12 Defendant's Exhibit 1: Declaration of Paul B. Vasington ("Vasington Decl."), P16 (Docket No. 14).

Plaintiff contends that because the toll rates for long distance services are no longer dependent on mileage bands and because § 4252(b)(1) plainly imposes the tax on long distance services only where the charges are based on both the distance of the call *and* the elapsed transmission time of a call, the services provided to it are not subject to the tax.

Defendant, on the other hand, argues that the nature of the word "and" in this particular context renders the statute ambiguous thereby requiring the Court to look beyond the statute to decipher its meaning. Defendant [*9] contends that the legislative history as well as an IRS revenue ruling which interprets § 4252(b)(1) indicate that Congress intended for all long distance calls to be taxed and that, to give effect to that intent, the word "and" as used in 4252(b)(1) is properly construed as "or."

We note at the outset that [HN5] this precise controversy has recently been decided by four other district courts. Two of the four have rendered published opinions in which they, interestingly, have reached different results. *Compare American Bankers Ins. Group, Inc. v. United States, 308 F. Supp. 2d 1360 (S.D. Fla. 2004)* ("ABIG") (Finding, based on the purpose of § § 4251 and 4252, that long distance service was taxable even though charges were based on time and not distance), *with OfficeMax v. United States, 309 F. Supp. 2d 984 (N.D. Ohio 2004)* ("OfficeMax") (Finding that, under plain meaning of § 4252(b)(1), charges had to vary with both distance and elapsed time to be taxable). The two unpublished cases agreed with the OfficeMax Court finding that the plain meaning of the statute dictates that the long distance services at issue are not subject to the [*10] tax because they did not, as required under the statute, vary with both distance and elapsed transmission time. See *Fortis, Inc. v. United States, 2004 U.S. Dist. LEXIS 18686, 2004 WL 2085528 (S.D.N.Y. September 16, 2004); AMTRAK v. United States, 338 F. Supp. 2d 22, 2004 WL 2098849 (D.D.C. 2004)*.

The positions taken by the parties in the instant case are largely similar to those proffered by the parties in ABIG and OfficeMax. For the following reasons, we agree with the reasoning of the Court in OfficeMax.

[HN6] In interpreting a statute, the role of the Courts is to give effect to Congress's intent. *Rosenberg v. XM Ventures, 274 F.3d 137, 141 (3d Cir. 2001)*. "Because it is presumed that Congress expresses its intent through the ordinary meaning of its language, every exercise of statutory interpretation begins with an examination of the plain language of the statute." Id. If the statutory language is clear and unambiguous, no further inquiry is necessary. Where an ambiguity exists, however, the Court may look beyond the statute to the legislative history to determine congressional intent. *Ross v. Hotel Emples. & Rest. Emples. Int'l Union, 266 F.3d 236, 245 (3d Cir. 2001)*, [*11] cert. denied, *534 U.S. 1162 (2002)*.

[HN7] Determining whether the language of a statute is ambiguous in the first instance requires the Court to examine "the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *In re Price, 370 F.3d 362, 369 (3d Cir. 2004)*, quoting *Robinson v. Shell Oil Co., 519 U.S. 337, 341, 136 L. Ed. 2d 808, 117 S. Ct. 843 (1997)*. As recently found by the Court of Appeals for the Third Circuit, however,

> ambiguity does not arise merely because a particular provision can, in isolation, be read in several ways or because a statute contains an obvious scrivener's error. *Lamie v. United States Trustee, 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024*

Case 1:05-cv-00257-JJF-MPT    Document 42-8    Filed 02/10/2006    Page 7 of 7

Page 7
2004 U.S. Dist. LEXIS 27507, *

*(2004)*. Nor does it arise if the ostensible plain meaning renders another provision of the Code superfluous. *Id. at 1031*. Rather, a provision is ambiguous when, despite a studied examination of the statutory context, the natural reading of a provision remains elusive.

*In re Price, 370 F.3d at 369*.

