Source: Legal > / . . . / > 9th Circuit - US Court of Appeals, District & Bankruptcy Cases, Combined
Terms: name(hewlett packard and united states)  (Edit Search | Suggest Terms for My Search)

↙Select for FOCUS™ or Delivery
☐

*2005 U.S. Dist. LEXIS 19972, \*; 2005-2 U.S. Tax Cas. (CCH) P70,244;*
*96 A.F.T.R.2d (RIA) 5953*

**HEWLETT-PACKARD** COMPANY, Plaintiff, v. **UNITED STATES** OF AMERICA, Defendant.

No. C-04-03832 RMW

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

2005 U.S. Dist. LEXIS 19972; 2005-2 U.S. Tax Cas. (CCH) P70,244; 96 A.F.T.R.2d (RIA) 5953

August 5, 2005, Decided
August 5, 2005, Filed

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff purchaser of telecommunications service sued defendant United States, seeking a refund of communications excise taxes paid by the purchaser, on the ground that the service was not taxable since it was not "local telephone service" or "toll telephone service" as defined respectively in 26 U.S.C.S. § 4252(a), (b). The purchaser and the government cross-moved for summary judgment.

**OVERVIEW:** The purchaser was charged for service on a per-minute basis for elapsed transmission time, the charges did not depend on the distance of each communication, and the purchaser was not entitled to make an unlimited number of calls within a specified region for a flat or periodic fee. The purchaser contended that charges were not based on both elapsed time and distance as required for taxation under § 4252(b) as toll telephone service, and that the purchaser's nationwide and international service could not be deemed local telephone service under § 4252(a). The court agreed, holding that the purchaser was not liable for the excise taxes. The requirement that charges be based on time and distance was clearly stated in the conjunctive under § 4252(b), and distance was not a factor in the purchaser's charges. Further, the purchaser's service did not allow unlimited calls in a specified area at a periodic flat rate and thus could not be toll telephone service on that basis. Also, the fact that the purchaser's service was not specifically exempted from the definition of local telephone service did not alter the plain language of § 4252(a) to allow the purchaser's service to be deemed local.

**OUTCOME:** The purchaser's motion for summary judgment was granted, and the government's cross-motion was denied.

**CORE TERMS:** toll, distance, telephone service, elapsed, local telephone, summary judgment, transmission, unlimited, unambiguous, telephone, plain language, plain meaning, excise tax, conjunctively, regulation, ambiguous, refund, excise, Reenactment Doctrine, legislative history, deference, counters, periodic, duration, flat, reenactment, disjunctively, re-enacted, station, taxing

**LexisNexis(R) Headnotes** ◆ Hide Headnotes

Civil Procedure > Summary Judgment > Summary Judgment Standard

**HN1** Summary judgment is proper when there are no genuine issues as to any material fact and the moving party is entitled judgment as a matter of law. Fed. R. Civ. P. 56 (c).  More Like This Headnote | *Shepardize:* Restrict By Headnote

Governments > Legislation > Interpretation

**HN2** Statutory interpretation is a question of law. Statutory ambiguity cannot be determined by referring to the parties' interpretations of the statute. Of course their interpretations differ. That is why they are in court. Whether a statute is ambiguous is a pure question of law to be determined by the courts, however, not by the parties or by an administrative agency.  More Like This Headnote

Communications Law > Related Legal Issues > Taxation

Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)

**HN3** 26 U.S.C.S. § 4252(b) defines "toll telephone service" as follows: (1) a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication and (B) the charge is paid within the United States; and (2) a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Communications Law > Related Legal Issues > Taxation

Governments > Legislation > Interpretation

Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)

**HN4** The word "and" in 26 U.S.C.S. § 4252(b)(1) is unambiguously conjunctive. Unless the context dictates otherwise, the word "and" is presumed to be used in its ordinary sense, that is, conjunctively. There is nothing in the statutory context of § 4252(b)(1) to suggest that "and" is used in the provision as meaning "or." The phrase is unambiguous. The plain meaning is clear--"and" is used conjunctively.  More Like This Headnote