[HN8] Although it cannot be disputed that in certain contexts "and" is sometimes [*12] used in the disjunctive, its ordinary meaning has a conjunctive connotation. *United States v. Sherman, 150 F.3d 306, 316 (3d Cir. 1998)* ("'and' is conjunctive."). See *Crooks v. Harrelson, 282 U.S. 55, 58, 75 L. Ed. 156, 51 S. Ct. 49, 1931-1 C.B. 469 (1930)*; *Bruce v. First Federal Savings and Loan Association of Conroe, Inc., 837 F.2d 712, 715 (5th Cir. 1988)*. See also *ABIG, 308 F. Supp. 2d at 1365*, quoting *United States v. Brennick, 908 F. Supp. 1004, 1015 (D. Mass. 1995)* ("Ordinary use of the term "or" in a statute signifies a disjunctive requirement, while "and" signifies a conjunctive one.") Thus, unless reading "and" in the conjunctive would render *§ 4252(b)(1)* meaningless or defy common sense, the statute should not be found ambiguous. *In re Price, 370 F.3d at 369*; *ABIG, 308 F. Supp. 2d at 1365* (Finding that [HN9] the plain meaning of a statute should be given effect unless that interpretation defies common sense.)

Here, in our view, reading *§ 4252(b)(1)* as requiring that the toll charge vary in amount with both the distance and the time elapsed is neither unclear nor defies common sense. Indeed, as found by [*13] the Court in OfficeMax, both time and distance were, in fact, factors in determining charges for telephone service in 1965 when the amendment under scrutiny was enacted. *OfficeMax, 309 F. Supp. 2d at 993 n.12, 995*. It therefore appears logical to conclude that [HN10] Congress intended the word "and" to be read conjunctively thereby reflecting the manner in which calls were billed at the time. Id. The fact that billing methods have changed and long distance calls are no longer charged based on distance does not alter Congress's intent in 1965 when it amended the statute. Id.

Further, as the OfficeMax Court opined, if "and" were read in the disjunctive, as defendant would have us do, a call would still fall under the definition of "toll telephone service" even when there is no variation in distance or in the distance toll rate applied. *OfficeMax, 309 F. Supp. 2d at 993-94*. Such a reading, however, would effectively eliminate the distance requirement from the statute and render Congress's reference thereto superfluous. Id. Because [HN11] courts "should endeavor to give meaning to every word which Congress used and therefore should avoid an interpretation [*14] which renders an element of the language superfluous" it does not appear that "and" is properly read as "or" under these particular circumstances. *Rosenberg v. XM Ventures, 274 F.3d at 142*.

Although defendant has cited a number of cases for the proposition that "and" can mean "or," it has not been disputed that in certain contexts "and" is properly interpreted as such in order to effectuate congressional intent. The fact that Congress may have intended "and" to mean "or" in other statutes or even other provisions of this statute, however, does not compel a different result here. n13

n13 Indeed, [HN12] "communications services" is defined in *§ 4251(b)(1)* as local telephone service, toll telephone service, *and* teletypewriter exchange service. "And" also joins *§ § 4252(a)(1)* and *(a)(2)* as well as *§ § 4252(b)(1)* and *(b)(2)*. In all three instances, it appears clear that "and" is meant to be read either cumulatively or in the disjunctive. That fact, however, does not require "and" to be read disjunctively everywhere it is used in the statute. See *Brown v. Gardner, 513 U.S. 115, 118, 130 L. Ed. 2d 462, 115 S. Ct. 552 (1994)* [HN13] ("Ambiguity is not a creature of definitional possibilities but of statutory context.") If that were the case, under *§ 4252(b)(1)*, taxable "toll telephone service" would be those services that are charged based on distance or elapsed time *or* where the charge is paid within the United States. Such an interpretation would appear to encompass all telephone communications and there would be little need for the rest of the statute. As such, [HN14] each provision of the statute should be read in its own context. See *In re Price, 370 F.3d at 369*; *Rosenberg v. XM Ventures, 274 F.3d at 142*.

[*15]

Moreover, in *Slodov v. United States, 436 U.S. 238, 56 L. Ed. 2d 251, 98 S. Ct. 1778 (1978)* ("Slodov"), upon which defendant principally relies, the statute at issue was *26 U.S.C. § 6672* which imposes personal liability on "any person required to collect, truthfully account for, and pay over any tax imposed by this title." *Id. at 245*. The petitioner argued that he could not be held liable unless he was responsible for all three duties since the provision was phrased in the conjunctive. The Court disagreed finding not only that petitioner's position was at odds with the statute's purpose to assure payment of withheld taxes, but that Congress, albeit inartfully, was