Governments > Legislation > Interpretation

**HN5** Where a statute is unambiguous, a court need not inquire further as to the purpose or intent of Congress. Where the statutory text is unambiguous the inquiry ends.  More Like This Headnote

Administrative Law > Judicial Review > Standards of Review > Standards Generally

Governments > Legislation > Interpretation

**HN6** If the intent of Congress is clear, that is the end of the matter; for a court, as well as an agency, must give effect to the unambiguously expressed intent of Congress. Only if the statute is silent or ambiguous does the court move on to evaluate agency interpretation. Where the court concludes that the statute is unambiguous, it need not give deference to an agency interpretation, nor determine the proper level of deference.   More Like This Headnote

Governments > Legislation > Interpretation

**HN7** The Reenactment Doctrine states that longstanding Internal Revenue Service and Treasury interpretations of the Internal Revenue Code are entitled to great deference when Code provisions they interpret have been re-enacted by Congress.   More Like This Headnote

Governments > Legislation > Interpretation

**HN8** In determining whether a particular regulation carries out the congressional mandate in a proper manner, courts look to see whether the regulation harmonizes with the plain language of the statute, its origin, and its purpose. The re-enactment doctrine is merely an interpretive tool fashioned by the courts for their own use in construing ambiguous legislation. It is most useful in situations where there is some indication that Congress noted or considered the regulations in effect at the time of its action.   More Like This Headnote

Communications Law > Related Legal Issues > Taxation

Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)

**HN9** 26 U.S.C.S. § 4252(a) defines "local telephone service" as follows: (1) the access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system, and (2) any facility or service provided in connection with a service described in § 4252(a)(1). The term "local telephone service" does not include any service which is a toll telephone service or a private communication service as defined in § 4252(b), (d).   More Like This Headnote

Communications Law > Related Legal Issues > Taxation

Tax Law > Federal Excise Tax > Communications (IRC secs. 4251-4254)

**HN10** It is inconceivable that Congress considered a nationwide telecommunications network to be local. The text of 26 U.S.C.S. § 4252 belies such an interpretation.   More Like This Headnote

**COUNSEL:** [*1]  For Hewlett-Packard Company, Plaintiff: Leslie Holmes, Mark Vincent Boennighausen, Thomas R. Hogan, Hogan Holmes & Usoz LLP, San Jose, CA; Jacob J. Miles, Joseph A. Boyle, Paul L. Kattas, Kelley Drye & Warren LLP, New York, NY.

For United States of America, Defendant: David L. Denier, U.S. Attorney's Office, Tax Division, San Francisco, CA.

**JUDGES:** RONALD M. WHYTE, United States District Judge.

**OPINIONBY:** RONALD M. WHYTE

**OPINION:** ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF

**[Re Docket Nos. 21, 34$)**

Plaintiff Hewlett Packard Company ("HP") moves for summary judgment that it is entitled to a refund of federal communications excise taxes in the amount of $ 6,385,671.86 paid by HP and its predecessor, Compaq Computer Corporation ("Compaq") for taxable quarters ending March 31, 1999 through December 31, 2002. Specifically, it moves for summary judgment that the long distance service purchased by HP and Compaq is not subject to taxation under 26 U.S.C. §§ 4251 and 4252. The United States of America ("IRS") opposes the motion and moves for summary judgment against HP. The court has read the moving and responding papers and considered the arguments of counsel. **[*2]** For the reasons set forth below, the court grants HP's motion for summary judgment.

## I. BACKGROUND

Plaintiff HP is a Delaware corporation with its principal place of business in Palo Alto, California. In May 2002, HP acquired Compaq. Brennan Decl. P 3. During the taxable period from January 1, 1999 though December 31, 2002, HP and Compaq purchased telecommunications services pursuant to contracts with AT&T, MCI, and Sprint. In accord with the terms of these contracts, HP and Compaq were charged on a per-minute basis for elapsed transmission time. The charges did not depend on the distance of each communication. Blesi Decl. PP 3-5; Webb Decl. PP 2-4. The contracts did not entitle HP and Compaq to make an unlimited number of calls within a specified geographic region for a flat or periodic fee. Blesi Decl. P 6; Webb Decl. P 6.

HP paid federal communications excise taxes of $ 4,560,280.91 for taxable periods from July 1, 1999 though June 30, 2002. On June 14, 2002, HP filed timely claims for refunds, which were denied. Brennan Decl. PP 6-7. Compaq paid communications excise taxes of $ 1,825,390.95 for taxable periods from January 1, 1999 though December 31, 2002. Webb Decl. P **[*3]** 7. On February 25, 2002 and March 14, 2003, Compaq filed timely claims for refunds, which were denied. Brennan Decl. PP 8-9.

On October 18, 2004, HP filed an amended complaint seeking a refund in the amount of $ 6,385,671.86 for the total amount of disputed excise taxes paid by HP and Compaq plus statutory interest. The IRS filed a timely answer to the amended complaint denying plaintiff's entitlement to the refund.

## II. ANALYSIS

The IRS argues that the telephone services purchased by HP and Compaq during the taxable periods referenced above were subject to an excise tax either as "toll telephone service" in accord with either Internal Revenue Code section 4252(b) or as "local" service in accord with section 4252(a). 26 U.S.C. § 4252. HP argues that the services purchased were not subject to the excise tax because they constituted neither "toll telephone service" nor "local" service within the meaning of the statute. Both parties move for summary judgment.

### A. Standards

*HN1* Summary judgment is proper when there are no genuine issues as to any material fact and the moving party is entitled judgment as a matter of law. See **[*4]** Fed R. Civ. P. 56(c). The parties agree that there are no genuine issues of material fact in dispute, and move for summary judgment based on the applicable statutes. *HN2* Statutory interpretation is a question of law:

> [S]tatutory ambiguity cannot be determined by referring to the parties' interpretations of the statute. Of course their interpretations differ. That is why they are in court. . . . Whether a statute is ambiguous is a pure question of law to be determined by the courts, however, not by the parties or by an administrative agency.

*John v. United States*, 247 F.3d 1032, 1041 (9th Cir. 2001) (citations omitted).

**B. Statutory Definition of "Toll Telephone Service"**

HN3 Section 4252(b) defines "toll telephone service" as follows:

> (1) a telephonic quality communication for which (A) there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication and (B) the charge is paid within the United States, and
>
> (2) a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total [*5] elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone system area in which the station provided with this service is located.

26 U.S.C. § 4252(b).

HP argues that the long distance services purchased by itself and Compaq are not subject ot the excise tax because they do not constitute "toll telephone service" under either definition: first, because the charges imposed on the services did not vary based on distance, as required by the plain language of section 4252(b)(1), and second, because the services at issue were not flat-rated for unlimited usage as required by section 4252(b)(2).

**1. Section 4252(b)(1)**

HP argues that within the plain meaning of section 4252(b)(1), the word "and" is unambiguous, therefore charges must vary based on both elapsed time and distance in order to be taxable. *See American Bankers Ins. Group v. United States*, 408 F.3d 1328, 1333 (11th Cir. 2005). HP argues that since the charges to HP and Compaq did [*6] not vary based on distance, they do not constitute "toll telephone service" within the meaning of the code and are therefore not subject to the excise tax. 26 U.S.C. § 4252(b)(1).

The IRS argues that the word "and" is ambiguous, and may be read disjunctively as a "reference to either or both of two alternatives." *Webster's Third New International Dictionary* 80 (1966). Thus, the IRS argues, "in the construction of statutes, it is the duty of the court to ascertain the clear intention of the legislature. In order to do this, courts are often compelled to construe or' as meaning and,' and again and' as meaning or.'" *United States v. Fisk*, 70 U.S. 445, 447, 18 L. Ed. 243 (1865). The IRS urges the court to follow the reasoning of *Slodov v. United States*, in which the court held that the word "and" could be read either conjunctively or disjunctively with regard to another portion of the Internal Revenue Code and then rejected the taxpayer's conjunctive reading of "and" as inconsistent with the statute's purpose. 436 U.S. 238, 247, 56 L. Ed. 2d 251, 98 S. Ct. 1778 (1978).

This court agrees with the numerous other courts that have held <sup>HN4</sup> the word "and" in section 4252(b)(1) [*7] is unambiguously conjunctive. n1

> Unless the context dictates otherwise, the word and' is presumed to be used in its ordinary sense, that is, conjunctively. *Crooks v. Harrelson*, 282 U.S. 55, 58, 75 L. Ed. 156, 51 S. Ct. 49, 1931-1 C.B. 469 (1930) (construing the tax statute and concluding that nothing in the context or in other provisions of the statute warrant the conclusion that the word and was used otherwise than in its ordinary sense [, conjunctively]; and to construe the clause [disjunctively,] would be to add a material element . . ., and thereby to create, not to expound, a provision of law') . . . . [T]here is nothing in the statutory context [of section 4252(b)(1)] to suggest that and' is used in the provision as meaning or.' The phrase is unambiguous. The plain meaning is clear -- and' is used conjunctively.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 See *Office Max, Inc. v. United States*, 309 F. Supp. 2d 984 (N.D. Ohio 2004); *Fortis, Inc. v. United States*, 2004 U.S. Dist. LEXIS 18686, 2004 WL 2085528 (S.D.N.Y. 2004); *Nat'l RR Passenger Corp. v. United States ("Amtrak")*, 338 F. Supp. 2d 22 (D.D.C. 2004); *Reese Brothers, Inc. v. United States*, 2004 U.S. Dist. LEXIS 27505, 2004 WL 2901579 (W.D. Pa. 2004); *Honeywell Int'l, Inc. v. United States*, 64 Fed. Cl. 188 (2005); *America Online, Inc. v. United States ("AOL")*, 64 Fed. Cl. 571 (2005). In all six cases, the court granted the taxpayer's motion summary judgment, holding that the plain meaning of section 4252(b)(1) is that charges must vary with both distance and elapsed time to be taxable. Plaintiff notes that the *Fortis* court denied summary judgement for the taxpayer based on inbound service. In *American Bankers Ins. Group v. United States*, the district court granted summary judgment in favor of the IRS, 308 F. Supp. 2d 1360 (S.D. Fla. 2004), but was recently reversed on appeal, 408 F.3d 1328 (11th Cir. 2005).

- - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - - -

[*8]

*American Bankers*, 408 F.3d at 1332.

The IRS also argues that the word "distance" is ambiguous in the statute and may be synonymous with "toll rate." Opp. at 8-9. However, as plaintiff notes, the IRS later acknowledges that at the time section 4252(b)(1) was enacted, "distance" and conjunctively "elapsed time" were used to calculate the toll charge:

> In 1965, the charge for all long-distance calls, other than WATS calls, was calculated by multiplying a distance toll rate (derived from mileage bands that the call crossed) and the elapsed transmission time of the call. . . . [V]ariation in distance alone would not necessarily have caused a variation in charge. The variation between charges results from the product of the distance toll rate and the elapsed transmission time as a mathematical function, not from a variation in the distance or in the distance toll rate.

Opp. at 10. Because the IRS acknowledges that distance was a factor used to calculate the "toll rate," it does not follow that "distance" is synonymous with "toll rate."

The IRS argues next that the statute's purpose and legislative history demonstrate the disputed services were a "toll [*9] telephone service." *HN5* Because the statute is unambiguous, the court need not inquire further as to the purpose or intent of Congress: "Where the statutory text is unambiguous the inquiry ends." American Bankers, 408 F.3d at 1333 (citing BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183, 158 L. Ed. 2d 338, 124 S. Ct. 1587 (2004)).

Nevertheless, the court is persuaded that the legislative history supports its present holding. As noted in American Bankers, "Congress was seeking to modify and narrow the definition and to phase this excise tax out entirely by 1969. Congress could have amended the language in 1965 to include broad terms able to adapt to technological changes; instead, Congress specifically defined toll telephone service' with an eye toward the tax expiring four years later." 408 F.3d at 1333; see also Office Max, 309 F. Supp. 2d at 1000 ("The Court must presume that Congress meant what it said when it tailored the definition of taxable toll telephone service' to include distance and time requirements, particularly in light of the overall goal of the [1965] Act to reduce and restrict the application of federal excise taxes.").

Next, [*10] the IRS argues that Revenue Ruling 79-404, which supports a disjunctive interpretation of the word "and," should be given Chevron deference in interpreting section 4252(b)(1). Plaintiff counters that Revenue Ruling 79-404 disregards the plain language of section 4252(b)(1) and therefore is not entitled to deference. Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837, 842-43, 81 L. Ed. 2d 694, 104 S. Ct. 2778 (1984).

Under Chevron, if the congressional intent is clear, the inquiry ends: *HN6* "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842-43. Only if the statute is silent or ambiguous, does the court move on to evaluate agency interpretation. Id. Since the court has concluded the statute is unambiguous, it need not give deference to Revenue Ruling 79-404, nor determine the proper level of deference. American Bankers, 408 F.3d at 1335.

Finally, the IRS argues that even if the telephone services provided were not within the express terms of the statute, [*11] Congress should be deemed to have intended it so based on the Reenactment Doctrine. *HN7* The Reenactment Doctrine states that longstanding IRS and Treasury interpretations of the Code are entitled to great deference when Code provisions they interpret have been re-enacted by Congress. United States v. Cleveland Indians Baseball Co., 532 U.S. 200, 220, 149 L. Ed. 2d 401, 121 S. Ct. 1433 (2001).

Plaintiff counters that the Reenactment Doctrine is not applicable because the statutory language at issue is unambiguous. *HN8* "In determining whether a particular regulation carries out the congressional mandate in a proper manner, we look to see whether the regulation harmonizes with the plain language of the statute, its origin, and its purpose." National Muffler Dealers Ass'n, Inc. v. United States, 440 U.S. 472, 477, 59 L. Ed. 2d 519, 99 S. Ct. 1304 (1979). See also Peoples Federal Sav. and Loan Ass'n of Sidney v. C.I.R., 948 F.2d 289, 302 (6th Cir. 1991) ("The re-enactment doctrine is merely an interpretive tool fashioned by the courts for their own use in construing ambiguous legislation. It is most useful in situations where there is some indication that Congress noted or considered the regulations in effect at [*12] the time of its action.").

The IRS contends that after Revenue Ruling 79-404 was published, Congress extended and

then made permanent the provisions of the 1965 Act taxing local and toll telephone service. Opp. at 16-17. Plaintiff contends there is no indication in the legislative history that Congress was aware of Revenue Ruling 79-404 at the time of re-enactment:

> [T]he reenactment doctrine cannot alter the plain meaning of the statute, and, moreover, there is nothing to indicate the Congress adopted, tacitly or otherwise, the interpretation presented in Revenue Ruling 79-404. The Revenue Ruling was limited to the narrow issue of ship-to-shore communications, and there is no evidence that the Ruling was ever cited or applied between 1979 and the latest congressional reenactment in 1998. While the Ruling was issued over twenty years ago, it is not comparable o the longstanding treasury regulations in *Cleveland Indians Baseball* and *College Savings.* Ultimately, there is no indication that Revenue Ruling 79-404 was brought to the attention of Congress or that Congress in any subsequent reenactments considered the question **[*13]** involved in the Ruling.

*Fortis*, 2004 U.S. Dist. LEXIS 18686, 2004 WL 2085528 at *12. The court also notes that in *Cleveland Indians*, the plain language of the statute and the regulation at issue were not incompatible. *Cleveland Indians Baseball Co.*, 532 U.S. at 220.

The court's conclusion is in accord with the six other courts that have held that the Reenactment Doctrine does not apply to section 4252(b)(1) n2:

> [N]ot only is the statutory language clear under § 4252(b)(1), but there is nothing to indicate that Congress was aware of Revenue Ruling 79-404, 1979-2 C.B. 382 when it subsequently amended and re-enacted this taxing statute. The legislative history reveals no mention of Revenue Ruling 79-404, 1979-2 C.B. 382 nor does the record reveal consideration of the issue raised in the Ruling. See, e.g., *Office Max*, 309 F.Supp. 2d at 1004-1005. Thus, there is nothing to indicate Congress was aware of Revenue Ruling 79-404, 1979-2 C.B. 382 when the taxing provisions were re-enacted.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 *Office Max*, 309 F. Supp. 2d 984, 1005; *Fortis, Inc*, 2004 U.S. Dist. LEXIS 18686, 2004 WL 2085528, *11-12; *Reese Brothers, Inc.*, 2004 U.S. Dist. LEXIS 27505, 2004 WL 2901579, *11; *Honeywell Int'l, Inc.*, 64 Fed. Cl. 188, 2005 WL 375601, *8; *AOL*, 64 Fed.Cl. at 581; and *American Bankers*, 408 F.3d at 1335-36.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[*14]**

*American Bankers*, 408 F.3d at 1335-36.

## 2. Section 4252(b)(2)

The IRS argues in the alternative that the communications service provided to HP and Compaq constitutes "toll telephone service" within the meaning of section 4252(b)(2) because it (1) provides the right to an unlimited number of calls to points in a specified area outside the local telephone system area, and (2) is subject to charge that is both periodic and determined either as a flat amount or upon the basis of total elapsed transmission time.

HP counters that the services did not allow either company to make unlimited calls for a flat amount or periodic charge. Blesi Decl. P 6; Webb Decl. P 6. The services were not billed as a flat rate, but were charged based on the duration of each call. Blesi Decl. P 5; Webb Decl. P 5. Thus, plaintiff argues, the services do not constitute "toll telephone service" by the IRS's own definition:

> Taxpayer argues that it purchases services described in § 4252(b)(2). Taxpayer emphasizes that the charge for each services is based upon total elapsed transmission time as used in the parenthetical in § 4252(b)(2). However, the charges for services are **[*15]** determined on the basis of the duration of each call. Unlike local service, Taxpayer does not pay a fixed amount in advance for an unlimited number of calls. Thus, the Services are similar to the service in Revenue Ruling 79-404 that was held to be described in § 4252(b)(1), not § 4252(b)(2). That is, the Services in question do not entitle Taxpayer to an unlimited number of calls to a specified area for which a charge is made based on flat fee or elapsed transmission time, but rather provide Taxpayer with telephone service for which Taxpayer is charged an amount that varies based upon the duration of each call.

IRS National Office Technical Advice Memorandum 200227008 (March 8, 2001). n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 *See also* Technical Advice Memorandum 199923002 (February 19, 1999); Technical Advice Memorandum 97100003 (November 19, 1996); and Technical Advice Memorandum 2000009005 (November 8, 1999).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

There is no dispute, and the service contracts reflect, that HP and **[*16]** Compaq were charged based on the duration of each call. Blesi Decl., Ex. A; Webb Decl., Ex. A. Thus, the services did not constitute "toll telephone service" within the meaning of section 4252(b)(2).

## C. Applicability of Section 4252(a) "Local Telephone Service"

The IRS argues that if this court were to conclude that the services are not "toll telephone service," then they are taxable as local telephone service, because the system accessed by HP and Compaq was arguably "local" in that they are not specifically excluded by the statute, which was "obviously designed to be comprehensive." Opp. at 22. **HN9** Section 4252(a) defines "local telephone service" as follows:

> (1) the access to a local telephone system, and the privilege of telephonic quality

communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system, and

(2) any facility or service provided in connection with a service described in paragraph (1).

The term "local telephone service" does not include any service which is a "toll telephone service" or a "private communication service" as defined in subsections (b) and (d).

[*17] 26 U.S.C. § 4252(a).

Plaintiff counters with two arguments supported by recent court decisions on this matter: (1) "'The fact that certain exemptions are specified does not mean that anything not expressly exempted is taxed,'" *American Bankers*, 408 F.3d at 1338 (quoting *AOL*, 64 Fed. Cl. at 582-83); and (2) the IRS's interpretation is at odds with the plain meaning of the statute. *Fortis*, 2004 U.S. Dist. LEXIS 18686, 2004 WL 2085528 at *15 ("It is hardly a plain or natural reading of the statute to claim that the entire United States is part of one local telephone system.'"); *Honeywell*, 64 Fed. Cl. at 203 (same); *Office Max*, 309 F. Supp. 2d at 1007 ("[T]here is no basis upon which to find that the long-distance service at issue herein falls within the statutory definition of local telephone service.'"). HN10 "It is inconceivable that Congress considered a nationwide telecommunications network to be local.' The text of the statute belies such an interpretation." *Amtrak*, 338 F.Supp.2d at 30.

The court agrees with the reasoning of numerous other courts that the plain language of section 4252(a) [*18] does not support the IRS's argument that the nationwide and international service at issue is "local." Therefore, the statute does not apply to the disputed services.

### III. ORDER

For the foregoing reasons, the court GRANTS HP's motion for summary judgment of liability against the IRS. The parties shall confer regarding the total amount to which HP is entitled and, if possible, stipulate as to the amount to which HP is entitled. After the damages issue is resolved, the court will enter a final judgment

DATED: August 5, 2005

RONALD M. WHYTE

United States District Judge

Source:     Legal > / . . . / > 9th Circuit - US Court of Appeals, District & Bankruptcy Cases, Combined
Terms:      name(hewlett packard and united states)   (Edit Search | Suggest Terms for My Search)
View:       Full
Date/Time:  Tuesday, January 31, 2006 - 1:42 PM EST

* Signal Legend:
● - Warning: Negative treatment is indicated
Q - Questioned: Validity questioned by citing refs
▲ - Caution: Possible negative treatment
◆ - Positive treatment is indicated

Service: **Get by LEXSEE®**
Citation: **1979-2 C.B. 382**

*1979-2 C.B. 382; 1979 IRB LEXIS 291, *;*
*REV. RUL. 79-404*

Rev. Rul. 79-404

Section 4251. -- Imposition of Tax

*26 CFR 49.4251-1: Imposition of tax*

(Also Section 4252.)

1979-2 C.B. 382; 1979 IRB LEXIS 291; REV. RUL. 79-404

July, 1979

**[*1]**

Communications; offshore radio telephone service; satellite. A company operates an earth satellite system that enables communication between ships at sea or other offshore facilities and telephone subscribers in the U.S. by relaying the call from a ship's radio station through the satellite to a landline station that is connected into the regular long-distance telephone system. The procedure is reversed for calls from the U.S. This communication service is toll telephone service even though the charges vary only with elapsed transmission time, and the amounts paid in the U.S. are subject to the tax imposed by section 4251(a) of the Code.

ISSUE

Whether the federal excise tax on communication services applies to amounts paid in the United States for certain communications services between telephones in the United States and offshore facilities.
FACTS

*X* Company offers a service that enables communication between ships at sea or other offshore facilities (such as drilling platforms) and telephone subscribers in the United States. A message or call from a ship's radio station is relayed through an earth satellite, in orbit over the equator, to a landline station of *X* in **[*2]** the United States that is connected into the regular long distance telephone system for completion of the call. The procedure is reversed for calls from the United States. Thus, the service provided by *X* offers offshore stations access by radio into the United States land telephone network.

The charge for this service is 3*x* dollars for the first three minutes or fraction thereof, and 1*x* dollars for each additional minute or fraction thereof, regardless of the location of either the land telephone or maritime radio stations.

LAW AND ANALYSIS

Section 4251 of the Internal Revenue Code imposes a tax on the amounts paid for local telephone service and toll telephone service.

Section 4252(a)(1) of the Code defines "local telephone service" to include the access to a local telephone system and the privilege of telephonic quality communication with substantially all persons having telephone or radio stations constituting a part of such system, and any facility or service provided in connection with such service. The term "local telephone service" does not include any service that is a "toll telephone service" or a "private communication service."

Section 4252(b)(1) **[*3]** of the Code defines the term toll telephone service to include a telephonic quality communication for which there is a toll charge which varies in amount with the distance and elapsed transmission time of each individual communication and the charge is paid within the United States.

Rev. Rul. 77-49, 1977-1 C.B. 341, holds taxable amounts paid for radio telephone facilities and services that make regular telephone service accessible to offshore subscribers. The ruling points out that such radio service is an adjunct to the landline service by performing that function.

The mere fact that access into the telephone network is by radio is not a basis for exclusion from the tax. This is shown by the specific reference in section 4252(a) of the Code to radio stations, and the position of the Service set forth in Rev. Rul. 77-49. The service in this case is similar to that in Rev. Rul. 77-49 in that it serves as an adjunct to the American continental telephone network by making telephones in that network accessible to the maritime telephone stations.

Literally, the service provided in this case does not come within the definition of "local telephone service" or "toll telephone service" **[*4]** as those terms are currently defined in section 4252 of the Code. It is not local telephone service because it provides access to the long distance telephone system in the United States. It is not toll telephone service because the charge for such service does not vary with distance and therefore does not meet the requirement of section 4252(b)(1).

It is well established, however, that a statute may be given an interpretation other than that which follows from its literal language where such interpretation is required in order to comport with the legislative intent.
The Supreme Court has stated:

There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy **[*5]** of the legislation as a whole" this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination."
United States v. American Trucking Associations, 310 U.S. 534, 543-44 (1940).
See also Corn Products Refining Company v. Commissioner, 350 U.S. 46 (1955), 1955-2 C.B. 511, a tax case in which the Supreme Court departed from the literal wording of a statute. The Court did so because to hold otherwise would have been "to defeat rather than further the purpose of Congress." 350 U.S. at 51, 52.

The legislative history of section 4252 of the Code indicates that the type of service at issue here is within the intended scope of taxable "toll telephone service."

Prior to the amendment of section 4252 of the Code by section 302 of the Excise Tax Reduction Act of 1965, 1965-2 C.B. 568, 577-578, one of the services taxed was "toll telephone service", which was defined, in part, as a telephone or radio telephone message or conversation for which (1) there is a toll charge, [*6] and (2) the charge is paid within the United States.

Prior to the 1965 amendment the communication service considered here would have been within the definition of toll telephone service. The legislative history pertaining to the Excise Tax Reduction Act of 1965, 1965-2 C.B. 643 and 676, indicates that Congress intended to exempt certain private communication services from the tax and repeal the tax on telegraph service and wire and equipment service. There is no indication that Congress otherwise intended to make changes in the types of service subject to tax.

The service in this case is essentially "toll telephone service" as described in section 4252(b)(1) of the Code, even though the charge for calls between remote maritime stations and stations in the United States vary with elapsed transmission time only. The toll charges described in section 4252(b)(1), that vary in amount with both distance and elapsed transmission time of the individual communication, reflect Congress' understanding of how the charges for long distance calls were computed at the time the section was enacted. The intent of the statute would be frustrated if a new type of service otherwise within such [*7] intent were held to be nontaxable merely because charges for it are determined in a manner which is not within the literal language of the statute.
HOLDING

The communication service in this case is toll telephone service within the meaning of section 4252(b)(1) of the Code, and amounts paid in the United States for this toll telephone service are subject to the tax imposed by section 4251(a).

    Service: **Get by LEXSEE®**
   Citation: **1979-2 C.B. 382**
      View: Full
Date/Time: Tuesday, June 28, 2005 - 4:21 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.